IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| U.S. ETHERNET INNOVATIONS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. 6:09-cv-448-JDL |
| | § | |
| ACER, INC., | § | |
| ACER AMERICA CORP., | § | |
| APPLE, INC., | § | |
| ASUS COMPUTER, INTERNATIONAL, | § | JURY TRIAL DEMANDED |
| ASUSTeK COMPUTER, INC., | § | |
| DELL INC., | § | |
| FUJITSU LTD., | § | |
| FUJUITSU AMERICA, INC., | § | |
| GATEWAY, INC., | § | |
| HEWLETT PACKARD, CO., | § | |
| HP DEVELOPMENT COMPANY LLC, | § | |
| INTEL CORP., | § | |
| MARVELL SEMICONDUCTOR, INC., | § | |
| NVIDIA CORP., | § | |
| SONY CORP. OF AMERICA, | § | |
| SONY ELECTRONICS, INC., | § | |
| TOSHIBA CORP., | § | |
| TOSHIBA AMERICA, INC., AND | § | |
| TOSHIBA AMERICA | § | |
|     INFORMATION SYSTEMS, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Acer, Inc., Acer America Corp., Apple Inc. ("Apple"), ASUS

Computer International, ASUSTeK Computer Inc. (collectively, "ASUS"), Dell Inc. ("Dell"), Fujitsu

America, Inc., Fujitsu Ltd. (collectively, "Fujitsu"), Gateway, Inc. (collectively, Gateway, Inc. and

the Acer Defendants will be referred to as "Acer"), Hewlett Packard Co. ("HP"), Intel Corp.

("Intel"), Sony Corp., Sony Corp. of America, Sony Electronics Inc. (collectively, "Sony"), Toshiba Corp., Toshiba America Inc., and Toshiba America Information Systems, Inc.'s (collectively, "Toshiba") (collectively, "Defendants") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc. No. 135) ("Motion"). Plaintiff U.S. Ethernet Innovations, LLC ("USEI") has filed a Response (Doc. No. 174) ("Response") and a Surreply (Doc. No. 212) ("Surreply"). Defendants support the Motion with a Reply (Doc. No. 195) ("Reply"). Having considered the Motion and the arguments presented, the Motion to Transfer Venue to the United States District Court for the Northern District of California is **GRANTED**.

## BACKGROUND

In a related action[1] filed on January 17, 2003, Plaintiff 3Com Corporation ("3Com") brought suit against Defendant D-Link Systems, Inc. ("D-Link") in the District of Delaware. On April 24, 2003, that case was transferred to the Northern District of California and was litigated before Magistrate Judge Bernard Zimmerman and District Judge Vaughan Walker. *3Com Corp. v. D-Link Systems, Inc.*, No. C 03-2177, 2007 WL 949599, at *1 (N.D. Cal. Mar. 27, 2007). In the *3Com* action, plaintiff alleged that D-Link infringed six of its patents: U.S. Patent Nos. 5,434,872 ("the '872 patent"), 5,732,094 ("the '094 patent), and 5,307,459 ("the '459 patent"), 6,327,625 ("the '625 patent"), 5,526,446 ("the '446 patent"), and 6,570,884 ("the '884 patent"). *3Com Corp. v. D-Link Systems, Inc.*, 473 F. Supp.2d 1001, 1004 (N.D. Cal. 2007) (hereinafter "*3Com Markman*"). In June 2004, Realtek Semiconductor Corp. ("Realtek") intervened in the *3Com* action and requested a declaratory judgment as to 3 patents asserted against D-Link, as well as additional patents owned by

---

[1] Throughout this Opinion, the Court will refer to the earlier, Northern District California litigation as "the *3Com* action." *3Com Corp. v. D-Link Systems, Inc.*, Civil Action No. C 03-2177-VRW, consolidated with Civil Action No. C 05-0098-VRW.

3Com.  *3Com*, 2007 WL 949599, at *1. 3Com then asserted infringement claims directly against Realtek and its products. All claims between D-Link and 3Com were settled prior to the claim construction proceedings. *3Com Markman*, 473 F. Supp.2d at 1004. That case generally pertained to alleged infringement of specific network interface cards ("NICs"). *3Com*, 2007 WL 949599, at *1. Judge Walker construed the six asserted patents in January 2007.[2] In April 2008, he further presided over a two week trial in which a jury found that Realtek infringed six claims of four asserted patents and then handled post-trial motions prior to the case settling.

On October 9, 2009 USEI filed this action against Defendants alleging patent infringement. Of the four patents asserted in this case, three of them were previously asserted in the *3Com* action.[3] Doc. No. 1 at 2 ("Complaint") (accusing Defendants of infringing United States Patent Nos. 5,307,459 ("the '459 Patent"), 5,434,872 ("the '872 Patent"), 5,732,094 ("the '094 Patent"), and 5,299,313 ("the '313 Patent")). A review of the Complaint, as well as Defendants' representations suggest that USEI is accusing similar network interface card components of infringement in this case. *See generally* COMPLAINT; MOTION at 1. Accordingly, while the disputed claim terms are not known at this time, Judge Walker previously construed terms from three patents common to this case and the *3Com* action. Additionally, while a different plaintiff is alleging infringement in this action, the Court notes that USEI, through its own characterization of the litigation history, is succeeding

---

[2] Claim terms from the '625 and '884 patents were first construed in conjunction with a summary judgment motion in a suit that preceded the *3Com* action. *See 3Com Corp. v. D-Link Sys., Inc.*, No. C 05-0098-VRW (N.D. Cal. 2005) (Doc. No. 206) (later consolidated with the *3Com* action). Claim terms from the '872, '094, '459, and '446 patents were construed in the *3Com Markman* and the court further construed terms from the '884 patent at that time. *See generally 3Com Markman*.

[3] Only the '313 patent was not litigated in the *3Com* action.

3

3Com in enforcement of the 3Com ethernet patent portfolio.[4]

Defendants argue that the Court should transfer this case under 28 U.S.C. §1404(a) to Judge Walker, in part, because the previous litigation in the Northern District of California was extensive and the Court invested substantial time and effort. MOTION at 13. It is undisputed that from January 2003 to 2008, Judge Walker heard arguments as to discovery disputes, claim construction, invalidity, infringement, and damages. Defendants maintain that the *3Com* action afforded the Northern District of California increased familiarity with these patents and the underlying technology, thus concluding that judicial economy considerations weigh in favor of transferring this case. *Id*. at 13. USEI contends that Defendants' judicial economy arguments are overstated in light of other applicable considerations and further emphasizes that this case involves different parties, different accuses products, and slightly different patents. RESPONSE at 13.

## LEGAL STANDARD

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Supreme Court has indicated that  § 1404(a) "is intended to place discretion in the district court to adjudicate motions to transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc., v. Ricoh Corp*., 487 U.S. 22, 29 (1988) (internal citations omitted). Section 1404(a) protects litigants, witnesses, and the public against unnecessary inconvenience and expense and avoids wasted time, energy, and money. *Van*

---

[4] As presented by USEI in another motion, on May 29, 2009 3Com and Parallel Technology, LLC ("Parallel") executed a Patent Sale Agreement in which Parallel acquired the 3Com patent portfolio relating to ethernet technology. Doc. No. 180 at 2 ("Emergency Motion"); Doc. No. 193 at 4. Prior to filing this suit, Parallel then assigned the patents-in-suit to USEI, a wholly owned subsidiary. EMERGENCY MOTION at 4. Therefore, USEI characterizes itself as a successor of 3Com. *Id*.

*Dusen v. Barrack*, 379 U.S. 612, 622 (1964). The Fifth and Federal Circuits have enunciated the standard to be used in deciding motions to transfer venue. *See In re Volkswagen of Am., Inc.* ("*Volkswagen III*"), 566 F.3d 1349 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) (applying the Fifth Circuit's en banc *Volkswagen II* decision to rulings on transfer motions out of this circuit); *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304 (5th Cir. 2008) (en banc).

The first determination to be made under § 1404(a) is whether the claim could have been filed in the judicial district to which transfer is sought. *In re Volkswagen AG*, 317 F.3d 201, 203 (5th Cir. 2004) (hereinafter "Volkswagen I"). If so, under § 1404(a), the moving party must show "good cause" for transfer and this burden is satisfied "when the movant demonstrates that the transferee venue is clearly more convenient." *Volkswagen II*, 545 F.3d at 314. When examining whether a movant has satisfied its burden, the court examines several private and public interest factors, none of which are given dispositive weight. *Volkswagen I*, 371 F.3d at 203. The Court considers private interest factors such as: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance; and (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive. *Id*. The Court considers public interest factors such as: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local interests decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary conflict of law problems involving foreign law's application. *Id*.

"Consideration of the interest of justice, which includes judicial economy 'may be determinative to a particular transfer motion, even if the convenience of the parties and the witnesses

may call for a different result.'" *Regents of Univ. of Cal. v. Eli Lilly & Co*., 119 F.3d 1559, 1565 (Fed. Cir. 1997); *Volkswagen III*, 566 F.3d at 1351. Courts in this district have consistently recognized the pronounced significance of judicial economy in the § 1404(a) analysis in patent cases. *See Invitrogen Corp. v. General Electric Co.*, No. 6:08-cv-112, 2009 WL 331891, at *4 (E.D. Tex. Feb. 9, 2009); *J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc*., No. 6:08-cv-211, 2009 WL 440525 at *5–6 (E.D.Tex. Feb. 20, 2009) (denying transfer in four related infringement cases regarding the same patent to a district with related actions because the transferee forum had stayed the related actions and had not issued a claim construction ruling); *Zoltar Satellite Sys., Inc. v. LG Electronics*, 402 F. Supp.2d 731, 736–37 (E.D. Tex. 2005) (transferring case to court which had previously construed three of the four patents at issue and presided over a three week jury trial).In short, a court's familiarity with the issues and facts is a consideration that weighs against transfer. *See In re Vtech Comm's*, No. 5:07-CV-00171, 2010 WL 46332, at *2 (Fed. Cir. Jan. 6, 2010).

Recently, the Federal Circuit expanded on the interplay between judicial economy and convenience considerations. In *In re Zimmer*, the importance of co-pending litigation in the same forum was negated by other convenience factors such as the location of the identified witnesses. *In re Zimmer Holdings, Inc.*, --- F.3d ----, 2010 WL 2553580, at *4 (Fed. Cir. June 24, 2010). The Federal Circuit distinguished *Zimmer* from its holding in *Volkswagen III* because *Zimmer* presented less compelling reasons to have the same district court try multiple infringement suits. *Id*. (noting that the two cases filed by the patentee shared only one overlapping patent, accused no overlapping defendants, and involved different products that would lead to "significantly different discovery, evidence, proceedings, and trial").

<u>**ANALYSIS**</u>

**I.      Jurisdiction in the Northern District of California**

**A.      Procedural Posture and the Parties' Jurisdictional Contentions**

The first question a court must address when ruling on a motion to transfer venue under 28 U.S.C. § 1404(a) is whether the suit could have been filed originally in the destination venue. *Volkswagen II*, 545 F.3d at 312; 28 U.S.C. § 1404(a). The "critical time" when making this threshold inquiry is the time when the lawsuit was filed. *Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp.2d 546, 549 (E.D. Tex. 2009) (citing *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)).

Here, the parties dispute whether this action could have been brought in the Northern District of California. *See generally* Response at 6–7; Reply at 1; Surreply at 1–2. USEI argues that Defendants have failed to demonstrate that the instant action could have originally been brought in the Northern District of California because Defendants Sony Corporation and Sony Corporation of America ("SCA") suggest a lack of personal jurisdiction. Response at 7–8 (citing Motion, Exh. C at 22 (Doc. No. 135-4) ("Cowie Decl.") (asserting personal jurisdiction is improper in both the transferor and transferee districts because the Sony entities "do not make, import, sell, and/or offer to sell the accused Sony products in the United States")). Defendants Sony Corporation and SCA (collectively, "the Sony entities") nonetheless join in the Defendants' Motion to Transfer.

In order to more completely assess the jurisdictional arguments, the parties were ordered to file supplemental briefing as to whether Sony Corporation and SCA have sufficient contacts with the transferee district such that this suit could have been filed there. (Doc. No. 260). In Defendants' supplemental brief (Doc. No. 267), they clarified that they do not oppose personal jurisdiction in the transferee district and they presented arguments as to why Sony Corporation and SCA have

7

minimum contacts in that forum. DEF. SUPP. BR. at 2; 4–6. In the USEI supplemental brief (Doc. No. 283), it asserts that the inconsistency between the Sony entities' previous declaration (challenging jurisdiction) and the supplemental declaration (consenting to jurisdiction) should estop them from petitioning transfer or consenting to jurisdiction in the transferee forum. PL. SUPP. BR. at 2. In the alternative, USEI maintains that Defendants have failed to satisfy § 1404(a) because their jurisdictional arguments are "vague" and Defendants make improper arguments as to whether minimum contacts can be established through the activities of upstream component manufacturers such as Intel. *Id*. at 1, 4–5. All in all, despite Defendants' supplemental declarations and arguments contending that there are minimum contacts with California, USEI advocates that the Motion to Transfer be denied under the § 1404(a) threshold jurisdictional inquiry. RESPONSE at 7 (citing *Chirife v. St. Jude Medical, Inc*., No. 6:08-cv-480, 2009 WL 1684563 (E.D. Tex. June 16, 2009) (Davis, J.)); PL. SUPP. BR. at 1.

## B.      Minimum Contacts with the Transferee Forum

In making a threshold determination as to whether the Northern District of California is a place where USEI could have brought this lawsuit, it is the Defendants' burden to show that their proposed venue is proper for all originally-named defendants. *See Balthasar Online, Inc. v. Network Solutions, LLC*, No. 2:08-cv-430, slip op. at 5, n.2 (E.D Tex. July 30, 2009) (Doc. No. 312)*; El Paso Prod. GOM v. Smith*, No. 04-2121, 2005 WL 167588, at *6 (E.D. La. Jan. 25, 2005)*; Johnson v. Tuff N Rumble Mgmt., Inc*., No. 99-1374, 1999 WL 1201891, at *9 (E.D. La. Dec. 15, 1999). Despite a previous declaration stating that there was no personal jurisdiction over the Sony entities in either fora, Sony Corporation and SCA now explicitly consent to personal jurisdiction in the transferee forum. DEF. SUPP. BR. at 2–3 (citing cases to support Defendants' contention that personal

jurisdiction is a waivable right).  The Court declines to rely on Defendants' consent to personal jurisdiction in the transferee forum as its basis to conclude whether this lawsuit could have been filed there.  *See Chirife*, 2009 WL 1684563, at *1 (stating that under § 1404(a) it is "immaterial [to the transfer analysis] that the defendant subsequently makes himself subject, by consent, waiver of venue and personal jurisdiction defenses or otherwise, to the jurisdiction of some other forum") (quoting *Hoffman v. Blaski*, 363 U.S. at 344).  Instead, the Court assesses whether Defendants have met their burden in showing that they have "minimum contacts" in the state of California.[5] *See Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001); *Volkswagen II*, 545 F.3d at 315.

### 1.    *Controlling Law*

"Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long arm statute permits service of process and whether assertion of personal jurisdiction violates due process.  However, because California's long arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process."  *Chirife*, 2009 WL 1684563, at *2 (internal citation omitted); *see also 3D Sys.*, 160 F.3d at 1377 (internal citations omitted).  Due process requires that a non-resident defendant have certain "minimum contacts" with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice," *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 (1945), and such minimum contacts must generally be purposeful. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) ("purposefully established

---

[5] Since personal jurisdiction in a patent case is intimately related to patent law, Federal Circuit law governs the issue. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). The Federal Circuit, like other federal courts, defers to the forum state's interpretation of its long-arm statute. *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998). In this case, the "forum state" corresponds to the transferee court– the Northern District of California.

minimum contacts" remain the "constitutional touchstone") (internal quotations omitted).To make this showing, minimum contacts may be met by either "general" or "specific" jurisdiction over a defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). "Specific" jurisdiction" exists when a defendant has contacts in the forum state and the controversy "arises out of" or "relates" to those contacts. *Id.* Even when the controversy is unrelated to a defendant's contact, "general jurisdiction" exists when the defendant's contacts with the forum state are "continuous and systematic." *Id.* at 414–16.

### 2.    *Application*

Here, the declarations and arguments corresponding to Defendants' supplemental brief have made a prima facie showing that Sony Corporation and SCA have engaged in activities in California that subject these two entities to jurisdiction in that forum. *See Double G Energy Inc. v. At Gas Gathering, Inc.*, No. 3:05-CV-0749-P, 2005 WL 1837953, at *4, n.3 (N.D. Tex. July 28, 2005) (finding declaration competent evidence to establish jurisdiction). The potential sale of accused Sony products in the United States, as well as the Sony entities' ongoing business relationship with California suppliers of ethernet controllers, such as Intervenors Intel, Marvel, and Atheros, signals sufficient purposeful availment to find specific jurisdiction over these Defendants.

USEI has accused Sony products of infringing its patents based on the implementation of components known as network interface controllers, which are supplied by the Intervenors in this case. As clarified in the supplemental declaration of Sony's representative, Robert Cowie, Sony VAIO products, which pre-date the filing of this lawsuit and are potentially a part of the accused

Sony products, are then offered for sale in the United States.[6] DEF. SUPP. BR., EXH. A at 2, n.1 (Doc. No. 267-1) ("Second Cowie Decl."). Mr. Cowie states that all accused Sony products incorporate ethernet controllers supplied by Intervenors located in the Northern District. SECOND COWIE DECL. at ¶ 7.

Although the Second Cowie Declaration does not conclusively acknowledge that the accused products were actually sold in the United States, these representations maintain that prior to the filing of this suit, the Sony entities were working with California suppliers to make the accused products and were potentially selling at least the VAIO products in the United States. In another case, this Court considered a related issue in deciding whether there was jurisdiction where an accused product, made overseas, was later being incorporated into a larger electronic product sold in the United States. *See generally Nidec Corp. v. LG Innotek Co., Ltd.*, No. 6:07cv108, 2008 WL 7048882 (E.D. Tex. Dec. 11, 2008) (Love, M.J.). Under a stream of commerce analysis, the controlling inquiry was whether it "could have been reasonably foreseen that the Accused Products would end up in Texas" when the completed downstream product was offered for sale. *Id.* at *5. Concluding that the defendant could have reasonably foreseen that the accused component would find its way to the United States, jurisdiction was proper. *Id*. at 4–7. Applying that logic to the instant facts, it is also "reasonably foreseeable" that at least a portion of the accused Sony products would end up in California. This determination is made based on unrebutted declarations that the Sony entities work with California suppliers to develop the accused products, as well as the concession that Sony products potentially accused in this lawsuit are offered for sale in the United States. SECOND COWIE

---

[6] Mr. Cowie states that at the time of submitting his previous declaration, he was unaware of this offer for sale in the United States. SECOND COWIE DECL. at ¶ 3.

DECL. at ¶ 3, 7.

In sum, the Court finds the declarations submitted by the Sony entities sufficient to make a prima facie showing of personal jurisdiction over all moving Defendants in the Northern District of California. *See Balthsar Online*, 654 F. Supp.2d at 552. This case "could have been filed" in the Northern District of California and the Court now turns to the § 1404(a) transfer factors.

**II.      A Clearly More Convenient Forum**

**A.      The Public Interest Factors[7]**

> **1.      *Judicial Economy***

In cases that involve technical subject matter, such as patent litigation, judicial economy may favor transfer to a court that is already familiar with the issues involved in the case. *Zoltar*, 402 F. Supp.2d at 735 (citing *Regents*, 119 F.3d at 1565). Given the history of the litigation surrounding the patents-in-suit, transfer of the instant USEI lawsuit increases judicial economy and decreases the risk of inconsistent claim constructions. As this court has stated previously: "[T]ransfer is most appropriate when one court has extensive familiarity with the technology or the legal issues involved, a claim construction opinion has been prepared, and the cases involve the same or similar defendants with the same or similar products." *Realtime Data, LLC v. Stanley*, No. 6:08-cv-326, 2010 WL 1064474, at *4 (E.D. Tex. Mar. 18, 2010) (Love, M.J.) (citing *Zoltar*, 402 F. Supp.2d at 737; *Logan v. Hormel Foods Corp.*, No. 6:04-cv-211, 2004 WL 5216126, at *2 (E.D. Tex. Aug. 25, 2004)).

Although USEI asserts that the opportunity for judicial economy based on the transferee court's familiarity with the patents-in-suit is "overstated" and that any efficiencies available in Northern California are "minimal," *see* RESPONSE at 13, the Court finds this argument unpersuasive.

---

[7] The Court will address the public interest factors first, as they are more compelling in the present case.

The previous *3Com* action required a substantial investment of judicial resources. The transferee district was responsible for a two week jury trial that considered questions of invalidity, infringement, and damages and resulted in 785 docket entries in the PACER index. MOTION at 13. This case resembles the circumstances present in *Zoltar* where Judge Davis granted the motion to transfer, in large part because the transferee court had previously construed the same patents, considered motions for summary judgment, motions in limine, handled a three-week jury trial, and considered motions for judgment as a matter of law. 402 F. Supp.2d at 735. Transferring the case to the Northern District of California not only eliminates the need for this district to become educated on the patents and the technology, but it also preserves the transferee court's familiarity with the technology surrounding NICs. *See Invitrogen*, 2009 WL 331891, at *5; *Jackson v. Intel Corp.*, No. 2:08-cv-154, 2009 WL 749305, at *4 (E.D. Tex. Mar. 19, 2009) (transferring case to the N.D. Ill. and noting that "the knowledge and experience that the judges of that district have developed with respect to [the patent-in-suit] cannot easily be replicated in this district without a substantial duplication of effort").

Also analogous to *Zoltar* is that USEI was unable to identify "specific significant differences" between the technology at issue in this case and the technical disputes in the *3Com* action. Plaintiff emphasizes that "USEI was not a party to the prior litigation, which involved a different plaintiff, slightly different patents, different defendants, and different products," SURREPLY at 3, but offers no technical details that distinguish the accused products in this case from those considered in the *3Com* action. Defendants, by contrast, present that the components at issue here were also accused of infringement in the *3Com* action against Defendants D-Link and Realtek. Based on these arguments, the Court finds a likelihood that there are similarities between the accused products. Furthermore,

13

although USEI was not a party to the previous action, by succeeding 3Com in the enforcement of its ethernet patent portfolio, USEI must accept the litigation history surrounding the patents. To argue that because USEI recently acquired these patents, and therefore should not be bound to previous adjudications, artificially closes the door on the realities of judicial economy. An evaluation of the public interest factors under § 1404(a) will not ignore a predecessor's prior choice of forum and the judicial resources that were subsequently invested in that case.

USEI contends that because it has filed a second suit in this district, asserting the same four patents, that the Eastern District of Texas should retain the instant case so as to reduce the risk of inconsistent adjudication between the two recently filed cases. RESPONSE at 13. This argument not only ignores that in granting such a request, there would be substantial risk as to inconsistent adjudication (especially inconsistent claim construction) with the *3Com* action,[8] but it is also assumes that two cases yet to undergo claim construction should be given more weight than the previous case that was tried to a verdict. Therefore, in the instant case, USEI's second suit in this district will not override the convenience gains established by Judge Walker's extensive involvement with these patents.

In sum, the "interest of justice," which includes judicial economy, is not served by retaining this case. A duplication of the Northern District of California's efforts in three of the four patents-in-

---

[8] The importance of uniformity in claim construction is best described by the Supreme Court in *Markman*, explaining that Congress created the Court of Appeals for the Federal Circuit to promote uniformity. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996). The importance of uniformity in the treatment of a given patent was one reason for allocating claim construction to the court rather than the jury. *Id.* This Court has previously discussed that the risk of inconsistent claim constructions is an important consideration when assessing the importance of judicial economy in transfer analysis. *J2 Global Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.*, No. 6:08-cv-211, 2008 WL 5378010, at *5 (E.D. Tex. Dec. 23, 2008) (Love, M.J.); *Logan*, 2004 WL 5216126, at *2 ("The prospect of inconsistent claim construction favors resolving related patent cases in the same forum when possible.") (internal citation omitted); *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455 (E.D. Tex. 2004) (noting in the context of a Motion to Sever that "two claim constructions on the same patent risk inconsistency, create greater uncertainty regarding the patent's scope, and impede the administration of justice").

suit and their underlying technology would be an inefficient use of judicial resources. Therefore, these considerations strongly favor transferring this case to the Northern District of California.[9]

### 2.    *Administrative Difficulties Flowing From Court Congestion*

USEI argues that the median time to trial for patent cases in the Eastern District of Texas is 1.79 years compared with 2.72 years for patent cases in the Northern District of California. RESPONSE at 14. The Court has previously relied on the cited Price Waterhouse Coopers statistics to support an inference that there is greater docket congestion in the Northern District of California. *See Tsera, LLC v. Apple Inc. et al.*, No. 6:09-cv-312, slip op. at 18–19 (E.D. Tex. May 12, 2010) (Doc. No. 230) (unpublished); *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, slip op. at 14–15 (E.D. Tex. Mar. 5, 2009) (Doc. No. 239) (unpublished). Where there are no countervailing considerations, the Eastern District's faster time to trial weighs slightly against transfer.  In this case, however, Judge Walker's familiarity with the technology and patents-at-issue will offset efficiencies gained through litigating in this district. *See Zoltar*, 402 F. Supp.2d at 737. Accordingly, this factor is neutral and does not weigh in favor of, or against, transferring the case.

### 3.    *Localized Interests in Resolving Controversies*

Defendants contend this case has minimal connections to the Eastern District of Texas, despite Plaintiff's organization under the laws of the State of Texas and its principal place of business within this district. MOTION at 14. USEI maintains that it has strong ties to the Eastern District of Texas because it is a Texas limited liability company based in Tyler, Texas and nearly all

---

[9] Although there is no guarantee that this case would be assigned to Judge Walker upon transfer, many districts maintain internal procedures that direct related cases back to a judge who has already invested time and effort in a complex dispute such as this. The Court has conferred with Judge Walker's chambers to notify him as to overlap between this case and the *3Com* action in the event that the instant lawsuit was transferred.

of its original documents (i.e., prosecution files, assignment documents, licensing documents, and litigation files relating to the patents-in-suit) are located in Tyler Texas. RESPONSE at 2. In patent cases, when a defendant sells products all over the country, no specific venue has a dominant interest in resolving the issue of patent infringement. *TS Tech*, 551 F.3d at 1321. When a party has its principal place of business in a given district, that district has a local interest in the adjudication of the case. *BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 712 (N.D. Tex. 2009); *see also Hoffman-La Roche,* 587 F.3d at 1338. Additionally, since it is undisputed that a number of Defendants and Intervenors[10] are headquartered in or near the Northern District of California, and therefore, the research and design for some of the accused products took place in or around the transferee district, that district also has a local interest in this dispute. *Hoffman-La Roche,* 587 F.3d at 1336 (encouraging courts to consider the work and reputation of individuals involved in developing the accused products). Here, each district has a local interest in the resolution of this case. Thus, this factor is neutral.

### 4.    *Forum's Familiarity with the Governing Law and Conflict of Laws*

This Court and the Northern District of California are both very familiar with the federal laws governing patent infringement disputes. Given that Federal patent laws are statutory and substantive decisions under these laws are reviewed by the Federal Circuit in all districts, there is no possibility of a conflict of laws issue. *Zoltar*, 402 F. Supp.2d at 738. Accordingly, these factors are neutral.

### B.    **The Private Interest Factors**

Overall, like the public interest factors, the private interest factors also weigh in favor of the

---

[10] Based on the Complaints in Intervention filed in this case, Atheros, Intel and Marvell, and NVIDIA are located in the Northern District of California.

transferee district. Defendants have demonstrated that Apple and Hewlett Packard are headquartered in the Northern District of California and those Defendants whose headquarters are in Asia—Acer/Gateway, ASUS, and Fujitsu— have principal U.S. places of business in the Northern District of California as well. MOTION at 3. Additionally, Defendants further suggest that Sony and Toshiba maintain records in other California locations. REPLY at 3. "In patent infringement cases, the bulk of relevant evidence usually comes from the accused infringer. Consequently, the place where the Defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d cite, 1345 (Fed. Cir. 2009). Based on the submissions detailing the location of documentary evidence in this case, the Court finds that "the relative ease of access to sources of proof" in the form of documentary and physical evidence, weighs in favor of transfer.

Assessing together "availability of compulsory process" and the "the convenience of witnesses," the Court faces substantial difficulties at this early stage in the litigation  in determining which relevant witnesses will actually testify at trial. Nonetheless, in light of the principles set forth by the Federal Circuit, this Court's lack of absolute subpoena power[11] over any non-party witnesses slightly favors transfer.  Although no one district will have this power over all non-party witnesses, in *Hoffman-La Roche*, the Federal Circuit applied *Volkswagen II*, to find circumstances favoring transfer where the transferor district had absolute subpoena power over no witnesses and the transferee district had "absolute subpoena power over at least four non-party witnesses." *Hoffman-La Roche*, 587 F.3d at 1338. While the Court need not resolve the accuracy of each party's third party witness list at this time, there is a greater likelihood that the transferee district will enjoy absolute

---

[11] "Absolute subpoena power"  refers to subpoena power "for both depositions and trial" and does not mean the authority to compel the attendance of all relevant and material non-party witnesses within a particular court. *Hoffman-La Roche*, 587 F.3d at 1338 (citing *Volkswagen II*, 545 F.3d at 316); *see also Genentech*, 566 F.3d at 1345.

subpoena power over at least some non-party witnesses. USEI concedes this reality, but it additionally notes that no court has absolute subpoena power over all non-party witnesses and that videotaped depositions remain a tool to present testimony remotely. RESPONSE at 12.

USEI's arguments as to the convenience of non-party and party witnesses, however, are undercut by the facts in this case. *See* RESPONSE at 11 (conceding that the convenience of non-party witnesses "slightly favors transfer" but still arguing overall convenience considerations are neutral). Defendants identify non-party witnesses throughout California while USEI identifies relevant non-party witnesses in Massachusetts and Singapore.[12] In assessing the convenience of all parties and witnesses, it is the convenience of non-party witnesses that is accorded greater weight. *Tsera*, slip op. at 13 (internal citations omitted). As noted previously, there are no non-party witnesses that reside in the Eastern District of Texas, yet there are potentially important non-party witnesses such as inventors, prior art witnesses, and the prosecuting attorney that would presumably experience more convenience and less expense if this case were tried in the Northern District of California.

The evaluation of party witnesses leads to a similar result. In opposing transfer, USEI presents evidence that its CEO (David Kennedy) resides in Tyler, Texas and that Defendants Dell and HP would respectively rely on party witnesses from Round Rock, Texas and Houston, Texas. RESPONSE at 9–10 (citing declarations in support of specific locations). However, even assuming that Mr. Kennedy and the designated Dell and HP witnesses were all called to testify at trial, the overall convenience of party witnesses still appears somewhat greater in the Northern District of California

---

[12] More precisely, Defendants point out that at least two of the four inventors on the patents-in-suit, the primary prosecuting attorney (Mark Haynes), witnesses who testified in the *3Com* action, and potential prior art witnesses are located in the Northern District of California where the transferee court enjoys absolute subpoena power over these witnesses. MOTION at 3–4. By contrast, USEI identifies litigation and licensing witnesses located in the District of Massachusetts and potential witnesses knowledgeable as to 3Com sales located in Singapore. RESPONSE at 4.

where Apple, Atheros, HP, Intel, Marvell, and NVIDIA maintain their headquarters.

In *Volkswagen II*, the Fifth Circuit explained that under the "100-mile" rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." 545 F.3d at 317. Applying the "100-mile" rule here to both non-party and party witnesses, the majority of witnesses called at trial would likely be traveling more than 100 miles to the courthouse in Tyler, suggesting witness inconvenience that favors transferring this case. Furthermore, even if the Court were to accept USEI's position that the five foreign-based Defendants maintain an overseas locus of design, development, and manufacturing operations, SURREPLY at 4, the convenience of overseas parties and witnesses is not given great weight and would not offset the inconvenience experienced by Defendants and Intervenors located in the transferee district. *See Genentech*, 566 F.3d at 1344.

Taken as a whole, the availability of compulsory process and the convenience of the witnesses weighs in favor of transfer to the Northern District of California.

## CONCLUSION

Weighing both the public and private interest factors, the Court concludes that Defendants have satisfied their burden under 28 U.S.C. § 1404(a) and demonstrated that the transferee venue is "clearly more convenient," with judicial economy considerations particularly favoring transfer. *Volkswagen II*, 545 F.3d at 314. Defendants' Motion to Transfer to the Northern District of California is **GRANTED**. All other pending Motions in this case should be handled by the transferee court.

So **ORDERED and SIGNED** this 13th day of July, 2010.


_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE