PAGES 1 - 147

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES WARE, CHIEF JUDGE

U.S. ETHERNET INNOVATIONS, LLC,

PLAINTIFF,

VS.                                     NO. C 10-3724 JW
                                           C 10-5254 JW
ACER, INC., ET AL.,                        C 10-3481 JW
                                        SAN FRANCISCO, CALIFORNIA
DEFENDANTS.                             THURSDAY
                                        MAY 3, 2011
_____     9:00 O'CLOCK A.M.

AT&T MOBILITY, LLC., ET AL.,

DEFENDANTS.

_____

ZIONS BANCORPORATION,

PLAINTIFF,

VS.

U.S. ETHERNET INNOVATIONS, LLC,

DEFENDANT.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES** ON NEXT PAGE

*REPORTED BY:    KATHERINE WYATT, CSR 9866, RMR, RPR*
*OFFICIAL REPORTER - US DISTRICT COURT*
*COMPUTERIZED TRANSCRIPTION BY ECLIPSE*

1    APPEARANCES:

2    FOR U.S. ETHERNET INNOVATIONS, LLC:

3    ROBBINS GELLER RUDMAN & DOWD, LLP
     3424 PEACHTREE ROAD, NC
4    SUITE 1650
     ATLANTA, GEORGIA 30326
5    404-504-6501

6    BY:   JOHN C. HERMAN, ESQUIRE
           RYAN K. WALSH, ESQUIRE
7          PETER JONES, ESQUIRE
           DAVID GANN, ESQUIRE
8

9    FOR SONY:

10   FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP.:
     TWO FREEDOM SQUARE
11   11955 FREEDOM DRIVE
     RESTON, VIRGINIA 20190-5675
12   202-408-4400
     BY:   LIONEL M. LAVENUE, ESQUIRE
13

14   FOR INTEL CORPORATION:

15   FISH & RICHARDSON P.C.
     1425 K STREET, NW
16   11TH FLOOR
     WASHINGTON, DC 20005
17   202-783-2331
     BY:   RUFFIN B. CORDELL, ESQUIRE
18         SETH M. SPROUL, ESQUIRE
           AAMIR A. KAZI, ESQUIRE
19   AND

20

21   WEIL, GOTSHAL & MANGES LLP
     700 LOUISIANA, SUITE 1600
22   HOUSTON, TX 77002-2755
     1-713-224-9511
23   BY:   GARLAND STEPHENS, ESQUIRE

24   FURTHER APPEARANCES ON NEXT PAGE.

25

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR   925-212-5224

```
 1  │ APPEARANCES, CONTINUED:
    │
 2  │ FOR NVIDIA CORPORATION:
    │
 3  │ FENWICK & WEST, LLP
    │ SILICON VALLEY CENTER
 4  │ 801 CALIFORNIA STREET
    │ MOUNTAIN VIEW, CALIFORNIA 94041
 5  │ 650-938-5200
    │
 6  │
    │
 7  │ BY:  HECTOR J. RIBERA, ESQUIRE
    │
 8  │
    │
 9  │ FOR BROADCOM CORPORATION:
    │
10  │ WILMER, CUTLER, PICKERING, HALE & DORR, LLP
    │ 60 STATE STREET
11  │ BOSTON, MA. 02109
    │
12  │
    │
13  │ BY:  JOHN V. HOBGOOD, ESQUIRE
    │
14  │
    │
15  │ AND
    │
16  │ WILMER, CUTLER, PICKERING, HALE & DORR, LLP
    │ 399 PARK AVENUE
17  │ NEW YORK, NEW YORK 10022
    │ 1-212-230-8888
18  │
    │
19  │ BY:  CHRISTOPHER R. NOYES, ESQUIRE
    │
20  │ FOR MARVELL SEMICONDUCTOR, INC.:
    │
21  │ QUINN EMANUEL QRQUHART & SULLIVAN, LLPO
    │ 555 TWIN DOLPHIN DRIVE, 5TH FLOOR
22  │ REDWOOD SHORES, CALIFORNIA 94065
    │ 650-801-5100
23  │ BY:  RAY R. ZADO, ESQUIRE
    │
24  │
    │
25  │ FURTHER APPEARANCES ON NEXT PAGE.
```

```
1   APPEARANCES, CONTINUED:

2   FOR AT&T MOBILITY, LLC. AND RENT-A-CENTER, INC.:

3   GREENBERG TRAURIG, LLP
    2450 COLORADO AVENUE
4   SUITE 400 EAST
    SANTA MONICA, CALIFORNIA 90404
5   310-586-1346
    BY:   BRIAN J. GAFFNEY, ESQUIRE
6

7   AND

8   GREENBERG TRAURIG, LLP
    153 TOWNSEND STREET
9   8TH FLOOR
    SAN FRANCISCO, CALIFORNIA 94107
10  358-4996

11  BY:  BLAKE CUNNINGHAM, ESQUIRE

12  AND

13  VINSON & ELKINS LLP
    2801 VIA FORTUNA, SUITE 100
14  AUSTIN, TX 78746-7568
    512-236-3393
15  BY:  JAMES DANIEL SHEAD, ESQUIRE

16  FOR APPLE, INC.:

17  WILLIAMS, MORGAN & AMERSON, P.C.:
    10333 RICHMOND, STE. 1100
18  HOUSTON, TEXAS 77042
    713-934-7011
19  BY:  CHRIS CRAVEY, ESQUIRE

20  DELL, INC.:

21  WINSTON & STRAWN, LLP
    35 WEST WACKER DRIVE
22  CHICAGO, IL. 60601

23  BY:  MICHAEL L. BRODY, ESQUIRE

24  FURTHER APPEARANCES ON NEXT PAGE.

25
```

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

**FURTHER APPEARANCES:**

**FOR ATHEROS:**

**REED SMITH, LLP:**
101 SECOND STREET
SUITE 1800
SAN FRANCISCO, CALIFORNIA 94105
391-8269

**BY:  DAVID T. POLLOCK, ESQUIRE**

     **JONAH D. MITCHELL, ESQUIRE**


**FOR ACER, INC.; ACER AMERICA, CORP; GATEWAY, INC.:**

**FREITAS TSENG BAIK & KAUFMAN, LLP**
100 MARINE PARKWAY, SUITE 200
REDWOOD SHORES, CALIFORNIA 94065
650-593-6301


**BY:  KEVIN C. JONES, ESQUIRE**

**FOR ANN TAYLOR, INC., ANN TAYLOR STORES, J.C. PENNEY:**

**ANDREWS KURTH LLP**
1717 MAIN STREET, SUITE 3700
DALLAS, TEXAS 75201
214-659-4810


**BY:  TONYA M. GRAY, ATTORNEY AT LAW**

**FOR HARLEY-DAVIDSON, INC. AND HARLEY-DAVIDSON MOTOR COMPANY, INC.:**
**BANNER & WITCOFF, LTD**
1100 13TH STREET, N.W., SUITE 1200
WASHINGTON, DC 20005-4051
202-824-3774
**BY:  H. WAYNE PORTER, ESQUIRE**

FURTHER APPEARANCES ON NEXT PAGE.

```
 1   FURTHER APPEARANCES:

 2   FOR DRESS BARN:

 3   CONNOLLY BOVE LODGE & HUTZ, LLP
     333 SOUTH GRAND AVENUE
 4   SUITE 2300
     LOS ANGELES, CALIFORNIA 90071-1504
 5   213-687-0498

 6   BY:  GLENN TROST, ESQUIRE

 7

 8   FOR CLAIRE'S BOUTIQUE:

 9   DLP PIPER LLP
     2000 UNIVERSITY AVENUE
10   EAST PALO ALTO, CALIFORNIA 94303-2214
     650-833-2001
11   BY:  ANDREW P. VALENTINE, ESQUIRE

12

13   FOR ASUSTEK COMPUTER:

14   COOLEY, GODWARD, KRONISH LLP
     FIVE PALO ALTO SQUARE
15   3000 EL CAMINO REAL
     PALO ALTO, CALIFORNIA 94306
16   650-857-0663

17   BY:  MATTHEW BRIGHAM, ESQUIRE

18        KYLE CHEN, ESQUIRE

19

20

21

22

23

24

25
```

1    MAY 3. 2012                          9:00 O'CLOCK  A.M.

2

3                      P R O C E E D I N G S

4          THE CLERK:  CALLING CASES C 10-3724, U.S. ETHERNET

5    INNOVATIONS VERSUS ACER, INC.;  C 10-3481, ZIONS BANCORPORATION

6    VERSUS U.S. ETHERNET INNOVATIONS; AND C 10-5254, U.S. ETHERNET

7    INNOVATIONS VERSUS AT&T MOBILITY.

8              COUNSEL THAT ARE SPEAKING, PLEASE APPROACH AND STATE

9    YOUR NAME FOR THE RECORD.

10         MR. HERMAN:  GOOD MORNING.  JOHN HERMAN FOR U.S.

11   ETHERNET.

12             THE COURT:  MR. HERMAN.

13         MR. WALSH:  GOOD MORNING, YOUR HONOR.  RYAN WALSH FOR

14   U.S. ETHERNET.

15             THE COURT:  MR. WALSH.

16         MR. STEPHENS:  GOOD MORNING, YOUR HONOR.  GARLAND

17   STEPHENS FOR INTEL CORPORATION.

18             THE COURT:  MR. STEPHENS.

19         MR. CORDELL:  GOOD MORNING, YOUR HONOR.  RUFFIN

20   CORDELL FOR INTEL.

21             THE COURT:  OKAY.

22         MR. ZADO:  GOOD MORNING, YOUR HONOR.  RAY ZADO FROM

23   MARVELL SEMICONDUCTOR.

24             THE COURT:  MR. ZADO.

25             THAT'S IT?  WELL, I OFTEN AM ASKED ABOUT THE JOB OF

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

1    JUDGING, AND I ALWAYS SAY CRIMINAL SENTENCING IS THE MOST

2    DIFFICULT PART OF THE JOB. CLAIM CONSTRUCTION IS PROBABLY THE

3    MOST INTERESTING PART OF THE JOB, AND I DO APPRECIATE THAT THIS

4    IS A SECOND ROUND WITH RESPECT TO THESE MATTERS.  AND I DID

5    NOTICE THAT SOME ADDITIONAL TERMS WERE ADDED BEYOND OUR MAGIC

6    TEN AS A PART OF THIS.

7              AND SO SOME OF IT IS A MATTER THAT WE'RE COMING TO

8    FOR THE FIRST TIME, AND OTHER PARTS OF IT ARE AT THE INVITATION

9    OF THE COURT TO KIND OF GIVE ME A LITTLE BIT MORE TO HELP ME

10   WITH SOME TERMS THAT I WAS HAVING SOME DIFFICULTY WITH.

11             AND I WAS TOLD BY MY STAFF AS WE WERE PREPARING FOR

12   THIS THAT THE PARTIES HAD PROPOSED DECLARATIONS WITH RESPECT TO

13   AT LEAST ONE OF THE TERMS, AND THAT I WOULD BE ADVISED ABOUT

14   THAT.  THESE WERE COMPETING DECLARATIONS.

15             AS PART OF THE CLAIM CONSTRUCTION PROCESS, I TRY TO

16   GET AWAY WITH NOT HAVING DECLARATIONS OR OTHER EXTRINSIC

17   INFORMATION UNLESS I FIND THAT I CAN'T FROM WITHIN THE INTRINSIC

18   INFORMATION COME TO A DEFINITION.

19             BUT I'LL LEAVE IT TO THE PARTIES. IF YOU BOTH AGREE

20   THAT THIS IS A CASE WHERE DECLARATIONS, YOU BELIEVE, WOULD BE

21   HELPFUL, LET ME KNOW THAT YOU'RE NOW GOING OUTSIDE OF THE

22   INTRINSIC RECORD AND GIVING ME SOMETHING NEW AND DIFFERENT SO I

23   CAN MAKE SURE I PAY ATTENTION TO THAT WHEN I'M ADDRESSING THESE

24   MATTERS IN ORDER.  OKAY?

25             SO WHO IS GOING FIRST?

1            **MR. HERMAN:**  GOOD MORNING, YOUR HONOR.  JOHN HERMAN

2  FOR PLAINTIFF.

3            **THE COURT:**  AS I UNDERSTAND IT, YOU'RE GOING TO

4  DIVIDE THE TERMS AND KIND OF USE YOUR TIME BACK AND FORTH.  I'M

5  NOT GOING TO KEEP TRACK OF THE TIME.  I PRESUME YOU WILL, SO

6  THAT WE'LL TAKE A BREAK SOMEWHERE IN THE MIDDLE OF OUR SESSION.

7               BUT SO YOU KIND OF DIVIDE IT UP, THE WORK, BETWEEN

8  THE TWO SIDES.

9            **MR. HERMAN:**  YES, YOUR HONOR.  AND WE'VE BROKEN IT

10  DOWN BY AGREEMENT OF THE PARTIES INTO THREE DISTINCT CATEGORIES.

11            **THE COURT:**  ALL RIGHT.

12            **MR. HERMAN:**  THE FIRST CATEGORY THAT WE'LL

13  COLLECTIVELY ADDRESS WILL BE THE THREE TASK TERMS:  FRAME

14  TRANSMISSION TASK, FRAME TRANSFER TASK AND MEDIUM ACCESS TASK.

15  THEN, THE SIX MEANS-PLUS-FUNCTION TERMS YOUR HONOR IDENTIFIED IN

16  YOUR FIRST MARKMAN ORDER.  AND THEN, THE TEN LOGIC TERMS THAT

17  YOUR HONOR INSTRUCTED THE PARTIES TO MEET AND CONFER ABOUT AND

18  SUBMIT TO THE COURT.

19            **THE COURT:**  ALL RIGHT.

20            **MR. HERMAN:**  SO THE INTENT WILL BE FOR US TO GO FIRST

21  ON THE TASK TERMS, TO TURN IT OVER TO THE PLAINTIFFS FOR A

22  RESPONSE, AND THEN WE'D HAVE A BRIEF REBUTTAL.  THEN, WE'D CLOSE

23  OUT THE ARGUMENT ON THE TASK TERMS AND DO THE SAME THING FOR THE

24  MEANS-PLUS-FUNCTION AND LOGIC TERMS.

25            **THE COURT:**  VERY WELL.

1          **MR. HERMAN:**  GIVEN THAT THIS IS -- THAT WE HAVE 19

2     TERMS, I UNDERSTAND WE HAVE A LIMITED TIME PERIOD WITH YOUR

3     HONOR THIS MORNING, AND THAT THIS IS THE SECOND MARKMAN HEARING

4     I'M GOING TO DISPENSE WITH ANY KIND OF ELABORATE INTRODUCTION

5     AND MOVE RIGHT INTO THE TASK TERMS.

6          **THE COURT:**  I WOULD APPRECIATE THAT.

7          **MR. HERMAN:**  SO ALL THREE OF THESE TERMS ARE IN THE

8     '094 PATENT. AND THEY APPEAR IN A NUMBER OF THE INDEPENDENT

9     CLAIMS. SO THE '094 PATENT, THE INTRODUCTION OF ALL THE

10    INDEPENDENT CLAIMS READS:

11               "A METHOD FOR TRANSMITTING A FRAME OF DATA FROM

12               A HOST SYSTEM THROUGH A NETWORK INTERFACE DEVICE TO

13               A NETWORK."

14          SO ALL OF THESE CLAIM TERMS ARE IN THE CONTEXT OF

15    MOVING A FRAME OF DATA FROM THE HOST COMPUTER TO THE BUFFER

16    MEMORY AND THEN OUT TO THE NETWORK. THAT'S WHAT THESE PATENTS,

17    THE METHOD AND CLAIM COVERS.

18          EACH OF THE TASK TERMS AT ISSUE BEFORE YOUR HONOR

19    COMBINE WELL-UNDERSTOOD ETHERNET CONCEPTS.  AND I'LL GET INTO

20    THIS IN SOME DETAIL. FRAME TRANSMISSION, FRAME TRANSFER AND

21    MEDIUM ACCESS ARE ALL WELL-UNDERSTOOD ETHERNET CONCEPTS.

22          WE DON'T BELIEVE THAT SIMPLY ADDING THE WORD "TASK"

23    TO THESE CONCEPTS RENDERS THE CLAIMS INDEFINITE.  COULD EASILY

24    HAVE SAID "OPERATION" OR SOMETHING ALONG THOSE LINES.

25          THE TASK TERMS, AS YOUR HONOR KNOWS, ARE ENTITLED TO

1    FULL SCOPE OF THE CLAIM LANGUAGE.  AND YOUR HONOR CORRECTLY

2    POINTED OUT IN THE FIRST MARKMAN ORDER THAT THE TASK TODAY, IF

3    YOU WILL, IS TO DETERMINE WHAT A POSITA WOULD UNDERSTAND THESE

4    TERMS TO MEAN IN THE CONTEXT OF THE '094 PATENT.

5              ABSENT A CLEAR DISAVOWAL IN THE SPECIFICATION OR THE

6    PROSECUTION HISTORY, THE PATENTEE IS ENTITLED TO THE FULL SCOPE

7    OF ITS CLAIM LANGUAGE.

8              WE DON'T THINK THERE'S BEEN ANY SHOWING OF ANY KIND

9    OF CLEAR DISAVOWAL IN THIS CASE.

10             I DON'T THINK IT'S DISPUTED.  THESE ARE NOT

11   MEANS-PLUS-FUNCTION TERMS. WE'RE NOT LIMITED TO STRUCTURE IN THE

12   SPECIFICATION AND STANDARD CLAIM CONSTRUCTION PRINCIPLES APPLY.

13             SO WHAT WE'RE TRYING TO DO IS FIGURE OUT WHAT THE

14   PROPER CONSTRUCTION FOR POSITA UNDERSTANDING. WE DON'T HAVE TO

15   FIGURE OUT WHERE THESE THINGS TAKE PLACE OR THE EXACT ALGORITHMS

16   THAT ARE APPLIED AS LONG AS A POSITA WOULD UNDERSTAND IT.

17             AND, OF COURSE, YOUR HONOR COVERED THE LAW OF

18   INDEFINITENESS IN YOUR FIRST ORDER WE THINK APPROPRIATELY.  SO

19   THERE ARE TWO CASES THAT THE PARTIES HAVE RESPECTIVELY CITED ON

20   THIS FOR THESE TERMS.  THE BANCORP CASE THAT WE BELIEVE SUPPORTS

21   OUR POSITION DIRECTLY.  IT'S FED. CIRCUIT OPINION IN 2004.

22             AND THE DEFENDANTS HAVE CITED THE AGERE CASE.  AND

23   THE DISTINCTION BETWEEN THESE TWO CASES, I THINK, IS

24   APPROPRIATE.  AND THIS IS WHERE THE ARGUMENT COMES DOWN TODAY.

25             IN THE BANCORP CASE, THE DISTRICT COURT HAD FOUND THE

1  TERM "SURRENDER VALUE PROTECTED INVESTMENT SERVICES" AS

2  INDEFINITE.  THE FEDERAL CIRCUIT REVERSED BECAUSE THE COMPONENT

3  TERMS WERE UNDERSTOOD BY POSITA.

4          AND CONTRAST THAT WITH THE AGERE SYSTEMS CASE CITED

5  BY THE DEFENDANTS.  THERE WAS A 28-WORD LONG TERM THAT DID NOT

6  HAVE A MEANING IN THE ART.

7          AND THE COURT THERE, THE EASTERN DISTRICT OF

8  PENNSYLVANIA, FOUND THAT TERM TO BE INDEFINITE.  SO THE QUESTION

9  IS:  DO THESE TERMS HAVE A MEANING IN THE ART OR NOT, AS YOUR

10  HONOR CORRECTLY POINTED OUT IN YOUR FIRST ORDER.

11          THE PARTIES' RESPECTIVE POSITIONS ON "FRAME

12  TRANSMISSION TASK," WE THINK PLAIN AND ORDINARY MEANING APPLIES.

13  AND THAT IS:

14              "COMMANDS OR INSTRUCTIONS TO INITIATE

15              TRANSMISSION OF A FRAME."

16          THE DEFENDANT'S POSITION TODAY THAT IS THE TERM IS

17  INDEFINITE.

18          I THINK IT'S IMPORTANT TO NOTE IN THE JOINT CLAIMS

19  CONSTRUCTION STATEMENT THAT WAS INITIALLY FILED THEY DID NOT

20  ALLEGE IT WAS INDEFINITE. INSTEAD, THEY TOLD YOUR HONOR THAT THE

21  COURT DOESN'T NEED CONSTRUCTION. INSTEAD, THEY WANTED THE LARGER

22  PHRASE:

23              "EXECUTING A FRAME TRANSMISSION TASK IN THE

24              NETWORK INTERFACE DEVICE" TO BE CONSTRUED.

25          AGAIN, THIS LARGER PHRASE IN THE 4-2 EXCHANGE THE

1   DEFENDANTS DID NOT ALLEGE IT WAS INDEFINITE. IT WAS ONLY IN THE

2   4-3 EXCHANGE THAT THE INDEFINITENESS ARGUMENT POPPED UP FOR THE

3   FIRST TIME.

4           SO WHAT DOES "FRAME TRANSMISSION TASK" MEAN?

5           FRAME TRANSMISSION OPERATIONS WERE WELL-UNDERSTOOD IN

6   THE ART IN THE 1990'S.  AND THIS IS SHOWN BOTH IN THE ETHERNET

7   SPECIFICATION DISCLOSURE AND IN THE IEEE 802.3.

8           THE ETHERNET SPECIFICATION IN WHICH INTEL WAS A PARTY

9   PUTTING TOGETHER HAD A VERY ELABORATE AND DEFINED "FRAME

10  TRANSMISSION OPERATION" IS WHAT THE SPECIFICATION CALLED IT.

11          THIS BECAME THE STANDARD IN ORDER TO TRANSMIT A FRAME

12  OF DATA FROM A HOST COMPUTER OUT TO A NETWORK. SO THIS FRAME

13  TRANSMISSION OPERATION, IT WAS IMPLEMENTED IN THE VERSION 1.0 OF

14  THE SPECIFICATION, HAD A VERY DEFINED SET OF ALGORITHMS THAT

15  APPLIED TO FRAME TRANSMISSION.

16          THIS IS BACK IN 1980.  THIS IS A DECADE BEFORE THESE

17  PATENTS.  SO ONE OF ORDINARY SKILL IN THE ART -- AT LEAST

18  SOMEONE WHO IS COMPETENT IN THE ART IN THE EARLY '90'S -- WOULD

19  UNDERSTAND EXACTLY WHAT A FRAME TRANSMISSION MEANT IN THE

20  CONTEXT OF ETHERNET.

21          THIS IS PART OF THE SPECIFICATION. INTERESTINGLY --

22          **THE COURT:**  IS THE -- I NOTICE HERE IT'S THE FRAME

23  TRANSMISSION OPERATION, AND I CAN'T READ ALL OF THAT, BUT THE

24  CLAIM HERE SAYS "EXECUTING A FRAME TRANSMISSION TASK."

25          SO I PRESUME THAT THE INVENTOR HERE HAD IN MIND

1    SOMETHING THAT WAS GOING TO BE DONE IN PARTICULAR THAT

2    INITIATES TRANSMISSION.

3              SO WHILE FRAME TRANSMISSION OR FRAME TRANSMISSION

4    OPERATION MIGHT HAVE BEEN KNOWN, DO I NEED TO BE CONCERNED WITH

5    THOSE FRAME TRANSMISSION OPERATIONS THAT INITIATE TRANSMISSION?

6    IS THE INITIATION OF TRANSMISSION AN IMPORTANT COMPONENT OF WHAT

7    IS CALLED A "FRAME TRANSMISSION TASK"?

8              **MR. HERMAN:**  I UNDERSTAND, YOUR HONOR.  THAT EXACT

9    QUESTIONS WAS DISCUSSED IN THE PROSECUTION HISTORY. AND WE

10   DIDN'T -- AT THE TIME OF THE FIRST HEARING WE DID NOT RECOGNIZE

11   THAT TO BE AN ISSUE.

12             THE INDEFINITENESS ISSUE POPPED UP AT THE LAST

13   SECOND, AND WE DIDN'T REALIZE, SO WE DID NOT PRESENT THE

14   PROSECUTION HISTORY TO YOUR HONOR ON THIS.

15             I WOULD LIKE TO DO SO TODAY, AND I THINK IT WILL HELP

16   ANSWER THAT EXACT QUESTION, YOUR HONOR.

17             **THE COURT:**  SO BUT AT THIS POINT WHERE YOU'RE

18   SATISFYING ME IS THAT THE PHRASE "FRAME TRANSMISSION OPERATION"

19   WAS A COMMONLY UNDERSTOOD PHRASE USED IN THE ART AT THE TIME.

20             **MR. HERMAN:**  ABSOLUTELY. AND I'D LIKE TO TURN NOW TO,

21   IN PART, ADDRESS YOUR HONOR'S QUESTION WITH THE PROSECUTION

22   HISTORY.

23             THIS IS IN THE EXCERPTS THAT WE WANTED TO CITE YOUR

24   HONOR TO.  THERE WAS AN OFFICE ACTION.  I BELIEVE IT'S CITED IN

25   THE DEFENDANTS' BRIEF. THERE WAS AN OFFICE ACTION DATED MARCH 9,

1   1996, WHERE THE EXAMINER REJECTED THIS CLAIM, CLAIM ONE OF THE

2   '094 PATENT FOR DOUBLE PATENTING. AND IT COMPARED THE FRAME

3   TRANSMISSION TASK TO WHAT WAS IN THE ISSUED '872 PATENT, WHICH

4   IS PART OF THIS SAME 3COM SET OF PATENTS.  AND THE EXAMINER

5   FOUND THAT THE FRAME TRANSMISSION TASK IN CLAIM 21 WAS THE SAME

6   THING AS THE PATENT CLAIM IN THE '872 PATENT.

7           AND THAT PATENT PROVIDED FOR A NETWORK INTERFACE

8   ADAPTER THAT INCLUDES A MEDIUM ACCESS CONTROLLER FOR MANAGING

9   TRANSMISSION OF FRAMES OF DATA FROM THE BUFFER MEMORY TO THE

10  NETWORK. AND THEN, THE LOGIC WHICH INITIATES THE TRANSMISSION.

11          SO THE EXAMINER, ONE OF ORDINARY SKILL IN THE ART,

12  LOOKED AT THIS EXACT CLAIM TERM, "FRAME TRANSMISSION TASK" AND

13  FOUND IT TO HAVE THE SAME MEANING AS THE PATENT CLAIM IN THE

14  '872 PATENT THAT PROVIDED FOR MEDIUM ACCESS CONTROLLER TO MANAGE

15  TRANSMISSION OF FRAMES.

16          **THE COURT:**  WAS '872, 21, WERE THOSE BOTH METHOD

17  CLAIMS?

18          **MR. HERMAN:**  NO, I DON'T BELIEVE THE '872 PATENT WAS

19  A METHOD CLAIM.

20          **THE COURT:**  DOES IT MAKE A DIFFERENCE THAT --

21  BECAUSE, YOU KNOW, IF YOU'VE GOT A DEVICE AND YOU SAY THE DEVICE

22  DOES SOMETHING, WHAT IT DOES COULD BE IMPORTANT FOR WHAT IT IS

23  BECAUSE THE CLAIM IS WHAT IT IS.

24          DO I NEED TO BE MORE CONCERNED IN A METHOD CLAIM,

25  THOUGH, FOR WHAT IT DOES, BECAUSE THAT BECOMES THE INVENTION?

1      **MR. HERMAN:**  THERE WAS AN INTERNAL DISCLAIMER ADDED

2   TO FIX THE REJECTION OF THE EXAMINER HERE.  BUT I THINK THE

3   POINT THAT WE'RE TRYING TO ESTABLISH IS THAT THE EXAMINER WHO IS

4   ONE OF SKILL IN THE ART READING THIS PATENT UNDERSTOOD EXACTLY

5   WHAT THE FRAME TRANSMISSION TASK WAS, AND APPLIED IT TO THE

6   ACTUAL STRUCTURE , IF YOU WILL, THAT WAS SET FORTH IN THE

7   PATENT.

8      **THE COURT:**  BUT IF I HAD -- SO IF I WERE TO ADOPT --

9   WELL, AS I READ THIS -- I HAVEN'T READ IT AND STUDIED IT -- BUT

10  "MANAGING THE TRANSMISSION," THAT'S A TASK, RIGHT?  "MANAGING

11  TRANSMISSION," AND SOMEHOW I COULD FIGURE THAT OUT. "FROM THE

12  BUFFER MEMORY TO THE NETWORK."

13      SO IT'S GOT MANAGEMENT TASKS IN A PARTICULAR PLACE

14  DOING A PARTICULAR THING. AND SO IF YOU ARE GUIDING ME TOWARD

15  THERE IS A WAY ONE OF SKILL IN THE ART WOULD UNDERSTAND WHAT

16  FRAME TRANSMISSION TASK IS DOING IN CLAIM ONE OF THE '094 PATENT

17  AT A PARTICULAR TIME AND AT A PARTICULAR PLACE, I'M WITH YOU.

18      **MR. HERMAN:**  AND I WOULD LIKE TO SKIP AHEAD. I

19  REALIZE THAT WE'RE TRYING TO STAY SOMEWHAT ON A TIGHT TIME LINE.

20      I WOULD LIKE TO SKIP AHEAD AND TALK ABOUT THE

21  PROSECUTION HISTORY AS IT RELATES -- ITS IN THE SAME OFFICE

22  ACTION AS IT RELATES TO THE FRAME TRANSFER TASK, IF I MAY.

23      WOULD YOU JUMP TO SLIDE 36, PLEASE?

24      I'M SORRY.  IF I COULD BACK UP TO SLIDE 35.

25      THIS, I THINK, GETS TO YOUR HONOR'S PREVIOUS

```
1    QUESTION, WHICH THERE WAS IN THE SAME OFFICE ACTION, THE MARCH

2    19, 1996 OFFICE ACTION, THE EXAMINER RAISED A QUESTION ABOUT

3    WHERE THE FRAME TRANSFER TASK OCCURS.

4              AND THE LANGUAGE AT THE TIME SAID THAT:

5                   "EXECUTING A FRAME TRANSFER TASK IN THE HOST

6                   SYSTEM."

7              AND THE EXAMINER IN THE OFFICE ACTION SAID:

8                   "WAIT A MINUTE. THE SPECIFICATION TALKS ABOUT

9                   THE EXECUTION OF THIS TASK, AND AN EMBODIMENT SHOWS

10                  IT'S HAPPENING IN THE ADAPTER, NOT IN THE HOST.  SO

11                  I NEED SOME CLARIFICATION."

12             AGAIN, THE POINT OF THIS PROSECUTION HISTORY IS THAT

13   THE EXAMINER UNDERSTOOD PRECISELY WHAT THE TASKS BEING PERFORMED

14   WERE.  BUT HIS QUESTION WAS:

15                  "DOES IT HAVE TO BE IN THE HOST?  BECAUSE IF IT

16                  IS I DON'T SEE AN EMBODIMENT IN THE PATENT TO

17                  SUPPORT THAT."

18             SO HE ASKED FOR CLARIFICATION.

19             THE RESPONSE CAME BACK.  AND WHAT THE PATENTEE SAID

20   WAS THAT THE FRAME -- ABOUT HALFWAY DOWN:

21                  "TO CLARIFY, THE APPLICANT HAS STATED THAT THE

22                  FRAME TRANSFER TASK IS INITIATED IN THE HOST SYSTEM."

23             AND THAT'S WHERE THAT TERM "INITIATED" CAME INTO THE

24   PATENT.  SO INSTEAD OF JUST "IN THE HOST SYSTEM" THEY ADDED THE

25   WORD:
```

1                    "INITIATED IN THE HOST SYSTEM. OBVIOUSLY, THIS

2            REMOVES THE QUESTION RAISED BY THE EXAMINER AS TO

3            WHAT IS MEANT BY 'EXECUTING' IN THE HOST SYSTEM. THE

4            RESOURCES THAT ACTUALLY CAUSE TRANSFER OF THE FRAME

5            TO THE BUFFER MEMORY MAY RESIDE IN THE HOST OR ON THE

6            ADAPTER. THE PROCESS OF INITIATING THE FRAME TRANSFER

7            TASK IS EXECUTED IN THE HOST."

8            AND THERE'S SUPPORTING LANGUAGE IN THE PATENT FOR

9    THAT.  THAT'S AT COLUMN FOUR, LINE 52.  AND IT SPILLS OVER INTO

10   COLUMN FIVE.

11                   "THE FRAME TRANSFER TASK IS THEN EXECUTED" --

12           AFTER THE INITIATION -- "THE FRAME TRANSFER TASK IS

13           THEN EXECUTED IN PARALLEL WITH THE FRAME TRANSMISSION

14           TASK AS SET FORTH IN THE CLAIM -- AS RECITED IN THE

15           CLAIM."

16           SO I THINK THAT THIS WORD "INITIATED" THAT YOUR HONOR

17   STRUGGLED WITH IN YOUR FIRST ORDER, I THINK THIS PROSECUTION

18   HISTORY ADDRESSES WHAT IS GOING ON.

19           THERE IS A TASK INITIATED IN THE HOST, BUT THEN IT'S

20   PERFORMED IN PARALLEL.  AND THAT CAN BE EITHER IN THE HOST OR IN

21   THE ADAPTER.  BUT IT'S THE WHOLE MOVING OF THE FRAME FROM THE

22   HOST THROUGH THE BUFFER MEMORY OUT TO THE NETWORK AS THESE TWO

23   TASKS ARE PERFORMED.

24           **THE COURT:**  WELL, I FOUND IT -- I FOUND IT HELPFUL TO

25   LOOK AT THE PROSECUTION HISTORY WITH RESPECT TO THE PHRASE

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

1  "FRAME TRANSFER TASK," BECAUSE THERE THE PATENTEE HAD TO RESPOND

2  TO THE OFFICE ACTION AND DID RESPOND BY SAYING THAT THE PHRASE

3  REFERRED TO COMPOSING AN IDENTIFIER, LOADING THE IDENTIFIER.

4  THEY ACTUALLY WENT THROUGH SOME STEPS.  AND THAT BECOMES PART OF

5  THE PROSECUTION HISTORY.  AND THAT CAN HELP ME DEFINE THAT TERM.

6          BUT I DIDN'T SEE A COMPARABLE CONVERSATION BETWEEN

7  THE EXAMINER AND THE PATENTEE WITH RESPECT TO "FRAME

8  TRANSMISSION TASK," WHERE THE EXAMINER SAID:

9          "I DON'T UNDERSTAND WHAT THIS MEANS OR WHERE IT'S

10          PERFORMED.  TELL ME SOMETHING ABOUT IT."  AND THEN,

11  SOMETHING WAS DELINEATED WHICH BECOMES PART OF THE PROSECUTION

12  HISTORY, WHICH HELPS ME DEFINE IT.

13          BUT I SEE IT HERE, AND I APPRECIATE IT HERE.

14      **MR. HERMAN:**  YES.

15      **THE COURT:**  AND WE'LL COME TO THAT, I GUESS, FORMALLY

16  IN A MOMENT.  BUT I DIDN'T WANT TO THE LEAVE "FRAME TRANSMISSION

17  TASK" WITHOUT GETTING YOUR BEST ARGUMENT AS TO WHAT IT MEANS.

18          NOW, THE BEST ARGUMENT I HAVE IS:

19          "COMMANDS OR INSTRUCTIONS TO INITIATE

20          TRANSMISSION OF A FRAME."

21      IS THAT WHERE YOU WOULD WISH ME TO GO?

22      **MR. HERMAN:**  YES, YOUR HONOR.

23      **THE COURT:**  OKAY.

24      **MR. HERMAN:**  THE ONLY PROSECUTION HISTORY ON FRAME

25  TRANSMISSION TASK AS OPPOSED TO FRAME TRANSFER TASK IS -- CAN

1   YOU GO TO SLIDE 23?  AND JUST TO BE CLEAR ABOUT THIS IS WHEN --

2              **THE COURT:**  SO IT WOULD BE EXECUTING COMMANDS OR

3   INSTRUCTIONS TO INITIATE TRANSMISSION?  THIS IS EXECUTING A

4   FRAME TRANSMISSION TASK, RIGHT?

5              **MR. HERMAN:**  YES, YOUR HONOR.  THAT'S RIGHT.

6              **THE COURT:**  OKAY.

7              **MR. HERMAN:**  SO THE OFFICE ACTION WHERE -- THAT WE'VE

8   CITED BEFORE, IT SAYS "TASK."  IF YOUR HONOR READS THE LANGUAGE

9   IN THE BOTTOM SECTION THERE --

10             **THE COURT:**  RIGHT.

11             **MR. HERMAN:**  -- IT SAYS "TASK."  BUT IF YOU READ THE

12  LANGUAGE, THE TASK THE EXAMINER IS TALKING ABOUT THERE IS THE

13  FRAME TRANSMISSION TASK, WHICH WE'VE ADDED IN BRACKETS, BECAUSE

14  THAT'S THE EXACT CLAIM LANGUAGE THAT IS CITED AFTERWARDS FOR

15  "FRAME TRANSMISSION TASK."

16             NOW, THAT WASN'T DIRECTLY RESPONDED TO BY THE

17  PATENTEE OR THE APPLICANT, BUT THE EXAMINER CERTAINLY WHEN HE

18  READ THE PATENT CLAIM, THE PROPOSED CLAIM, HE UNDERSTOOD WHAT IT

19  MEANT.

20             **THE COURT:**  ALL RIGHT.  I'LL GO TO THAT.  AND THANK

21  YOU FOR THAT.

22             HOWEVER, AND PERHAPS JUST IN THE INTEREST OF TIME,

23  CAN I JUMP YOU TO THE DEPENDENT CLAIMS?  CLAIMS TWO, THREE,

24  MAYBE FIVE, BUT DEFINITELY TWO AND THREE, ARE THOSE EXAMPLES OF

25  COMMANDS OR INSTRUCTIONS TO INITIATE TRANSMISSION?  BECAUSE I

1    THOUGHT FROM THE DEPENDENT CLAIM I COULD COME TO A GOOD

2    DEFINITION, BECAUSE IF THEY ARE DEPENDING FROM ONE THEY HAVE TO

3    BE INCLUDED IN ONE.

4           AND SO IF YOU TELL ME THAT EXECUTING A CARRIER SENSE,

5           MULTIPLE ACCESS PROTOCOL," OR "EXECUTING A CARRIER

6           SENSE, MULTIPLE ACCESS WITH COLLISION DETECTION

7           PROTOCOL" ARE EXAMPLES OF COMMAND OR INSTRUCTIONS,

8    WE'RE NOW MOVING IN THE RIGHT DIRECTION BECAUSE -- AND SO WHAT

9    ARE THEY?

10          **MR. HERMAN:**  YOUR HONOR, THOSE ARE -- AND I'LL SPEAK

11   SPECIFICALLY WITH REFERENCE TO DEPENDENT CLAIM TWO.  THE CARRIER

12   SENSE MULTIPLE ACCESS PROTOCOL, THAT'S GOING TO APPEAR IN THE

13   802.3 STACK.

14          AND THIS IS IN CONNECTION WITH THE MEDIUM ACCESS

15   TASK. YOU'LL SEE THAT THIS, WHAT'S REFERRED TO IN THE DEPENDENT

16   CLAIM TO THE CSMA.

17          IF I CAN JUMP AHEAD, THIS IS PART OF THE 802.3

18   SPECIFICATION.  WHAT THE 802.3 SPECIFICATION DOES IS IT PROVIDES

19   FOR A LOT OF THIS FRAMING OF THE DATA AND THE PACKAGING.

20          **THE COURT:**  RIGHT.  BUT SO ARE THOSE -- MY QUESTION

21   IS:  IF I AM GOING TO ADOPT FOR DEFINING A FRAME TRANSMISSION

22   TASK, EXECUTING COMMANDS OR INSTRUCTIONS, ARE THE DEPENDENT

23   CLAIMS WHERE IT SAYS:

24          "WHEREIN, THE FRAME TRANSMISSION TASK INCLUDES

25          EXECUTING THIS PROTOCOL," IS THAT EXECUTING COMMANDS

1    OR INSTRUCTIONS?

2          **MR. HERMAN:**  I BELIEVE YOU'RE EXACTLY RIGHT, YOUR

3    HONOR. THOSE ARE SOME OF THE ADDITIONAL INSTRUCTIONS THAT COMPLY

4    WITH THESE PROTOCOLS. THAT'S PART OF THE FRAME PACKAGING.  THE

5    FRAME TRANSMISSION WOULD INCLUDE PUTTING IT IN THE PROTOCOL SO

6    THAT WHEN IT GETS TO THE NETWORK THE COMPUTERS ON THE OTHER SIDE

7    WOULD UNDERSTAND WHAT IT MEANS.

8          **THE COURT:**  ALL RIGHT.  NOW, LET ME FRAME THIS

9    QUESTION. SO THEN WHAT I HAVE FOR CLAIMS TWO AND THREE, AT

10   LEAST, AND MAYBE FIVE, I HAVE A FRAME TRANSMISSION TASK THAT

11   INCLUDES A DEFINITION, BECAUSE I'M TOLD OF A PARTICULAR PROTOCOL

12   THAT IS INCLUDED WITHIN WHAT IS CALLED A "FRAME TRANSMISSION

13   TASK." SO THAT THE FRAME TRANSMISSION TASK OF CLAIM ONE IS

14   BROADER THAN THAT, SO FOR ME THE INDEFINITE QUESTION IS: IS IT

15   SUFFICIENTLY NARROW THAT I KNOW WHAT IS INCLUDED AND WHAT IS

16   NOT?  SO IF SOMEONE IS INFRINGING, ARE THEY DOING A FRAME

17   TRANSMISSION TASK?  BECAUSE IF IT'S UNDEFINED, THEN SOMEONE

18   CAN'T SAY:

19          "WELL, I NEED TO AVOID THAT."

20          AND SO "COMMAND" OR "INSTRUCTION" IS VERY BROAD.  IT

21   MEANS THAT YOU CAN'T HAVE ANY COMMANDS OR INSTRUCTIONS.  AND IN

22   THE TECHNOLOGY OF THIS KIND, MOST EVERYTHING IS DONE THROUGH

23   COMMANDS OR INSTRUCTIONS, AREN'T THEY?

24          **MR. HERMAN:**  YES, YOUR HONOR. I DON'T -- THESE ARE

25   NOT -- THESE ARE NOT THE POINTS OF NOVELTY OF THIS PATENT.

1   THESE CONCEPTS, THE TASK TERMS, WERE ALL KNOWN IN THE ART.  THE

2   CONCEPT OF HOW TO SEND A DATA FRAME THROUGH THE HOST, THROUGH A

3   BUFFER TO A NETWORK. THAT'S NOT NOVEL.  THAT'S NOT PART OF THE

4   NOVELTY OF THE PATENT.

5          THE WAY IN WHICH IT HAPPENS, THE TIMING OF WHICH IT

6   HAPPENS WHICH ARE PART OF OTHER CLAIM ELEMENTS ARE, INDEED, THE

7   THINGS THAT WE THINK ARE PART OF THE -- INTEGRAL TO THE

8   INVENTION.

9          **THE COURT:**  ALL RIGHT.

10          **MR. HERMAN:**  BUT FOLLOWING THESE PROTOCOLS, EITHER

11   THE 802.3, OR IEEE SPEC OR THE ETHERNET PROTOCOL, WE DON'T THINK

12   THAT FOLLOWING THOSE PROTOCOLS IS PART OF THE INVENTION,

13   NECESSARILY, IF THAT MAKES SENSE.

14          **THE COURT:**  WELL, NOT PART OF THE NOVELTY OF IT, BUT

15   IT'S PART OF THE INVENTION, BECAUSE YOU'RE TELLING ME THAT THOSE

16   ARE A STEP.  THAT IS A STEP THAT IS DISCLOSED AS A NECESSARY

17   STEP, BECAUSE I GOT TO EXECUTE A FRAME TRANSMISSION TASK TO

18   INITIATE TRANSMISSION.

19          SO I GOT TO GO THROUGH THAT BEFORE I INITIATE. AND

20   THE PROTOCOLS YOU'RE TELLING ME ABOUT ARE NECESSARY TO INITIATE

21   TRANSMISSION.

22          **MR. HERMAN:**  AGREED, YOUR HONOR. YES.

23          **THE COURT:**  ALL RIGHT. THANK YOU.

24          **MR. HERMAN:**  AND THEN, I'LL MAKE TWO VERY BRIEF

25   POINTS, AND THEN SIT DOWN.

1          THE TERM "TASK" AND THE TERM "EXECUTING," I'D LIKE TO

2    COVER THOSE. THE TERM "TASK" IS SOMETHING THAT WOULD BE

3    UNDERSTOOD IN THE ART.  THERE'S NO ALLEGATION ANYWHERE THAT I'M

4    AWARE OF THAT THE TERM "TASK" IS INDEFINITE, THAT PEOPLE DON'T

5    UNDERSTAND WHAT "TASK" MEANS.

6          SO ETHERNET SPECIFICATION USES THE TERM "OPERATION"

7    AS OPPOSED TO "TASK."  AND I THINK THAT THAT'S ORDINARY MEANING.

8          WE'D POINT OUT THAT THE EXAMINER UNDERSTOOD WHAT THE

9    TASK TERMS MEAN.  DR. MITZENMACHER, OUR PROPOSED EXPERT, REFERS

10   TO WORK ASSOCIATED WITH COMMANDS OR INSTRUCTIONS.

11          AND EVEN THE DEFENDANTS, IF YOU READ THEIR 4-2

12   DISCLOSURES, SEEM TO SAY THAT A TASK ARE INSTRUCTIONS, IN THEIR

13   DEFINITION OF "FRAME TRANSFER TASK."

14          SO WE DON'T THINK THE TERM "TASK" IS INDEFINITE, NOR

15   IS THE TERM "EXECUTING."  THE ETHERNET SPECIFICATION USES

16   "IMPLEMENTS." THE EXAMINER USED THE TERM "PERFORMED." DEFENDANTS

17   THEMSELVES USE THE TERM "PERFORMING" FOR "EXECUTING."

18          SO WE DON'T THINK THE CONCEPT OF EXECUTING IS

19   INDEFINITE, AND WE DON'T THINK THERE'S BEEN ANY ALLEGATION THAT

20   IT'S INDEFINITE.

21          **THE COURT:**  LET ME ASK YOU A COUPLE OTHER QUESTIONS

22   BEFORE YOU YIELD THE FLOOR. THIS IS A PATENT CLAIM THAT IS A

23   METHOD FOR TRANSMITTING. AND THERE IS NO EXPLICIT TRANSMITTING

24   STEP THAT I SAW. IN OTHER WORDS, THERE'S NO STEP THAT SAYS

25   "TRANSMITTING." IT DOES GIVE ME A STEP FOR EXECUTING THIS

1   TRANSFER, FRAME TRANSFER.  AND IT GIVES ME A STEP FOR EXECUTING

2   A FRAME TRANSMISSION IN THE NETWORK.  BUT WHERE DOES IT

3   TRANSMIT?  WHERE IS THE STEP THAT TRANSMITS FROM THE HOST SYSTEM

4   THROUGH A NETWORK INTERFACE?

5           THE PLACE I THOUGHT THAT MAYBE IT WOULD BE IS

6   'EXECUTING TO INITIATE TRANSMISSION."  BUT THAT WAS FROM THE

7   BUFFER MEMORY TO THE NETWORK IN PARALLEL.  SO THAT'S AS CLOSE AS

8   I GOT TO "INITIATE TRANSMISSION."

9           SO PERHAPS THE INITIATION OF TRANSMISSION I SHOULD

10  READ AS TRANSMITTING?

11          **MR. HERMAN:**  CORRECT. AND I THINK THE PROSECUTION

12  HISTORY, THE APPLICANT'S STATEMENT THAT WE LOOKED AT A MOMENT

13  AGO, I THINK THAT SPEAKS DIRECTLY TO THAT POINT, YOUR HONOR.

14          **THE COURT:**  ALL RIGHT. AND SO THE "EXECUTING THE

15  FRAME TRANSMISSION TASK" IS SOMETHING THAT IS DIFFERENT FROM THE

16  "INITIATION OF TRANSMISSION."

17          **MR. HERMAN:**  CORRECT. AND THIS IS ACTUALLY LAID OUT

18  IN THE PATENT SPECIFICATION. AND IT APPEARS AT COLUMN FOUR,

19  STARTING AT LINE 52.

20          **THE COURT:**  I DON'T WANT YOU TO GO THROUGH THAT. THE

21  REASON I ASKED THAT IS TO FRAME THE QUESTION WITH RESPECT TO

22  DEPENDENT CLAIM FIVE, BECAUSE IF I ADOPT THE DEPENDENT CLAIMS AS

23  HELPING ME TO DEFINE "FRAME TRANSMISSION TASK," THEN I

24  CONFRONTED CLAIM FIVE, WHICH IS:

25              "WHEREIN THE FRAME TRANSMISSION TASK INCLUDES

1          APPENDING AN ERROR DETECTION CODE TO THE FRAME OF

2          DATA TO BE TRANSMITTED TO THE NETWORK."

3          IN A SYSTEM THAT CLAIMS TRANSMISSION TO START PRIOR

4     TO THE COMPLETION OF THE TRANSFER IS IT CONSISTENT THAT I CAN

5     APPEND AN ERROR DETECTION CODE TO THE FRAME IF THE FRAME IS

6     STARTING TO BE TRANSMITTED BEFORE I COMPLETED THAT STEP OF

7     APPENDING THE ERROR CODE?  BECAUSE MY UNDERSTANDING WAS THAT I

8     NEEDED TO KNOW THE FRAME IN ORDER TO COMPOSE THE ERROR CODE.

9          SO IF PART OF IT'S ALREADY GONE, HOW CAN I KNOW WHAT

10    THE ERROR CODE WOULD BE?

11          **MR. HERMAN:**  AND I THINK THE 802.3 SPECIFICATION

12    SPEAKS TO THIS. THE PACKAGING, THE WAY THAT A DATA MESSAGE IS

13    SENT, THERE'S THE PAYLOAD, WHICH WOULD BE THE ACTUAL DATA THAT

14    CAME FROM THE HOST GETS PUT INTO A PACKAGING FORMAT.  AND THAT

15    PACKAGING FORMAT HAS AN ADDRESS WHERE IT'S GOING.  IT MAY HAVE

16    AN ERROR REDUNDANCY CHECK.  IT MAY HAVE A FEW STANDARDIZED

17    THINGS THAT THE ETHERNET PROTOCOL WOULD REQUIRE.

18          ALL THAT PACKAGING CAN TAKE PLACE LONG BEFORE THEY

19    GET THE DATA FROM THE HOST COMPUTER.  SO IT WOULD BE SIMILAR TO

20    ADDRESSING AN ENVELOPE BEFORE YOU STICK THE LETTER IN IT.

21          **THE COURT:**  THE ERROR CODE THEN WOULD BE FOCUSSED

22    PURELY ON THE PACKAGE, NOT THE DATA.

23          **MR. HERMAN:**  CORRECT.

24          **THE COURT:**  I THOUGHT THE ERROR CODE WAS DESIGNED TO

25    ENSURE THAT I GOT ALL THE DATA I WAS SUPPOSED TO GET.  AND SO IF

```
1   I CAN DO IT WITHOUT THE DATA DOESN'T REALLY FUNCTION VERY WELL

2   AS AN ERROR CODE.

3            MR. HERMAN:  IT WOULD JUST BE THE SIZE.  I THINK THE

4   ONLY INFORMATION THEY WOULD NEED WOULD BE THE SIZE OF THE FRAME,

5   WHICH ARE STANDARDIZED IN MANY CASES.

6            THE COURT:  ALL RIGHT. THANK YOU.

7            MR. HERMAN:  THANK YOU, YOUR HONOR.

8            MR. STEPHENS:  GOOD MORNING, YOUR HONOR.  GARLAND

9   STEPHENS FOR INTEL CORPORATION.  I JUST HAVE A FEW INTRODUCTORY

10  REMARKS.  THEN, I'M GOING TO TURN OVER THE SUBSTANCE OF THE TASK

11  RESPONSE TO MR. CORDELL.

12           THE COURT:  VERY WELL.

13           MR. STEPHENS:  SO, YOUR HONOR'S PRESENTED WITH A FEW

14  ISSUES TODAY.  MOST OF THEM RELATE TO MEANS-PLUS-FUNCTION. WE

15  HAVE THE LOGIC TERM ISSUE, WHETHER OR NOT THEY ARE GOVERNED BY

16  112-6.

17           THEN, WE HAVE THE QUESTION OF WHETHER SOME TERMS THAT

18  ARE GOVERNED BY 112-6 ARE INDEFINITE BECAUSE THEY DON'T COMPLY

19  WITH THE REQUIREMENT UNDER 112-6 THAT YOU DISCLOSE A STRUCTURE

20  FOR PERFORMING A FUNCTION RECITED IN THE CLAIM.

21           AND THEN FOR ANY CLAIMS THAT ARE NOT INDEFINITE, YOUR

22  HONOR HAS -- NEEDS TO DECIDE WHAT STRUCTURE ACTUALLY CORRESPONDS

23  TO THE FUNCTIONS RECITED IN THOSE LIMITATIONS.

24           AND THEN, FINALLY, WE HAVE THE SEPARATE ISSUE OF

25  INDEFINITENESS LIKE THE ONE THAT WAS JUST ADDRESSED THAT DOES
```

1   NOT RELATE TO 112-6.  IT'S JUST A QUESTION OF WHETHER THE TERM

2   IN THE CLAIM IS UNDERSTANDABLE AND NOT INDEFINITE.

3           NOW, WE AGREED WITH THE PLAINTIFFS TO ARGUE IN THE

4   ORDER THAT THEY SUGGESTED OR INSISTED ON, BUT WE ACTUALLY THINK

5   THERE'S A BETTER WAY TO APPROACH THE ISSUES BEFORE THE COURT,

6   AND THAT IS DRIVEN BY THE DISCLOSURES OF THE SPECIFICATION.

7           SO IF YOU LOOK AT THE CLAIMS AND THE TERMS THAT ARE

8   AT ISSUE, THEY FALL INTO FOUR LOGICAL GROUPS. THERE ARE A NUMBER

9   OF TERMS THAT RELATE TO THE HOST INTERFACE.

10          THERE A NUMBER THAT RELATE TO THE NETWORK INTERFACE.

11  AND THEN, THERE ARE A NUMBER THAT RELATE TO THIS THRESHOLD

12  FUNCTIONALITY THAT'S DESCRIBED. AND THEN, FINALLY, THERE ARE THE

13  TASK TERMS THAT THE PLAINTIFFS WANTED TO THE START WITH.

14          BECAUSE THERE'S A LOT OF TERMS AND THERE'S A LOT OF

15  ISSUES, WE'VE PROVIDED IN OUR PRESENTATION, WHICH YOUR HONOR HAS

16  A HARD COPY OF, A CHART THAT SHOWS YOU HOW THOSE SPECIFIC

17  DISPUTES MAP ONTO THE MANY DIFFERENT LIMITATIONS THAT ARE BEFORE

18  THE COURT.  JUST A HANDY REFERENCE TO SEE WHAT ISSUES RELATE TO

19  WHICH CLAIMS.

20          I WANTED TO JUST TOUCH BRIEFLY ON A LITTLE BIT OF

21  CONTEXT.  AGAIN, THESE CLAIMS RELATE TO NETWORK ADAPTERS WHICH

22  SIT BETWEEN THE NETWORK AND THE COMPUTER. YOU CAN TELL THAT

23  BECAUSE THE OVERWHELMING MAJORITY OF THE DISCLOSURE, INCLUDING

24  ALMOST ALL OF THE FIGURES, RELATE TO THINGS THAT WOULD BE FOUND

25  INSIDE THAT NETWORK ADAPTER.

1          AND, YOUR HONOR, THESE FIGURES THAT ARE FOUND IN MOST

2     OR ALL OF THE PATENTS -- IT VARIES A LITTLE BIT -- ARE YOUR BEST

3     GUIDE TO APPROACHING THE DISPUTES THAT ARE BEFORE THE COURT,

4     BECAUSE THE FOUR DIFFERENT KINDS OF DISPUTES, WITH THE EXCEPTION

5     OF THE TASK TERMS, MAP DIRECTLY ONTO THE FIGURES.

6          SO THE EASIEST WAY TO APPROACH THE ISSUES, WE

7     SUGGEST, IS TO TAKE A LOOK AT THE FIGURES, FIND THE LANGUAGE AND

8     THE FIGURES THAT CORRESPONDS TO THE PARTICULAR ISSUE, AND THEN

9     LOOK FOR THE SPECIFICATION LANGUAGE THAT RELATES TO THOSE

10    PARTICULAR FIGURES.

11         JUST A QUICK REMINDER ABOUT WHAT EACH PATENT IS

12    ABOUT. THE '459 PATENT IS ABOUT GENERATING AN INTERRUPT EARLIER

13    THAN IT MIGHT OTHERWISE BE GENERATED.

14         ACCORDING TO THE PATENT, IN PRIOR ART SYSTEMS AN

15    INTERRUPT WAS GENERATED BY AN ADAPTER TO THE HOST PROCESSOR

16    AFTER DATA HAD ALREADY BEEN MOVED COMPLETELY EITHER INTO THE

17    BUFFER OR INTO THE HOST SYSTEM.

18         QUICK ANIMATION.  I'M NOT GOING TO HAVE ANYMORE OF

19    THESE IN THE INTRODUCTION.  JUST TO ILLUSTRATE THE CONTEXT THAT

20    WE'RE TALKING ABOUT.

21         THERE'S A FRAME COMING IN FROM THE WIRE, GOES INTO

22    THE BUFFER.  MOVED BY THE NETWORK ADAPTER CARD INTO THE HOST

23    MEMORY FROM THE BUFFER.  AFTER THAT IS DONE, AN INTERRUPT IS

24    SENT SO THAT THE PROCESSOR CAN PROCESS THE FRAME.

25         JUST A LITTLE CONTEXT, YOUR HONOR, FOR THE DISPUTES

1    THAT ARE BEFORE YOU TODAY.

2          THE '872 AND '094 PATENTS RELATE TO A SIMILAR ISSUE,

3    BUT IN THE OTHER DIRECTION.  THEY DON'T INVOLVE INTERRUPTS.

4    THEY INVOLVE TRANSMITTING, ACCORDING TO THESE PATENTS.  IN THE

5    PRIOR ART THE FRAME WAS COMPLETELY DOWNLOADED INTO THAT BUFFER

6    MEMORY THAT WE SAW IN THE ADAPTER BEFORE IT WAS TRANSMITTED INTO

7    THE NETWORK.

8          AND THOSE PATENTS PURPORT TO SOLVE THAT PROBLEM BY

9    STARTING THE TRANSMISSION A LITTLE BIT EARLY.

10          '313 PATENT'S A LITTLE DIFFERENT THAN THE OTHERS,

11    ALTHOUGH THE SPECIFICATION OF THE '313 PATENT IS FOUND ALMOST IN

12    ITS ENTIRETY IN THE OTHER THREE PATENTS. IT PURPORTS TO SOLVE AN

13    ALLEGED PROBLEM IN THE PRIOR ART IN WHICH HOST SYSTEMS PERFORMED

14    A FAIR AMOUNT OF BUFFER MANAGEMENT IN HOST SYSTEM MEMORY AS

15    OPPOSED TO ALL THAT MANAGEMENT BEING DONE BY THE ADAPTER CARD IN

16    ITS OWN MEMORY.

17          RETURNING TO THE FIGURES, IF YOU LOOK AT THIS FIGURE

18    TWO, WHICH IS FOUND IN THREE OF THE FOUR PATENTS, IT'S NOT FOUND

19    IN THE '313, ALL OF THE ISSUES EXCEPT FOR THE TASK TERMS CAN BE

20    SORT OF MAPPED RIGHT ONTO THAT FIGURE.

21          YOU HAVE THE HOST INTERFACE LOGIC, NETWORK INTERFACE

22    LOGIC AND THRESHOLD LOGIC.  THAT'S THREE OF THE FOUR CATEGORIES.

23          THE TASK TERMS YOU WON'T FIND IN ANY OF THE FIGURES

24    BECAUSE THEY ARE JUST NOT DISCLOSED ANYWHERE IN ANY OF THE

25    PATENTS. THESE FIGURES AND THESE TERMS MATCH UP WITH THE

1  DISPUTES BEFORE THE COURT BECAUSE THEY MATCH UP WITH CLAIM

2  TERMS.

3          NOW, I'VE HIGHLIGHTED "BUFFER" HERE BECAUSE IT

4  APPEARS IN ALMOST ALL THE CLAIMS BEFORE YOUR HONOR.  BUT IT'S

5  NOT REALLY ONE THAT IS DISPUTED HERE TODAY.  YOU RESOLVED THE

6  DISPUTES WE HAD ABOUT THE MEANING OF "BUFFER MEMORY" IN THE LAST

7  ROUND.

8          IT'S HELPFUL, I THINK, TO LOOK AT HOW THESE FIGURES

9  RELATE TO EACH OTHER.  IT'S NOT AT ALL OBVIOUS AT A QUICK GLANCE

10  AT THESE PATENTS WHAT THE RELATIONSHIP BETWEEN THESE FIGURES IS.

11          FIGURE THREE THERE IN THE UPPER LEFT CORNER IS FOUND

12  IN ALL FOUR PATENTS. AND EVEN THOUGH FIGURE TWO IS NOT FOUND IN

13  ALL FOUR PATENTS -- IT'S FOUND IN THREE -- BUT THEY ARE VERY

14  CLOSELY-RELATED, EVEN THOUGH, AGAIN, IT MAY NOT BE IMMEDIATELY

15  OBVIOUS.

16          THE ADAPTER MEMORY SHOWN IN GREEN IN FIGURE THREE IS

17  THE SAME STRUCTURE, THE SAME BUFFER MEMORY THAT'S SHOWN IN GREEN

18  IN FIGURE TWO. AND, SIMILARLY, THAT BLOCK, EVEN THOUGH IT'S NOT

19  LABELED HOST INTERFACE LOGIC IN THE FIGURE ITSELF, THE

20  SPECIFICATIONS CLEARLY SAY IT IS THE HOST INTERFACE LOGIC.  SO

21  IT CORRESPONDS TO THE LEFT SIDE OF THE FIGURE TWO, AS WELL.

22          SAME THING FOR THE NETWORK INTERFACE LOGIC SHOWN IN

23  PURPLE.  THAT CORRESPONDS TO THE NETWORK INTERFACE LOGIC IN THE

24  FIGURE TWO. AND THIS SORT OF GENERAL ARRANGEMENT OF THE HOST

25  INTERFACE ON THE LEFT, A BUFFER IN THE MIDDLE, AND THE NETWORK

1    INTERFACE ON THE RIGHT, THAT'S COMMON THROUGHOUT THESE PATENTS

2    IN MANY OF THE FIGURES.

3          SO THE HOST ADAPTER ADDRESS SPACE IS SHOWN ON THE

4    LEFT, TYPICALLY, OR THE HOST SYSTEM IN SOME CASES.  THEN, YOU

5    HAVE THE HOST INTERFACE BETWEEN IT AND THE BUFFER MEMORY, AGAIN

6    ON THE LEFT SIDE.  AND THEN, YOU HAVE ON THE RIGHT SIDE THE

7    NETWORK INTERFACE BETWEEN THE BUFFER AND THE NETWORK.

8          THAT'S SORT OF THE OVERALL ARCHITECTURAL ORGANIZATION

9    OF WHAT IS DISCLOSED IN ALL FOUR PATENTS. THAT CARRIES ON TO

10   SOME FIGURES THAT ARE EVEN A LITTLE LESS OBVIOUS TO INTERPRET.

11         FIGURE NINE IS AN EXAMPLE WHICH BASICALLY JUST

12   PROVIDES MORE DETAIL FOR WHAT YOU SEE AS THE HOST INTERFACE

13   LOGIC AND THE NETWORK INTERFACE LOGIC IN FIGURES TWO AND THREE.

14         AGAIN, THE MEMORY IS SHOWN IN THE MIDDLE IN GREEN IN

15   FIGURE NINE THERE.  AND FIGURE NINE SHOWS THE STRUCTURES THAT

16   ARE USED IN THE RECEIVE PROCESS. FIGURE 11 IS VERY SIMILAR IN

17   THAT IT SHOWS THE STRUCTURES OR THE LOGIC, I GUESS I SHOULD SAY,

18   THAT'S DESCRIBED FOR THE -- I'M SORRY, THE RECEIVE PROCESS,

19   FIGURE NINE IS THE TRANSMIT PROCESS.  I THINK THAT I HAD THAT

20   BACKWARDS.

21         BUT, AGAIN, WHAT YOU'LL FIND IS THAT FOR THE RECEIVE

22   FUNCTION IN FIGURE THREE THERE, THAT'S ON THE LOWER HALF. SO THE

23   RECEIVE DMA LOGIC CORRESPONDS TO THE BLOCK 110 THERE IN THE

24   LOWER HALF OF THE RIGHT SIDE, THE NETWORK INTERFACE.

25         THE LEFT SIDE OF FIGURE 11 CORRESPONDS TO THE LOWER

1  HALF OF THE LEFT SIDE OF FIGURE THREE. SO THE UPLOAD DMA LOGIC

2  AND THE PREVIEW LOGIC THERE CORRESPOND TO THE THINGS THAT ARE

3  SHOWN IN BLOCK 100.  JUST SORT OF A LITTLE TOUR OF THE FIGURES

4  TO HELP YOUR HONOR UNDERSTAND THE STRUCTURE OF THE DISCLOSURES.

5          ONE THING I WANT TO POINT OUT QUICKLY BEFORE TURNING

6  IT OVER TO MR. CORDELL, IS THAT THAT DIFFERENCE IN THE NATURE OF

7  THE DISCLOSURES.

8          SO THESE HOST INTERFACE AND NETWORK INTERFACE

9  ELEMENTS ARE JUST PURELY FUNCTIONAL.  THIS IS A TYPICAL

10  DISCLOSURE.  JUST THE BOX WITH THE FUNCTION IN IT.  SOMETIMES

11  WITH THE WORD "LOGIC" ATTACHED.

12          IT'S VERY DISTINCT FROM THE DISCLOSURE OF THE

13  THRESHOLD ELEMENTS THAT WE'RE GOING TO TALK ABOUT IN MORE DETAIL

14  LATER.  THEY ARE DESCRIBED IN GREAT DETAIL.

15          THIS '459 PATENT USES SIX FIGURES TO DISCLOSE THE

16  RECEIVE THRESHOLD LOGIC.  AND THEY HAVE A WIDE VARIETY OF PRETTY

17  STRUCTURAL DESCRIPTIONS:  CIRCUITRY, STATE DIAGRAMS, ALGORITHMS.

18          THIS IS JUST AN EXAMPLE OF THE KIND OF CIRCUITRY YOU

19  SEE THERE.  SO THERE'S A REAL QUALITATIVE DIFFERENCE IN THE TYPE

20  OF DISCLOSURE BETWEEN THE INTERFACE TERMS THAT ARE AT ISSUE

21  BEFORE THE COURT, AND THE THRESHOLD TERMS AT ISSUE.

22          AND WITH THAT, I'LL TURN IT OVER TO MR. CORDELL, YOUR

23  HONOR.

24          **THE COURT:**  ALL RIGHT.

25          **MR. CORDELL:**  GOOD MORNING, YOUR HONOR.  RUFFIN

1    CORDELL FOR INTEL.

2              I'D LIKE TO DIVE INTO THE TASK TERMS, BUT I THINK

3    THERE IS A LITTLE BIT OF A FUNDAMENTAL DISCONNECT BETWEEN THE

4    PARTIES AS TO HOW WE'RE TREATING THIS.

5              IN THE FIRST CLAIM CONSTRUCTION PROCESS WE EXPLORED

6    THE PLAIN MEANING OF THE TERM "FRAME TRANSMISSION TASK."

7              WE EXPLORED WHETHER OR NOT IT WAS DEFINED IN THE

8    SPECIFICATION OR IN THE CLAIMS THEMSELVES.  AND THE COURT, I

9    THINK,  CORRECTLY CONCLUDED THAT IT WAS NOT.  AND, IN FACT, WE

10   HAD A -- WE HAVE THE COURT'S ORDER WHERE THE JUDGMENT WAS MADE

11   VERY DISTINCTLY THAT, IN FACT, FRAME TRANSMISSION TASK IS NOT

12   DEFINED IN CLAIM ONE.  IT'S NOT USED IN THE WRITTEN DESCRIPTION,

13   AND IT CARRIES NO PLAIN MEANING.

14             AND SO WHERE THE COURT TOOK US, I THINK, AGAIN,

15   CORRECTLY, ACCORDING TO THE CASE LAW, IS TO ASK WHETHER ONE OF

16   ORDINARY SKILL IN THE ART WOULD UNDERSTAND THE BOUNDS OF THE

17   CLAIMS NEVERTHELESS, NOTWITHSTANDING THE FACT THAT THERE'S NO

18   PLAIN MEANING, NOTWITHSTANDING THE FACT THAT IT WASN'T DEFINED.

19             AND SO WE LOOK BACK TO THE OTHER CASES, THE COURT'S

20   DECISION IN THE ACACIA MATTER FROM A FEW YEARS BACK WHERE THE

21   PARTIES ENGAGED IN A LITTLE BIT OF SLEUTHING TO TRY TO DISCERN

22   THE MEANING, TO DISCERN THE BOUNDARIES OF THOSE CLAIMS.

23             AND THAT'S THE PROCESS THAT WE BELIEVE THAT WE'RE

24   HERE TODAY TO DO.

25             IT'S UNDISPUTED THAT INTEL, DIGITAL AND XEROX

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

1  DEVELOPED ETHERNET.  THEY DEVELOPED ETHERNET STANDARD.  AND THAT

2  WAS LONG BEFORE THESE PATENTS EVER CAME ALONG.

3          THE QUESTION IS NOT WHETHER CERTAIN TERMS WERE USED

4  IN THAT STANDARD. THE QUESTION IS WHETHER THOSE TERMS WOULD FALL

5  WITHIN THESE CLAIMS.  WE NEED TO DISCERN THOSE BOUNDARIES.  WE

6  NEED TO GET THE PUBLIC THE NOTICE THEY ARE ENTITLED TO AS TO THE

7  PROPER SCOPE OF THESE CLAIMS.

8          AND THAT'S THE PROCESS THAT WE'RE ENGAGED IN.  SO

9  WITH THAT, WE LOOKED BACK AT THE INTRINSIC RECORD, AND WE LOOKED

10 FOR THOSE CLUES.  WE LOOKED FOR HINTS THAT MIGHT HELP US DEFINE

11 WHAT THE PROPER BOUNDARIES OF THE '094 WOULD BE.

12         AND, UNFORTUNATELY, IT'S SILENT.  THE TERMS "FRAME

13 TRANSMISSION TASK" JUST DON'T APPEAR.  AND I UNDERSTOOD

14 COUNSEL'S ARGUMENT EARLIER TODAY WITH RESPECT TO THE PROSECUTION

15 HISTORY. THAT'S A NEW ONE.  I'VE BEEN STUDYING AS I GO.

16         BUT THE REALITY IS IF WE LOOK AT THAT VERY CAREFULLY

17 YOU'LL SEE THAT EVEN THAT DOESN'T GIVE US THE DEFINITIONAL CLUES

18 THAT THEY ARE RELYING ON.

19         I WONDER IF I CAN GO TO THAT.  COULD I HAVE SLIDE 19

20 FROM THE PLAINTIFF'S PRESENTATION?

21         THERE WE GO. SO THIS WAS THE ARGUMENT, YOUR HONOR.

22 AND, AGAIN, I APOLOGIZE BECAUSE THIS WAS THE FIRST TIME THAT I

23 HAD SEEN THIS. AND, ESSENTIALLY, WHAT COUNSEL SAID IS THAT THIS

24 GIVES US ONE OF THOSE CLUES.  THIS GIVES US SOME DEFINITIONAL

25 INSIGHT INTO THE BOUNDARIES OF FRAME TRANSMISSION TASK.

1      BUT LOOKED AT VERY CAREFULLY, WHAT HAPPENED HERE WAS

2    THAT THE EXAMINER SAID:

3           "YOU CAN'T HAVE THIS NEW CLAIM IN THE '094

4           PATENT BECAUSE THE '872 PATENT ALREADY COVERED THIS

5           SUBJECT MATTER."

6      HE WAS MAKING A DOUBLE PATENTING REJECTION ON AN

7    OBVIOUSNESS-BASED DOUBLE PATENTING REJECTION THAT WAS PREMISED

8    ON A JUDICIALLY CREATED DOCTRINE THAT SAYS YOU CAN'T PATENT THE

9    SAME THING TWICE.  AND, ESSENTIALLY, IT'S TO AVOID PEOPLE

10   EXTENDING THEIR RIGHTS BY REPATENTING THE SAME SUBJECT MATTER.

11      ALL THE EXAMINER SAYS HERE IS THAT THE A OUT OF CLAIM

12   21 MIGHT BE INCLUDED WITHIN THE SCOPE OF PREVIOUSLY ISSUED CLAIM

13   24 FROM THE '872 PATENT. THAT'S ALL HE SAYS.

14      THE ELLIPSIS THAT COUNSEL POINTED OUT FIRST REALLY

15   GOT MY ATTENTION, AND I WAS QUITE EXCITED ABOUT IT WHEN I SAW HE

16   INSERTED THE WORDS "FRAME TRANSMISSION TASK" INTO THE PHRASE,

17   BECAUSE THAT DOES NOT APPEAR.  THE WORD "FRAME TRANSMISSION

18   TASK" DOES NOT APPEAR IN THAT OFFICE ACTION.

19      IN FAIRNESS, THE EXAMINER WAS REFERRING TO THE PHRASE

20   OUT OF THE CLAIM WHICH DOES INCLUDE IT.  BUT JUST TO BE CLEAR,

21   THAT WAS ADDED BY PLAINTIFFS. THAT DOESN'T EXIST.

22      BUT THE BIGGER POINT, THE BIGGER POINT IS THAT ALL HE

23   IS SAYING HERE IS THAT CLAIM 21 OF THE PATENT -- THIS WOULD BE

24   THE '872 PATENT -- INCLUDES A MEDIUM ACCESS CONTROLLER THAT

25   SOMEHOW INCLUDES THIS SUBJECT MATTER.

1          SO THE BEST CLUE WE CAN TAKE FROM THIS, THE ONLY

2   INTERPRETATIVE POINT WE CAN TAKE FROM THIS IS THAT SOMEHOW A

3   FRAME TRANSMISSION TASK IS SUBSUMED WITHIN THE MEDIUM ACCESS

4   CONTROLLER, WHICH WE ALSO BELIEVE IS AN UNDEFINED TERM.

5          SO WE HAVE TWO REAL PROBLEMS WITH THIS.  NUMBER ONE,

6   IT'S CIRCULAR.  ALL WE HAVE IS IT POINTS US BACK TO ANOTHER

7   UNDEFINED TERM IN A DIFFERENT PATENT.

8          BUT MORE THAN THAT, YOUR HONOR, IT DOESN'T TELL US

9   WHAT THE BOUNDARIES OF THAT FRAME TRANSMISSION TASK REALLY ARE.

10          I WAS GOING TO ADDRESS EACH OF THESE POINTS IN TURN:

11   INTRINSIC RECORD, EXPERT TESTIMONY, AND THEN EXAMINING THE USEI

12   CONSTRUCTION ITSELF.

13          I'M A LITTLE UNCLEAR AS TO THE RELIANCE OF USEI ON

14   ITS EXPERT.  WE BELIEVE THAT EXPERT TESTIMONY HERE IS

15   INAPPROPRIATE.  WE BELIEVE THE CASE LAW IS VERY, VERY CLEAR THAT

16   IF YOU COIN A TERM -- "FRAME TRANSMISSION TASK," I THINK WE'VE

17   GOTTEN TO THAT POINT IS A COINED TERM -- IT IS THE PATENTEE'S

18   OBLIGATION TO DEFINE IT WITHIN THE SPECIFICATION ITSELF.  YOU

19   CAN'T GO OUTSIDE THE FOUR CORNERS OF THE PATENT TO DEFINE A

20   COINED TERM.

21          **THE COURT:**  YOU'RE PROBABLY GOING TO COME TO IT, BUT

22   I THOUGHT IT MIGHT BE PROFITABLE TO HEAR YOUR RESPONSE TO THE

23   COURT'S INQUIRY AS TO WHETHER OR NOT THE DEPENDENT CLAIMS FROM

24   CLAIM ONE, WHICH DO USE "WHEREIN" PHRASES TO GIVE FURTHER

25   DEFINITION TO FRAME TRANSMISSION TASK CAN BE A PLACE TO START,

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

1     AT LEAST, IN TRYING TO DEFINE "FRAME TRANSMISSION TASK."

2               **MR. CORDELL:**  I DO BELIEVE THAT, YOUR HONOR, THEY CAN

3     PROVIDE AGAIN THESE INTERPRETATIVE CLUES THAT WOULD TELL US WHAT

4     THE BOUNDARIES OF FRAME TRANSMISSION TASK ARE.

5               **THE COURT:**  MORE THAN INTERPRETATIVE CLUES.  I MEAN,

6     THEY ARE DEPENDENT CLAIMS, SO THAT THIS IS SOMETHING THAT, BY

7     DEFINITION, IS ALREADY INCLUDED IN CLAIM ONE.

8               **MR. CORDELL:**  CORRECT.  AND, IN FACT, WE KNOW THAT

9     THE FRAME TRANSMISSION TASK MUST HAVE SOME CARRIER SENSE

10    FUNCTIONALITY.  WE KNOW THAT BECAUSE OF THE DEPENDENT CLAIM.

11              BUT WE ALSO KNOW BY CLAIM DIFFERENTIATION THAT IT

12    MUST BE MORE THAN THAT.  IT CAN'T --

13              **THE COURT:**  YES.  BUT IT WOULD BE -- MAYBE I SHOULD

14    GET YOUR ANSWER TO THE QUESTION I ASKED YOUR OPPONENT:  ARE THE

15    PROTOCOLS THAT ARE RECITED IN CLAIMS TWO AND THREE, AT LEAST,

16    COMMANDS OR INSTRUCTIONS THAT ARE ONE OF SKILL WOULD UNDERSTAND

17    WOULD BE USED TO INITIATE TRANSMISSION?

18              **MR. CORDELL:**  COMMANDS OR INSTRUCTIONS IS USEI'S

19    FORMULATION.  WE DON'T AGREE THAT THAT'S AN APPROPRIATE WAY TO

20    DEFINE "FRAME TRANSMISSION TASK." THE CLAIM ITSELF TALKS ABOUT

21    THE FRAME TRANSMISSION TASK IS SOMETHING THAT OCCURS IN FIXING

22    TIME POINTS.

23              RECALL THAT THE WAY THE CLAIM WORKS IS THAT THE FRAME

24    TRANSFER TASK MUST BE DONE IN PART IN PARALLEL WITH THE FRAME

25    TRANSMISSION TASK.  SO PART OF OUR DEFINITIONAL DIFFICULTY HERE

            KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

1   IS THAT WE NEED TO FIX THE TIME POINTS FOR THE FRAME

2   TRANSMISSION TASK. COULD THE CARRIER SENSE MULTIPLE ACCESS

3   PROTOCOL THAT'S REQUIRED BE PART OF THAT PROCESS?   YES.

4          DOES IT TELL US IS THAT A COMMAND?  I DON'T THINK SO.

5   I DON'T THINK THAT THAT'S THE APPROPRIATE WAY TO DEFINE THE TASK

6   BECAUSE, AT LEAST AS I READ THE PATENT, AS I UNDERSTAND THESE

7   CLAIMS, THE TASK IS MEANT TO BE A PROCESS OF SOME KIND. I

8   SUPPOSE THE INITIATION OF CARRIER SENSE, YOU COULD CALL IT A

9   COMMAND MIGHT BE PART OF THAT.  BUT THE FORMULATION OF COMMANDS

10  OR INSTRUCTIONS ARE REALLY THE PLAINTIFF'S RATHER THAN OURS.

11          **THE COURT:**  LET ME SEE IF I CAN GIVE THAT BACK TO

12  YOU. SO YOU AGREE THAT THOSE PROTOCOLS WOULD BE EXAMPLES OF

13  COMMANDS OR INSTRUCTIONS?

14          **MR. CORDELL:**  THE PROTOCOLS THEMSELVES IN THE MOST

15  PRISTINE FORM ARE PART OF THE STANDARD THAT TELL YOU WHAT YOU

16  NEED TO DO. WOULD YOU CALL THAT A COMMAND?  I'M NOT QUITE SURE?

17  I'M NOT QUITE SURE. THAT'S THE PART THAT I DISAGREE WITH.

18          **THE COURT:**  YOU CALL IT AN INSTRUCTION.

19          **MR. CORDELL:**  AGAIN, TO ME, AN INSTRUCTION TO ME IS

20  ADDED.  IT'S EXCLUSIVE OR IT'S SOMETHING THAT IS WELL-DEFINED.

21  MR. STEPHENS SUGGESTS CALL IT "BEHAVIORS" RATHER THAN A COMMAND

22  OR INSTRUCTION.  IT'S SOMETHING THAT MUST BE DONE.

23          YOU KNOW, I MUST EAT LUNCH. DOES THAT MEAN -- IS THAT

24  A COMMAND?  YOU KNOW, I SUPPOSE IT COULD BE. BUT IT'S CHEW, THAT

25  WOULD BE A COMMAND.  THE OVERALL PROCESS IS A LITTLE BROADER

```
1    THAN THAT.

2              THE COURT:  ALL RIGHT.  SO I'M A LITTLE LOST, BUT --

3              MR. CORDELL:  WELL, I --

4              THE COURT:  -- I THINK I HAVE -- I WAS TRYING TO MAKE

5    SURE I WAS COMPARING POSITIONS.  AND SO IF YOU TELL ME THAT THIS

6    PROTOCOL IS NOT SOMETHING ONE OF SKILL IN THE ART WOULD

7    UNDERSTAND TO BE COMMANDS OR INSTRUCTIONS, THAT HAS MEANING TO

8    ME, AND I'VE GOT TO FIGURE THAT OUT.

9              IF YOU TELL ME THAT IT COULD BE, BUT IT NEEDS TO BE A

10   LITTLE MORE PRECISE, WHICH IS WHAT I HEAR YOU SAYING, THAT ALSO

11   WOULD HAVE MEANING TO ME. BUT IT SEEMS TO ME THAT IF I HAVE A

12   WHEREIN CLAUSE IN A DEPENDENT CLAIM AS A MATTER OF CLAIM

13   CONSTRUCTION I'M GOING TO HAVE A DIFFICULT TIME SAYING:

14                  "I DON'T HAVE SOMETHING THAT WILL HELP ME DEFINE

15                  WHAT THE TASK IS, BECAUSE IT SAYS 'WHEREIN THE TASK

16                  IS X.'"

17             IT SHOULD BE A MORE LIMITED THING, OF COURSE.  AND SO

18   PERHAPS YOUR POINT IS -- I'M TRYING TO SEE WHETHER I'M ADDING

19   SOMETHING INTO THE FRAME TRANSMISSION TASK THAT HAS NOTHING TO

20   DO WITH A COMMAND OR INSTRUCTION.

21             MR. CORDELL:  SO, AGAIN, THE PLACE WHERE I DEPARTED,

22   CARRIER SENSE IS VERY WELL KNOWN.  IT'S VERY WELL-ESTABLISHED.

23   IT'S BEEN AROUND FOREVER.  AND IT IS A PROCESS THAT HAS TO BE

24   UNDERTAKEN.  SO IT IS A FUNCTION HAS TO BE IMPLEMENTED. DO YOU

25   CALL THAT A COMMAND?  I'M SURE IF YOU STUDIED THE LITERATURE YOU
```

1   WOULD FIND SOMEPLACE SOMEWHERE WHERE SOMEONE SAYS:

2              "THIS IS MY ROUTINE FOR CARRIER SENSE, AND THERE

3          ARE A SET OF INSTRUCTIONS OR COMMANDS THAT PERFORM

4          THAT FUNCTION."

5          TO ME, IT'S BROADER THAN A COMMAND. YOU CALLING

6   CARRIER SENSE A COMMAND WOULD SUGGEST --

7              **THE COURT:**  WELL, IT SOUNDS ALSO AS THOUGH YOU ARE

8   AGREEING THAT IF YOU ARE EXECUTING THIS TRANSMISSION IN A

9   PARTICULAR ENVIRONMENT, ETHERNET OR WHATEVER, IT WOULD MAKE

10  SENSE TO CALL OUT THESE PROTOCOLS AS WAYS TO DO IT.

11             **MR. CORDELL:**  THE CLAIM TELLS US THAT WHATEVER FRAME

12  TRANSMISSION TASK IS IT INCLUDES THESE PROTOCOLS.  AND THAT'S

13  NOT A SURPRISE. THOSE ARE VERY WELL-ESTABLISHED ETHERNET

14  PROTOCOLS.

15             **THE COURT:**  ALL RIGHT. SO THEN PERHAPS I WOULD HAVE

16  YOU SPEND YOUR TIME TELLING ME WHY, THEN, SOMETHING BROADER THAN

17  THOSE, PRESUMING THEY ARE INCLUDED IN THE STACK, BUT THE CLAIM

18  ONE IS SOMETHING BROADER THAN THAT, WHY I CAN'T FIND AS A

19  DEFINITION SOMETHING THAT TELLS ME WHAT IS, WHICH INCLUDES THESE

20  PROTOCOLS AS WELL AS -- I DON'T KNOW WHATEVER WORDS I'D USE --

21  BUT NECESSARY TO INITIATE TRANSMISSION.

22             I THOUGHT PART OF MY PROBLEM WAS TO FIGURE OUT HOW

23  THE PROTOCOLS INITIATED TRANSMISSION. BUT IF YOU TELL ME THAT

24  THEY ARE NECESSARY BECAUSE YOU HAVE TO PACKAGE IT IN SOME WAY IN

25  ORDER FOR THE TRANSMISSION TO MAKE SENSE TO WHEREVER IT'S GOING,

1   THAT THEN I'VE GOT TO FALL BACK ON:  IS IT SO BROAD THAT I CAN'T

2   TELL WHAT ELSE IS LIKE THAT?  WHAT ELSE IS LIKE THE PROTOCOLS

3   THAT WOULD MAKE THE GENERAL TERM "FRAME TRANSMISSION TASK" HAVE

4   MEANING?

5                    **MR. CORDELL:**  I TAKE A LOT OF CONFIDENCE FROM THE

6   COURT'S DECISION IN THE ACACIA CASE.  SO IF YOU RECALL THERE THE

7   TERM THERE WAS "SEQUENCE ENCODER."  AND THE COURT LOOKED AT LOTS

8   OF DIFFERENT WAYS TO LEND DEFINITION TO THAT TERM, AGAIN TRYING

9   TO FIND THE METES AND BOUNDS OF THAT TERM.

10                   ONE OF THE SUGGESTIONS I BELIEVE WAS "TIME ENCODER"

11  BECAUSE THAT WAS DISCLOSED IN THE PATENT. AND IT BECAME CLEAR

12  THAT THE TIME ENCODER WAS PART OF THE SEQUENCE ENCODER, BUT THAT

13  DIDN'T GIVE YOU THE DEFINITION.  BECAUSE HERE, WHILE CARRIER

14  SENSE MULTIPLE ACCESS PROTOCOL IS SOMETHING THAT YOU WOULD HAVE

15  TO DO, REMEMBER THAT THE FRAME TRANSMISSION TASK OVERALL IS MUCH

16  BROADER THAN THAT.  IT'S SOMETHING THAT STARTS THE PROCESS, WE

17  KNOW THAT.

18                   WE KNOW IT IS NOT THE TRANSMISSION OF THE FRAME.  SO

19  WE HAVE CLUES AS TO WHAT IT MIGHT BE. BUT WE NEED TO BE ABLE TO

20  FIX THOSE TIME POINTS IN ORDER TO MAKE IT WORK WITHIN THE CLAIM

21  AND GIVE IT DEFINITION.

22                   WE NEED TO BE ABLE TO JUDGE WHETHER THE FRAME

23  TRANSFER TASK IS BEING JUDGED IN PARALLEL WITH THE FRAME

24  TRANSMISSION TASK.

25                   **THE COURT:**  WELL, IS IT -- I THOUGHT THAT THE CLAIM

1   TERM WASN'T REQUIRING THAT EXECUTION TO BE IN PARALLEL, BUT THE

2   INITIATION OF THE TRANSMISSION TO BE IN PARALLEL. AND THE

3   "EXECUTING THE FRAME TRANSMISSION TASK" NEEDED TO START BEFORE

4   YOU INITIATED TRANSMISSION.  BUT IT DIDN'T HAVE TO FINISH BEFORE

5   YOU INITIATED TRANSMISSION.

6           MR. CORDELL:  WELL, THAT'S PART OF THE DIFFICULTY

7   HERE IS IT'S JUST NOT CLEAR. IT'S JUST NOT CLEAR. SO WE HAVE --

8   THE COURT'S ALREADY DECIDED, AND I THINK AGAIN CORRECTLY, THAT

9   THE FRAME TRANSMISSION TASK INITIATES THE TRANSMISSION.

10          IT IS NOT THE TRANSMISSION ITSELF. WE KNOW THAT IT

11  INITIATES IT.  WE KNOW THAT IT HAS TO OVERLAP WITH THE FRAME

12  TRANSFER TASK, WHATEVER THAT IS.  AND UNLESS WE CAN FIX THOSE

13  END POINTS, KNOWING THAT IT INCLUDES CARRIER SENSE MULTIPLE

14  ACCESS, WELL, THAT HELPS.  BUT IT DOESN'T TELL US WHAT THOSE END

15  POINTS ARE.

16          THE COURT:  BUT I WAS TRYING TO CLARIFY.  SO I DID

17  NOT READ THIS STEP AS REQUIRING THE EXECUTION OF THE FRAME

18  TRANSMISSION TASK IN PARALLEL WITH THE FRAME TRANSFER TASK WITH

19  THE TRANSMISSION BEING IN PARALLEL.

20          MR. CORDELL:  THE CORRECT FORMULATION IS SET FORTH

21  RIGHT IN THE CLAIM, YOUR HONOR.  I MAY HAVE MISQUOTED IT.

22              "TO INITIATE TRANSMISSION OF THE FRAME FROM THE

23              BUFFER MEMORY TO THE NETWORK IN PARALLEL WITH THE

24              FRAME TRANSFER TASK."

25          THE COURT:  SO THE EXECUTING OF THE FRAME

1    TRANSMISSION TASK IS PURELY TO INITIATE TRANSMISSION.  AND ONCE

2    YOU INITIATE TRANSMISSION, THAT IS DONE IN PARALLEL WITH

3    SOMETHING ELSE IS HOW I WOULD READ THAT STATEMENT.

4              **MR. CORDELL:**  I THINK THAT'S A FAIR READING.  I THINK

5    THAT'S A FAIR READING.

6              **THE COURT:**  OKAY.  GO ON.

7              **MR. CORDELL:**  LOOKING AT THE INTRINSIC RECORD, A

8    COUPLE OF POINTS I WOULD LIKE TO PUT OUT HERE. NUMBER ONE IS

9    THAT THIS PHRASE WAS ADDED, YOU KNOW, OVER THREE YEARS AFTER THE

10   ORIGINAL SPECIFICATION WAS FILED.

11             SO THIS CLEARLY WASN'T ANYTHING THAT WAS CONTEMPLATED

12   AS PART OF THE ORIGINAL PROSECUTION. IT WAS ADDED AS PART OF THE

13   CONTINUATION THAT LED TO THE '094 PATENT RATHER THAN THE '872.

14   SO IT'S NOT SURPRISING THAT THAT INTRINSIC RECORD IS LACKING

15   HERE.  IT SIMPLY WASN'T SOMETHING THAT THEY HAD CONTEMPLATED.

16             AND WE'VE ALREADY COVERED THIS POINT, BUT THE COURT'S

17   ALREADY DECIDED AGAIN CORRECTLY THAT IT MEANS SOMETHING OTHER

18   THAN TRANSMITTING A FRAME.  WE'VE GOT TO LOOK ELSEWHERE.

19             USEI ENGAGED IN THIS LINGUISTIC DECONSTRUCTION.  WE

20   SAW SOME OF THAT TODAY, WHERE EACH OF THE INDIVIDUAL TERMS WERE

21   DEFINED. BUT IT IS SIMPLY NOT HELPFUL THAT FRAME HAS A

22   DEFINITION AND TASK, BECAUSE THEY CLEARLY ARE USING THESE IN A

23   UNIQUE WAY.

24             WE'VE GOT TO FIND A DISTINCTION, FOR EXAMPLE, BETWEEN

25   "FRAME TRANSMISSION TASK" AND "FRAME TRANSFER TASK," BOTH OF

1    WHICH SHARE THE SAME WORDS.  SO IT'S JUST NOT ENOUGH.

2             COUNSEL RELIED ON THE BANCORP CASE.  THE REALITY IS

3    THAT THE BANCORP CASE HAD A WEALTH OF INTERPRETATIVE CLUES IN

4    THE INTRINSIC RECORD.  THE TWO TERMS THAT WERE BEING COMPARED

5    WERE "SURRENDER VALUE PROTECTED INVESTMENT" VERSUS "STABLE VALUE

6    PROTECTED INVESTMENT."

7             AND THE COURT CORRECTLY CONCLUDED THAT THOSE TWO WERE

8    SOMETIMES USED INTERCHANGEABLY.  AND THOSE WERE THE KINDS OF

9    CLUES THAT THE COURT COULD RELY ON TO GET MEANING FOR THE

10   SURRENDER VALUE TERM.

11            THERE WAS AN ACRONYM "SVP" THAT WAS USED COMMONLY FOR

12   BOTH OF THEM. WE DON'T HAVE THAT HERE.  WE DON'T HAVE ANYTHING

13   THAT TELLS US THAT FRAME TRANSMISSION TASK IS SIMILAR TO OR

14   DIFFERENT FROM THE FRAME TRANSFER TASK OTHER THAN THE FACT THAT

15   THEY ARE USED AS SEPARATE ELEMENTS IN THE CLAIM.

16            WE DON'T HAVE ANYTHING ELSE.  WE DON'T HAVE AN "FTP"

17   THAT IS RECITED IN THE SPECIFICATION THAT WOULD SOMEHOW GIVE US

18   THAT.

19            **THE COURT:**  WELL, WE HAVE -- WE DO -- ARE TOLD IN THE

20   CLAIMS THAT THE TWO THINGS HAPPEN BETWEEN TWO DIFFERENT DEVICES.

21            **MR. CORDELL:**  CORRECT.

22            **THE COURT:**  OKAY.

23            **MR. CORDELL:**  CORRECT.  AND ONE OF THE POINTS THAT

24   COUNSEL BROUGHT UP WAS THIS NOTION THAT PERHAPS THE ERROR

25   CORRECTION CODES THAT THE COURT ASKED ABOUT COULD HAVE BEEN

1    CREATED YEARS BEFORE IN SOME OTHER DEVICE.  BUT IN THIS SYSTEM

2    THE ERROR CORRECTION CODES ARE ACTUALLY CREATED BY THE ADAPTER

3    ITSELF.  SO IT'S NOT CORRECT TO SAY THAT YOU COULD CREATE THEM

4    IN THE HOST, FOR EXAMPLE, BEFORE THE FRAME IS EVER PUT OUT FOR

5    TRANSMISSION, BEFORE IT'S EVER PUT INTO THE ADAPTER FOR ULTIMATE

6    TRANSMISSION OUT TO THE NETWORK.

7              THAT'S JUST TECHNOLOGICALLY NOT A CORRECT STATEMENT.

8              WE'VE HAD OTHER COURTS THAT HAVE LOOKED AT THIS

9    LINGUISTIC DECONSTRUCTION APPROACH AND HAVE REJECTED IT.

10             THE AGERE SYSTEM THAT THE DISTRICT COURT THERE

11   RECOGNIZED THAT VIRTUALLY EVERY ENGLISH WORD HAS A DEFINITION.

12   YOU CAN PUT THEM SIDE-BY-SIDE AND CLAIM THAT THAT'S MEANINGFUL.

13   BUT THAT DOESN'T REALLY ADVANCE THE PROCESS HERE.

14             WE NEED TO KNOW WHETHER IN THIS CASE, IN THIS CLAIM

15   WE CAN DISCERN THE BOUNDARIES OF THIS PARTICULAR TERM.  AND,

16   AGAIN, "FRAME TRANSMISSION TASK" AS DISTINCT FROM "FRAME

17   TRANSFER TASK."

18             THE COURT ALREADY DECIDED THAT, IN FACT, THERE ARE

19   CERTAIN THINGS ABOUT THE FRAME TRANSMISSION TASK THAT WE CAN

20   CONCLUDE. BUT THAT THE INDIVIDUAL WORDS SIMPLY DON'T GET US

21   THERE.  AND THAT WAS IN THE CLAIM CONSTRUCTION ORDER AT 19 TO

22   20.

23             THE WORD "TASK" APPEARS TWICE IN THE SPECIFICATION,

24   AND IT'S WITH RESPECT TO THE PRIOR ART IN BOTH CASES.  AND IT

25   DOESN'T TELL US THAT THE TASK IS USED IN ANY PARTICULAR WAY

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

1   HERE. IT'S USED IN A FAIRLY GENERIC SENSE.  SO THE TWO CITATIONS

2   WE HAVE ON SLIDE 29 OUT OF THE '094 PATENT AT COLUMN ONE, AGAIN,

3   DON'T GIVE US THE KINDS OF INTERPRETATIVE CLUES WE NEED TO KNOW

4   WHETHER A FRAME TRANSMISSION TASK IS A GIRAFFE OR A RHINOCEROS.

5           **THE COURT:**  DON'T WE GET SOME HELP OUT OF THE WORD

6   "EXECUTION"?  IT'S GOT TO BE SOMETHING SUBJECT TO EXECUTION.

7           **MR. CORDELL:**  THAT'S TRUE.  THAT'S TRUE.  IT MUST BE

8   EXECUTABLE, I SUPPOSE, GIVEN THE CLAIM TERM.

9           **THE COURT:**  AND SO IF I COMBINE THAT WITH MY

10  OBLIGATION TO CONSTRUE IT SO IT IS VALID AT THIS POINT SUBJECT

11  TO LATER PROCEEDINGS TO CHALLENGE IT, BUT I'M IN CLAIM

12  CONSTRUCTION MODE.  I HAVE TO KIND OF TRY TO GIVE IT A MEANING,

13  IF I CAN.  AND IF "EXECUTION" IS USED AS WELL AS THE PROTOCOLS

14  THAT I SEE IN THE DEPENDENT CLAIMS, WHY SHOULDN'T I THEN USE

15  THAT AS THE TWO SOURCES FOR GIVING IT A GENERAL DEFINITION THAT

16  INCLUDES THAT SUBSET OF DEPENDENT CLAIMS, AND -- BECAUSE UNLESS

17  YOU TELL ME THESE PROTOCOLS ARE NOT SOMETHING THAT YOU EXECUTE.

18          **MR. CORDELL:**  AGAIN, I HAVE TROUBLE WITH SAYING THAT

19  WE EXECUTE A PROTOCOL.  THE PROTOCOL TELLS YOU WHAT YOU HAVE TO

20  DO. IT TELLS YOU THE SET OF FUNCTIONALITY THAT MUST BE

21  ACCOMPLISHED.  AND I SUPPOSE YOU COULD SAY THAT YOU EXECUTE THAT

22  IN THAT YOU ACCOMPLISH THOSE FUNCTIONS IN SOME FASHION.

23          BUT IT'S NOT A STANDARD SET OF CODE THAT YOU POINT TO

24  AND SAY THAT IS -- THAT IS THE CARRIER SENSE EXECUTABLE, IF YOU

25  WILL.

1          **THE COURT:**  BUT HOW ABOUT THEN -- PERHAPS THIS IS NOT

2     YOUR AREA -- BUT IF I GO TO FRAME TRANSFER TASK, AND I HAVE THE

3     PROSECUTION HISTORY WHERE THE EXAMINER ASKS ABOUT THAT TERM AND

4     WAS TOLD IN RESPONSE THAT THAT INCLUDES SUBSTEPS OF COMPOSING AN

5     IDENTIFIER FOR THE FRAME, LOADING THE IDENTIFIER INTO THE

6     NETWORK ADAPTER, AND IN RESPONSE TO THE IDENTIFIER USING

7     RESOURCES ON THE ADAPTER CARD TO CONTROL MOVEMENT.

8          ARE THOSE SIMILAR IN KIND AND CHARACTER TO THE

9     PROTOCOLS SO THAT THAT HELPS ME TO SAY THE PROTOCOLS ARE HELPING

10    ME TO DEFINE "TASK" AS THIS INVENTOR OR THESE INVENTORS ARE

11    USING?

12          **MR. CORDELL:**  SO CURIOUSLY I WOULD RESPOND IN TWO

13    WAYS, YOUR HONOR.  FIRST OF ALL, USEI DOESN'T EMBRACE THOSE

14    THREE STEPS, THE THREE STEPS THAT THE COURT JUST OUTLINED AND

15    ARE LISTED IN THAT RESPONSE TO AN OFFICE ACTION.

16          THAT'S NOT THE CONSTRUCTION THAT THEY ARE ADVOCATING

17    HERE.  AND, IN PART, IT MAY BE BECAUSE THEY ARE FRANKLY -- I

18    DON'T WANT TO SAY THEY ARE A LITTLE OFF, BUT THE CARRIER SENSE

19    DOESN'T REALLY -- DOESN'T REALLY COME UP IN THE THREE STEPS.

20          THE THREE STEPS ARE COMPOSING THE IDENTIFIER FOR THE

21    FRAME; LOADING THE IDENTIFIER IN THE NETWORK ADAPTER; AND THEN

22    IN RESPONSE TO THE IDENTIFIER USING RESOURCES ON THE ADAPTER

23    CARD TO CONTROL MOVEMENT OF THE DATA INTO THE BUFFER MEMORY.

24          THOSE DON'T REALLY INCLUDE CARRIER SENSE.  THAT'S

25    REALLY THE PART OF THE PROTOCOL THAT DEALS WITH THE INTERFACE

1    BETWEEN THE ADAPTER AND THE NETWORK.  WHEREAS, IN THIS CASE

2    WE'RE TALKING ABOUT THE TRANSFER BETWEEN THE HOST AND THE

3    ADAPTER.

4            SO IT'S A LITTLE BIT DIFFERENT. BUT IMPORTANTLY, USEI

5    DOESN'T EMBRACE THIS AS A DEFINITION FOR EVEN A FRAME TRANSFER

6    TASK.

7            WE COME DOWN TO THIS, WHICH I DO BELIEVE IS WHERE WE

8    ARE IN THIS CASE. IT IS THE SIMPLE FACT THAT THE FRAME

9    TRANSMISSION TASK WAS A COINED TERM.  IT'S SOMETHING THAT THE

10   PATENT LAWYERS MADE UP THREE YEARS AFTER THE ORIGINAL

11   SPECIFICATION WAS FILED.  IT DIDN'T APPEAR IN THE ORIGINAL

12   SPECIFICATION.

13           AND THEY HAD AN OBLIGATION. THEY HAD AN OBLIGATION TO

14   PROVIDE US WITH A DEFINITION.  AND HAVING FAILED TO DO THAT, WE

15   AS PUTATIVE, ACCUSED INFRINGERS, YOU KNOW, ARE AT SEA.

16           WE'RE STRUGGLING WITH TRYING TO DEFINE THIS.  AND AT

17   SOME POINT THE PATENTEE HAS TO BEAR THAT RESPONSIBILITY.  AND

18   HERE WE BELIEVE THAT THE COURT'S RULING IN ACAICA WAS SPOT ON.

19   AND IT'S BACKED UP BY LOTS OF FEDERAL CIRCUIT PRECEDENCE THAT IF

20   THEY FAILED TO MAKE THAT DEFINITION, THEN IT'S INDEFINITE.

21           I WON'T SPEND TIME ON USEI'S EXPERT.  WE HAVE SOME

22   SLIDES ON THIS, YOUR HONOR. WE COMPARED THE DECLARATIONS BEFORE.

23   THEY SAID THAT THESE TERMS ARE DEFINED IN THE CLAIMS.  THEN,

24   THEY SAID NOW THEY HAVE A PLAIN MEANING.  WE THINK WE'RE PAST

25   THAT.  WE DON'T THINK THAT THIS IS PARTICULARLY INSTRUCTIVE IN

1  THIS CASE, AND WE FEEL THAT AT THE BOTTOM USEI EXPERT DOESN'T

2  ADDRESS THE FUNDAMENTAL QUESTION, WHICH IS WHETHER THE

3  BOUNDARIES OF THIS CLAIM WOULD BE UNDERSTOOD TO ONE OF ORDINARY

4  SKILL.  HE SIMPLY REPEATS THE PLAIN MEANING ARGUMENT.

5          WE PUT IN OUR OWN DECLARATION.  AGAIN, I WON'T SPEND

6  A LOT OF TIME ON THIS.

7          **MR. HERMAN:**  YOUR HONOR, I HESITATE TO INTERRUPT, BUT

8  WE DO HAVE AN OBJECTION TO THIS. IT WAS OUR UNDERSTANDING BASED

9  ON THE DEFENDANTS' MOTION TO YOUR HONOR AND YOUR HONOR'S

10  GRANTING OF THAT MOTION TO ALLOW THEIR EXPERT DECLARATION TO BE

11  FILED THAT IT WOULD NOT BE RELIED ON AT THE MARKMAN HEARING.

12  THEY MADE THAT EXPRESS REPRESENTATION TO YOUR HONOR, AND YOUR

13  HONOR FOUND THAT TO BE --

14          **THE COURT:**  LET'S DO IT THIS WAY. LET ME SEE IF I CAN

15  DO THE JOB THAT YOU GIVE ME IN CLAIM CONSTRUCTION WITHOUT

16  DECLARATIONS.  AND OPINION TESTIMONY IS REALLY WHAT IT IS. AND

17  THERE IS ROOM FOR ME TO DO THAT.  IF I SAY:

18          "WELL, GEE, I CAN'T DO IT WITHOUT THAT.  I NEED

19          HELP.  I NEED EVIDENCE.  COME BACK TO THAT."

20          **MR. HERMAN:**  OKAY.

21          **MR. CORDELL:**  ALL RIGHT.  THEN, I'LL MOVE ALONG, YOUR

22  HONOR.

23          THE LAST POINT I WANT TO JUST DO IS TO EXAMINE THE

24  USEI CONSTRUCTION ITSELF.

25          SO WHAT THEY HAVE DONE IS THEY HAVE SUGGESTED

1  "COMMANDS" EITHER SINGULAR OR PLURAL, "INSTRUCTIONS" SINGULAR OR

2  PLURAL "TO INITIATE TRANSMISSION OF A FRAME."

3           THE PROBLEM IS THAT IT DOESN'T REALLY ADVANCE THE

4  BALL.  WE DON'T HAVE ANYTHING IN THE SPECIFICATION TO KNOW WHAT

5  THESE THINGS ARE SUPPOSED TO BE AND WHERE THEY COME FROM.

6           THEY ARE ARBITRARY.  THEY ARE MADE BOTH SINGULAR AND

7  PLURAL.  SO THE TASK THAT WAS RECITED AS THE SINGULAR IS NOW, I

8  SUPPOSE, PLURAL IN SOME SENSE.

9           THE TERMS ARE JUST SUBSTITUTING NEW GENERIC TERMS

10  FROM THE OLD ONES WE ALREADY HAD WHEN WE KNOW THAT THE GENERIC

11  TERMS THEMSELVES ARE NOT DISTINCTIVE ENOUGH.

12           "FRAME TRANSMISSION TASK" HAS TO BE DIFFERENT FROM

13  "FRAME TRANSFER TASK."

14           WE LOOK AT THINGS -- FOR EXAMPLE, THE TERM "COMMAND."

15  IT'S USED ONCE IN THE SPECIFICATION.  IT'S USED WITH RESPECT TO

16  A DOABUFFER.  IT'S A SIGNAL.  WE CAN ARGUE ABOUT WHETHER OR NOT

17  A SIGNAL IS A COMMAND OR NOT.

18           BUT, YOU KNOW, WE'VE JUST INTRODUCED A WHOLE NEW

19  LEVEL OF DEBATE AND ARBITRARINESS INTO THE CONSTRUCTION WHEN YOU

20  USE THE USEI APPROACH.

21           THERE IS A FUNDAMENTAL REDUNDANCY IN THE USEI

22  CONSTRUCTION.  IF WE PUT IT BACK INTO CONTEXT, THE CLAIM

23  LANGUAGE SAYS:

24               "EXECUTING A FRAME TRANSMISSION TASK IN THE

25               NETWORK INTERFACE DEVICE TO INITIATE TRANSMISSION OF

1        THE FRAME."

2        IF WE PUT USEI'S CONSTRUCTION INTO CONTEXT IT

3    BECOMES:

4            "EXECUTING A COMMAND OR INSTRUCTION TO INITIATE

5            TRANSMISSION OF A FRAME IN THE NETWORK INTERFACE

6            DEVICE TO INITIATE TRANSMISSION OF A FRAME."

7        IT SIMPLY DOESN'T ADVANCE THE ANALYTICAL BALL TO

8    REPEAT THOSE TERMS AND SUBSTITUTE IN NEW GENERIC TERMS THAT ARE

9    SIMILARLY UNDEFINED.

10        SO WITH THAT, YOUR HONOR, WE BELIEVE THAT AT BOTTOM,

11   THE FRAME TRANSMISSION TASK IS INDEFINITE. AGAIN, IT'S A COINED

12   TERM.  THEY HAD AN OBLIGATION TO DEFINE THAT, AND THEY DIDN'T.

13        COUNSEL DIDN'T SPEND A LOT OF TIME ON "MEDIUM ACCESS

14   TASK," AND UNLESS THE COURT HAS QUESTIONS ON IT, SAME ARGUMENTS

15   APPLY HERE.

16        WE HAVE THE SAME REDUNDANCY.  WE HAVE THE SAME COINED

17   TERM PROBLEM. IT'S NOT SUFFICIENT TO SIMPLY THROW UP OUR HANDS

18   AND SAY THAT WE'VE SEEN TERMS LIKE "MEDIA" AND "ACCESS" IN THE

19   LITERATURE. IT'S VERY, VERY DIFFICULT, BUT THE REALITY IS THE

20   TERM THAT IS USED IN THE LITERATURE OR THE TERM THAT COUNSEL

21   SHOWED US FROM THE ETHERNET SPECIFICATION WAS "MEDIA ACCESS

22   CONTROLLER."

23        THOSE ARE DIFFERENT TERMS.  AGAIN, THE PATENTEE

24   DELIBERATELY CHOSE TO USE THESE TERMS IN THE CLAIMS, AND THEY

25   NEED TO EXPLAIN WHY.

1              AND THEN, FINALLY, ON "FRAME TRANSFER TASK," WE HAVE

2     ALREADY COVERED THE OFFICE ACTION RESPONSE, BUT JUST TO

3     REITERATE, THE REALITY IS THAT IF THE THREE STEPS RECITED IN THE

4     OFFICE ACTION RESPONSE WAS SUFFICIENT, THEN USEI PRESUMABLY

5     WOULD HAVE EMBRACED THAT CONSTRUCTION, AND THEY DIDN'T.  AND

6     THEY DIDN'T FOR A REASON.

7              IT'S SIMPLY NOT DEFINITIONAL.  AND THEN, FINALLY,

8     YOUR HONOR, JUST LOOKING AT MY NOTES, COUNSEL SEVERAL TIMES SAID

9     THAT WE DIDN'T MAINTAIN THAT THIS -- THAT "FRAME TRANSMISSION

10    TASK" WAS INDEFINITE IN OUR EARLIER FILINGS IN THIS CASE.

11             THAT'S NOT QUITE TRUE.  IN SEPTEMBER OF 2011, WE

12    CLEARLY PUT IN THAT FRAME TRANSMISSION TASK WAS INDEFINITE IN

13    OUR INVALIDITY CONTENTIONS.  IT'S BEEN PART OF EVERY SINGLE ONE

14    OF OUR BRIEFS IN THIS CASE.  IT'S SIMPLY NOT --

15             **THE COURT:**  IT WOULDN'T MATTER TO ME IF YOU DID IT OR

16    NOT.  I HAVE AN INDEPENDENT OBLIGATION TO CONSTRUE THE TERMS.

17    IT'S MY JOB.  AND IF YOU SAY IT'S A TERM THAT I NEED TO PAY

18    ATTENTION TO, AND I LOOK AT IT AND I FIND QUESTIONS ABOUT IT, IT

19    WOULDN'T MATTER TO ME WHETHER YOU HAD THE SAME QUESTIONS.

20             ALL RIGHT. SO LET'S GO BACK TO YOUR OPPONENT, THEN.

21             **MR. HERMAN:**  THANK YOU.

22             **MR. CORDELL:**  THANK YOU.

23             **THE COURT:**  YOU WERE GOING TO CLOSE THE ARGUMENT WITH

24    RESPECT TO THIS TERM.

25             **MR. HERMAN:**  VERY BRIEFLY, YOUR HONOR. THANK YOU.

1    COULD YOU RETURN TO SLIDE 18, PLEASE?

2    THE QUESTION YOUR HONOR RAISED IN YOUR FIRST MARKMAN

3    ORDER WAS:

4         "WOULD ONE OF ORDINARY SKILL IN THE ART

5         UNDERSTAND THESE TERMS?"

6    AND THE TERM "FRAME TRANSMISSION TASK," I THINK IT'S

7    IMPORTANT TO NOTE IN YOUR HONOR'S ORIGINAL ORDER, IT WASN'T THAT

8    TERM THAT YOU SAID WAS ARGUABLY AMBIGUOUS.  AND, OBVIOUSLY, YOU

9    KNOW YOUR ORDER AS WELL AS ANY OF US.

10   BUT YOUR HONOR SAID IT WAS THE WHOLE EXECUTING LARGER

11   TERM THAT YOU FOUND TO BE ARGUABLY AMBIGUOUS IN THE CONTEXT, NOT

12   THE INDIVIDUAL FRAME TRANSMISSION TASK.

13   SO WE GO BACK TO:  WHAT WOULD A PERSON OF ORDINARY

14   SKILL IN THE ART UNDERSTAND?  WE THINK THE PROSECUTION HISTORY

15   WITH THE EXAMINER IS DIRECTLY ON POINT SHOWING --

16   **THE COURT:**  SO HERE'S YOUR CHARGE. YOUR CHARGE IS TO

17   TELL ME WHAT INSTRUCTIONS OR COMMANDS WOULD BE UNDERSTOOD,

18   UNLESS YOU SAY "THAT'S ENOUGH."

19   IN OTHER WORDS, IS IT SUFFICIENT IN YOUR VIEW FOR ME

20   TO SAY:

21        "EXECUTING INSTRUCTIONS TO INITIATE

22        TRANSMISSION," WHICH WOULD BE THE EQUIVALENT OF WHAT

23   I'M BEING ASKED TO SAY ARE:  IS THE MEANING OF "FRAME

24   TRANSMISSION TASK," OR IS THIS A TERM, AS YOUR OPPONENT ARGUES,

25   COINED BY THE INVENTOR TO MEAN SOMETHING IN PARTICULAR THAT'S

1    DONE?

2              BECAUSE IT WOULD CERTAINLY BE DIFFERENT TO SAY

3    "INITIATING TRANSMISSION" WITHOUT THE PREFACE OF EXECUTING A

4    FRAME TRANSMISSION TASK TO INITIATE IT, BECAUSE THAT MEANS

5    SOMETHING DEFINITE HAS TO BE DONE BEFORE THAT.  AND IF IT'S

6    MERELY INITIATING TRANSMISSION, WHICH IS, I PRESUME, AN

7    INSTRUCTION, THESE ARE DIFFERENT COMMANDS OR INSTRUCTIONS.

8              SO WHAT IS IT THAT WOULD BE THE CHARACTER FOR THOSE

9    COMMANDS OR INSTRUCTIONS THAT IS DIFFERENT FROM A COMMAND OR

10   INSTRUCTION THAT SIMPLY SAYS "TRANSMIT"?

11             **MR. HERMAN:**  CAN YOU TURN TO THE -- I THINK IT MAY BE

12   SLIDE 31.

13             NO.  I'M SORRY.  SLIDE 14. 14, YES.

14             THIS IS WHAT ONE OF ORDINARY SKILL IN THE ART WOULD

15   UNDERSTAND "FRAME TRANSMISSION OPERATION" TO BE AT THE TIME.

16             **THE COURT:**  WHAT?

17             **MR. HERMAN:**  THE ETHERNET SPECIFICATION HAS VERY

18   DETAILED STEPS THAT ARE SET FORTH THAT THEY WOULD UNDERSTAND TO

19   BE CARRIED OUT TO TRANSMIT A FRAME, FOR A FRAME TRANSMISSION

20   OPERATION.

21             **THE COURT:**  NOW, HERE'S WHAT I'M CONFUSED ABOUT.  SO

22   THOSE PROTOCOLS I DON'T UNDERSTAND FULLY, BUT MY RUDIMENTARY

23   UNDERSTANDING IS THEY ARE WAYS OF FRAMING THE DATA.  I SHOULDN'T

24   USE "FRAME." THEY ARE WAYS OF PACKAGING THE DATA SO THAT IT

25   FLOWS IN A PARTICULAR WAY IN A PARTICULAR CHANNEL TO A

1    PARTICULAR PLACE, OR SOMETHING LIKE THAT.

2           SO BUT WHAT ABOUT THOSE THAT INITIATE TRANSMISSION?

3    IT SEEMS TO ME THAT IF I WERE TO CHARACTERIZE THOSE PROTOCOLS IT

4    WOULD BE PUTTING THE FRAME IN SOME PACKAGE SO THAT WHEN

5    TRANSMISSION IS INITIATED IT'S RECEIVED.

6           THEY DON'T INITIATE TRANSMISSION, SO IT SEEMS TO ME

7    THAT IF YOU SAY "EXECUTE A COMMAND TO INITIATE TRANSMISSION,"

8    THE FOCUS OF THAT COMMAND OUGHT TO BE THE SAME AS "NOW

9    TRANSMIT."  IT HASN'T ANYTHING TO DO WITH HOW IT'S PACKAGED OR

10   CHARACTERIZED.  TO INITIATE THIS TASK IT IS: I NEED THIS TO

11   TRANSMIT.  I DON'T NEED IT I FOR ANY OTHER PURPOSE, JUST TO

12   TRANSMIT.

13          IS THAT TOO NARROW?

14          **MR. HERMAN:**  I BELIEVE IT MAY BE. I THINK THE

15   DIFFICULTY AS A PATENTEE TRYING TO DESCRIBE THIS IS YOU DON'T

16   WANT TO GET LOCKED DOWN TO AT SINGLE PROTOCOL NECESSARILY.  SO

17   YOU WOULD LEAVE IT FOR ONE OF ORDINARY SKILL IN THE ART.  FOR

18   THE ETHERNET SPECIFICATION THEY WOULD HAVE TO FOLLOW THESE

19   PARTICULAR INSTRUCTIONS TO PACKAGE THE DATA PROPERLY.

20          **THE COURT:**  BUT NOT TO INITIATE IT. THOSE WOULD BE

21   DONE TO -- TO AFFECT THE RECEIPT OR TO PUT IN IT A PLACE WHERE

22   IT WOULD BE AN EFFECTIVE TRANSMISSION, BUT IT WOULDN'T BE

23   NECESSARY TO TRANSMIT, CORRECT?

24          **MR. HERMAN:**  I BELIEVE THAT'S RIGHT, TO PREPARE IT

25   FOR TRANSMISSION, WHAT THE PATENT TALKS ABOUT.

1    **THE COURT:**  TO PREPARE IT FOR TRANSMISSION, BUT IT

2   WOULDN'T BE TO INITIATE THE TRANSMISSION, UNLESS YOU SAY:

3                    "OKAY.  PRIOR TO TRANSMITTING" -- AND ONE OF THE

4   THINGS I NOTICED ABOUT THIS ONE, THIS, THE TITLE OF THIS PATENT

5   HAD TO DO WITH AUTOMATIC TRANSMISSION, RIGHT?

6                    I SHOULD GO AND LOOK AT IT BECAUSE SOME OF THEM, THE

7   TITLE CHANGED.  SO THIS IS '094. IT SAYS:

8                    "METHOD OF AN INITIATION OF DATA TRANSMISSION."

9                    SO WHAT I'M LOOKING AT IS AN INVENTION WHICH THE

10  INITIATION OF THE TRANSMISSION IS TAKING PLACE AUTOMATICALLY. I

11  DON'T KNOW WHAT THAT WORD MEANS, BUT IT MEANS AFTER I DO ALL

12  THOSE STEPS IT STARTS.

13                   AND SO THIS INITIATION PROCESS THAT I'M -- THIS

14  EXECUTION THAT I'M GOING THROUGH OF FRAME TRANSMISSION, THAT

15  TASK IS WHAT INITIATES TRANSMISSION.

16                   SO IT'S VERY IMPORTANT THAT I KNOW WHAT THAT IS,

17  BECAUSE THIS IS AN INVENTOR WHO SAYS:

18                   "I'VE COME UP WITH A WAY THAT TRANSMISSION IS

19                   INITIATED BY THESE THINGS."

20                   SO WHAT ARE THEY?  THAT'S THE QUESTION THAT IS

21  BEING -- HOW DOES ONE KNOW THAT YOU HAVEN'T RUN AFOUL OF THIS

22  WAY OF AUTOMATICALLY INITIATING TRANSMISSION WHEN YOU PERFORM

23  ANY COMMANDS OR INSTRUCTIONS OTHER THAN -- OR DOES THIS CLAIM

24  ALL -- ANY COMMAND OR INSTRUCTION THAT YOU DO TO INITIATE

25  TRANSMISSION YOU'VE PRACTICED THIS STEP?

1      **MR. HERMAN:** I BELIEVE THE CLAIM, IF YOU LOOK AT

2  COLUMN FOUR, LINE 52, IT TALKS ABOUT HOW THE HOST COMPUTER

3  COMPOSES A FRAME OF DATA TO BE TRANSMITTED ON THE NETWORK

4  MEDIUM.

5      **THE COURT:** THAT DOESN'T INITIATE IT.  THAT'S TO BE

6  TRANSMITTED. IN OTHER WORDS, YOU ARE COMPOSING SOMETHING.

7      **MR. HERMAN:** CORRECT.

8      **THE COURT:** BEFORE YOU TRANSMIT IT, YOU HAVE GOT TO

9  COMPOSE IT.  IS THIS A SUBSTITUTE FOR COMPOSING?

10      **MR. HERMAN:** THIS WOULD BE HOW YOU'RE IDENTIFYING THE

11  DATA TO BE TRANSMITTED. AND DEPENDING ON WHICH PROTOCOL YOU ARE

12  FOLLOWING, THERE ARE A SERIES OF STEPS THAT ARE PART OF THIS

13  TRANSMISSION PROCESS.

14      **THE COURT:** OKAY.

15      **MR. HERMAN:** SO I THINK TO ONE OF ORDINARY SKILL IN

16  THE ART THE FRAME TRANSMISSION OPERATION OR TASK WOULD BE

17  UNDERSTOOD IN THE CONTEXT OF THE PARTICULAR PROTOCOL THAT

18  DEFINES COMMANDS OR INSTRUCTIONS.

19      **THE COURT:** ALL RIGHT. LET ME STRUGGLE WITH THIS

20  MORE. I DON'T WANT TO SPEND MORE TIME ON IT.  I'M SURE YOU ALL

21  HAVE OTHER MATTERS TO ADDRESS.

22      **MR. HERMAN:** JUST TWO VERY BRIEF POINTS, YOUR HONOR,

23  AND THEN I'LL SIT DOWN.

24      THE DEFENDANTS KEEP REFERRING TO THIS AS A COINED

25  TERM, THE TASK TERMS AS COINED TERMS.  I DON'T THINK THAT'S

1   FAIR.  FRAME TRANSMISSION IS WELL KNOWN IN THE ART.

2           FRAME TRANSFER, AS YOUR HONOR POINTED OUT IN THE

3   FIRST HEARING, AFTER READING THESE PATENTS, TALKS -- FRAME

4   TRANSFER TALKS ABOUT HOST COMPUTER TO BUFFER MEMORY CONSISTENTLY

5   IN THE PATENTS.  TRANSMISSION PART IS BUFFER MEMORY OUTSIDE THE

6   NETWORK.

7           THAT'S CONSISTENTLY DISCUSSED IN THE PATENT. SO THOSE

8   CONCEPTS, THOSE ARE NOT COINED CONCEPTS.  MEDIUM ACCESS TASK,

9   THERE'S A MEDIUM ACCESS CONTROLLER DISCLOSED IN THE PATENTS AND

10  CERTAINLY IN PRACTICALLY EVERY COMPUTER TODAY.

11          THOSE ARE NOT COINED TERMS.  PEOPLE IN ART UNDERSTAND

12  EXACTLY WHAT THEY MEAN. ADDING THE WORD "TASK" DOESN'T MAKE IT

13  INDEFINITE.

14          **THE COURT:**  COULD I DRAW ANY MEANING FROM THE USE OF

15  THE ARTICLE "A" RATHER THAN "THE" TO FRAME TRANSMISSION TASK OR

16  TASKS?

17          **MR. HERMAN:**  I BELIEVE THAT'S SIMPLY IN THE FIRST

18  INDEPENDENT CLAIM CALLING IT "A FRAME TRANSMISSION TASK" AVOIDS

19  AN ANTECEDENT BASIS PROBLEM.

20          AND THE DEPENDENT CLAIMS MAY REFER TO "THE FRAME

21  TRANSMISSION TASK," WHICH SIGNALS IT'S REFERRING TO THE ONE

22  DISCUSSED IN THE INDEPENDENT CLAIM.

23          **THE COURT:**  RIGHT.  I GOT IT.

24          **MR. HERMAN:**  FINALLY, SLIDE 24, "FRAME TRANSMISSION

25  TASK" IS USED IN PATENTS, OR AT LEAST A PATENT OWNED BY INTEL.

```
1   THIS IS A PATENT THAT 7,676,604 THEY TALK DIRECTLY ABOUT A FRAME
2   TRANSMISSION TASK, NOT ONLY IN THE SPECIFICATION, BUT THROUGHOUT
3   THE INDEPENDENT CLAIMS, AS WELL.
4           SO IT'S A TERM THAT THEY CERTAINLY HAVE AN
5   UNDERSTANDING OF WHAT IT MEANS.
6           AT WITH THAT, YOUR HONOR, I'LL CLOSE OUT ON THE TASK
7   TERMS.  THANK YOU.
8           THE COURT:  THANK YOU.
9           MR. CORDELL:  MAY I, YOUR HONOR?
10          THE COURT:  CERTAINLY.
11          MR. CORDELL:  SOMETHING NEW.
12          THE COURT:  I KNEW THIS WAS COMING.
13          MR. CORDELL:  THE '604 PATENT, YOUR HONOR, IS ON A
14  STORAGE AREA NETWORK.  IT'S A COMPLETELY DIFFERENT SYSTEM.  AND
15  IT REALLY UNDERSCORES THE DANGER IN RELYING ON EXTRINSIC IN THE
16  CLAIM CONSTRUCTION FOR THIS PATENT.
17          WE'D BE HAPPY TO TAKE THE DEFINITIONS OUT OF THE '604
18  PATENT, BUT THEY WOULD MAKE NO SENSE. WE WOULD BE TALKING ABOUT
19  MOVING DATA INTO AND OUT OF MEMORIES, AS OPPOSED TO MOVING THEM
20  CROSS A NETWORK.  AND IT WOULD BE COMPLETELY --
21          THE COURT:  THANK YOU.  ALL RIGHT.  SO NOW WE'RE
22  MOVING ON TO THE --
23          MR. STEPHENS:  TO MEANS TERMS, YOUR HONOR.
24          THE COURT:  OKAY.  MY CLERK IS ALWAYS PAYING
25  ATTENTION TO MY COURT REPORTER TO MAKE SURE SHE DOESN'T NEED A
```

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

1     BREAK.

2              PLEASE YELL AND SCREAM IF I KEEP GOING WHEN YOU NEED

3     A BREAK, ALL RIGHT?

4              **MR. STEPHENS:**  OKAY.  WE'LL START WITH "HOST

5     INTERFACE MEANS" IN THE CLAIM ONE OF THE '313 PATENT.

6              WE'VE PROVIDED IN OUR PRESENTATION THESE THREE COLUMN

7     CHARTS THAT JUST SHOW THE VARIOUS POSITIONS OF THE PARTIES. I

8     WON'T BELABOR THIS ONE.

9              WE'VE ALSO PROVIDED SUMMARIES OF EACH DISPUTE BEFORE

10    EACH CLAIM TERM.  SO HERE THE COURT'S PREVIOUSLY RESOLVED THAT

11    THIS IS A MEANS-PLUS-FUNCTION TERM TO BE INTERPRETED UNDER

12    112-6.

13             THE DEFENDANTS CONTEND THAT THE DESCRIPTION IN THE

14    SPECIFICATION'S PURELY FUNCTIONAL AND NOT SUFFICIENT TO SUPPORT

15    112-6.  AND, THEREFORE, THAT THE CLAIM IS INVALID AS INDEFINITE.

16             IF YOUR HONOR FEELS OTHERWISE THERE REMAINS A DISPUTE

17    ABOUT WHAT DESCRIPTION IN THE SPECIFICATION ACTUALLY IS THE

18    APPROPRIATE DESCRIPTION TO PERFORM THE RECITED FUNCTIONS.

19             NOW, U.S. ETHERNET PROPOSES A VERY SLIM STRUCTURE.

20    THEY CALL THIS "A STRUCTURE."  IT'S GOT FIVE ELEMENTS IN IT:

21    UPLOAD DMA LOGIC; DOWNLOAD DMA LOGIC; BUFFER MEMORY; HOST

22    SYSTEM; AND INTERCONNECTING CIRCUITRY.

23             THE PROBLEM WITH IS THAT -- AND WE'VE SEEN THIS

24    ALREADY, OF COURSE.  IT'S BEEN A LITTLE BIT OF AN M.O. OF U.S.

25    ETHERNET, THE PLAINTIFFS IN THIS CASE, TO PROPOSE CONSTRUCTIONS

1   THAT ACTUALLY TAKE WORDS THAT ARE ALREADY IN THE CLAIM.  AND

2   THIS IS NO DIFFERENT.

3          SO THEY ARE PROPOSING A STRUCTURE FOR:

4          "HOST INTERFACE MEANS" THAT INCLUDES A BUFFER

5   MEMORY.  BUT THE CLAIM ALREADY RECITES A BUFFER MEMORY.  AND THE

6   HOST INTERFACE MEANS IS FOR MANAGING DATA TRANSFERS BETWEEN THE

7   HOST ADDRESS SPACE AND THE BUFFER MEMORY.

8          DOESN'T MEAN THAT THE HOST INTERFACE HAS THE BUFFER

9   MEMORY AS A PART OF IT. IT SITS BETWEEN THE BUFFER MEMORY AND

10  THE HOST ADDRESS SPACE AND MOVES THINGS BETWEEN THEM.

11         SO THE NOTION OF INCLUDING THE BUFFER MEMORY IN THE

12  CORRESPONDING STRUCTURE DOESN'T MAKE ANY SENSE. IT'S ALREADY

13  THERE SEPARATELY RECITED BY THE CLAIM.  AND AS WE'LL SEE LATER

14  THEY HAVE ALSO PROPOSED "BUFFER MEMORY" AS A PART OF THE

15  CORRESPONDING STRUCTURE FOR THE NETWORK INTERFACE MEANS.

16         SO IN THEIR VIEW, THEN, THE BUFFER MEMORY APPEARS

17  THREE TIMES IN THE CLAIM.  JUST DOESN'T MAKE A LOT OF SENSE.

18         THEY ALSO PROPOSE THAT THE HOST BE A PART OF THE

19  CLAIM.  AGAIN, SAME KIND OF PROBLEM.  A LITTLE BIT DIFFERENT,

20  MAYBE. THE CLAIM SAYS THAT THE APPARATUS IS FOR CONTROLLING

21  COMMUNICATION BETWEEN A HOST SYSTEM AND A NETWORK TRANSCEIVER.

22         IN ORDER TO CONTROL COMMUNICATIONS BETWEEN TWO THINGS

23  YOU DON'T HAVE TO ACTUALLY IN THAT APPARATUS THAT CONTROLS

24  COMMUNICATION HAVE BOTH OF THOSE THINGS THAT YOU CONTROL

25  COMMUNICATION BETWEEN.

1              AND THE CLAIM WOULDN'T MAKE SENSE IF THE HOST

2       INTERFACE MEANS INCLUDED THE HOST, BECAUSE THE HOST INTERFACE

3       MEANS SAYS THAT IT SHARES THE HOST ADDRESS SPACE WITH THE HOST.

4       AND UNDER THEIR CONSTRUCTION OF "HOST INTERFACE MEANS," THEN,

5       YOU WOULD HAVE THE HOST SHARING ADDRESS SPACE WITH ITSELF, WHICH

6       DOESN'T MAKE ANY SENSE.

7              SO THE BUFFER MEMORY AND THE HOST SYSTEM DON'T REALLY

8       BELONG AS PARTS OF THE HOST INTERFACE MEANS.  THEY ARE JUST

9       PRETTY CLEARLY INCONSISTENT WITH THE STRUCTURE OF THE CLAIM AND

10      WHAT'S DISCLOSED.

11             THEY ALSO PROPOSE AN INTERCONNECTING CIRCUITRY

12      SUFFICIENT TO LINK THE REQUIRED STRUCTURES.  AND PROBLEM HERE IS

13      IT'S JUST NOT DISCLOSED ANYWHERE. YOU CAN READ THIS PATENT FROM

14      ONE END TO THE OTHER AND NOT FIND ANY CIRCUITRY DISCLOSED OR

15      DISCUSSED AT ALL IN CONNECTION WITH THE HOST INTERFACE MEANS OR

16      THE DOWNLOAD OR UPLOAD LOGIC.

17             AND IF YOU LOOK AT FIGURE THREE AND THE OTHER

18      DESCRIPTION OF THE DOWNLOAD AND UPLOAD LOGIC, THEY ARE NOT EVEN

19      SHOW AS INTERCONNECTING, AT LEAST NOT IN ANY REASONABLY DIRECT

20      WAY.

21             SO THIS NOTION THAT YOUR HONOR IS SUPPOSED TO JUST

22      MAKE UP SOME STRUCTURE THAT'S NOT DISCLOSED IN THE PATENT TO

23      CORRESPOND TO THE HOST INTERFACE MEANS IS INCONSISTENT WITH THE

24      GOVERNING LAW AND SHOULDN'T DO IT.

25             SO THAT LEAVES THE DOWNLOAD AND UPLOAD DMA LOGIC. AND

1   WHAT YOU'LL FIND -- AND NOT JUST WITH THESE PIECES OF IT, BUT

2   CERTAINLY WITH THOSE PIECES -- IS THERE'S NO CIRCUITRY

3   ALGORITHMS OR ANY OTHER STRUCTURE DISCLOSED IN THE PATENT FOR

4   THOSE.

5            THEY ARE JUST DESCRIBED AS BOXES OF LOGIC.

6            NOW, LET'S TALK ABOUT WHAT THE SPECIFICATION DOES

7   EXPLICITLY TIE TO THE RECITED FUNCTION.  SO IN THIS SLIDE, YOUR

8   HONOR, I HAVE PUT THE RECITED FUNCTION THERE IN THE BOX ON THE

9   LOWER LEFT SIDE.  AND THE RECITED FUNCTION OF THIS PATENT IS FOR

10  MANAGING DATA TRANSFERS BETWEEN THE HOST ADDRESS SPACE AND THE

11  BUFFER MEMORY IN OPERATIONS TRANSPARENT TO THE HOST SYSTEM.

12           NOW, YOUR HONOR HAS CONSTRUED THAT PHRASE.  I'M

13  FOCUSING ON THE ACTUAL CLAIM LANGUAGE HERE JUST BECAUSE IT'S A

14  LITTLE EASIER TO MAP ONTO SOME OF THE PORTIONS OF THE ACTUAL

15  SPECIFICATION.

16           BUT IF YOU LOOK FOR THE LANGUAGE IN THE SPECIFICATION

17  WHERE IT TALKS ABOUT MANAGING DATA TRANSFERS BETWEEN THE HOST

18  ADDRESS SPACE AND BUFFER MEMORY IT'S IN THERE.

19           AND OF COURSE THE PLACE YOU WOULD EXPECT TO FIND IT

20  IN A CLAIM THAT -- OR A LIMITATION THAT STARTS WITH HOST

21  INTERFACE MEANS IS IN A DISCUSSION OF THE HOST INTERFACE LOGIC.

22  AND THAT'S EXACTLY WHERE IT IS.

23           SO IT SAYS THAT THE HOST INTERFACE LOGIC MANAGES

24  ACCESSES TO THE BUFFER MEMORY, AND IT DOES IT IN OPERATIONS THAT

25  ARE TRANSPARENT TO THE HOST.

1          SO IT'S TIED VERY DIRECTLY TO THE RECITED FUNCTION IN

2    CLAIM ONE.

3          SO WE SEE THAT THE HOST INTERFACE LOGIC, WHICH IS

4    SHOWN AS "102" HERE AND INCLUDES A FEW OTHER BOXES INSIDE IT,

5    THAT'S WHAT MANAGES DATA TRANSFERS BETWEEN THE HOST ADDRESS

6    SPACE AND THE BUFFER MEMORY IN OPERATIONS TRANSPARENT TO THE

7    HOST SYSTEM, THE WHOLE THING.

8          AND, OF COURSE, THERE'S A NUMBER OF PIECES INSIDE IT.

9    THOSE PIECES ARE ALSO EXPLICITLY TIED TO THE RECITED FUNCTION.

10         SO THE SPECIFICATION TELLS YOU THAT THE HOST

11   INTERFACE LOGIC INCLUDES TRANSMIT DESCRIPTOR LOGIC AND DOWNLOAD

12   DMA LOGIC, AND THAT THOSE ARE USED IN THE TRANSMIT PROCESS.

13         AND WHAT YOU'LL FIND, YOUR HONOR, IF YOU LOOK AT THIS

14   FIGURE, FIGURE THREE, THAT THE UPPER PART OF IT HAS ARROWS

15   POINTING TO THE RIGHT INTO AND OUT OF THE BUFFER MEMORY.  AND

16   THE LOWER PART OF IT HAS ARROWS POINTING TO THE LEFT, INTO AND

17   OUT OF THE BUFFER MEMORY.

18         SO THAT HELPS YOU REALIZE WHEN YOU'RE LOOKING AT IT

19   THAT THE TRANSMIT RELATED STRUCTURES OR TRANSMIT RELATED LOGIC

20   BOXES ARE SHOWN ON THE UPPER HALF, AND THE RECEIVER IS SHOWN ON

21   THE LOWER HALF.

22         **THE COURT:**  WELL, MAYBE THIS WOULD BE A CONVENIENT

23   TIME TO TAKE A BREAK. LET ME LEAVE YOU WITH THIS.  IT DOES SEEM

24   TO ME THAT IN LOOKING AT THIS PARTICULAR PROBLEM, THESE

25   CORRESPONDING STRUCTURES, I CAN DRAW SOME MEANING OF WHAT ARE

1    THE NECESSARY COMPONENTS TO, FOR EXAMPLE, CLAIM 13, HOST

2    INTERFACE MEANS, BY LOOKING TO SEE WHETHER OR NOT IN DEPENDENT

3    CLAIMS FROM CLAIM 13 NEW ELEMENTS ARE ADDED.

4              AND SO IF THOSE NEW ELEMENTS ARE ADDED AS PART OF THE

5    LIMITATION ON CLAIM 13, THOSE NEW ELEMENTS, PERHAPS, SHOULD NOT

6    BE REGARDED BY THE COURT AS NECESSARY TO CLAIM 13, BECAUSE THEY

7    ARE ADDING FURTHER LIMITATIONS.

8              AND THIS DESCRIPTION COULD WELL BE A DESCRIPTION IN

9    THE WRITTEN DESCRIPTION THAT INCLUDES MORE THAN SIMPLY THE BASE

10   INVENTION.  IT COULD INCLUDE ALL OF THE COMPONENTS THAT COULD BE

11   DESCRIBED IN BOTH INDEPENDENT CLAIMS AND DEPENDENT CLAIMS.

12             SO I WORRY ABOUT USING THAT AS THE WAY OF DEFINING

13   WHAT ARE THE CORE, NECESSARY ELEMENTS FOR STRUCTURE THAT

14   CORRESPONDS TO HOST INTERFACE MEANS.  AND MAYBE THAT'S WHAT THE

15   PARTIES CAN ADDRESS.

16             AS A MATTER OF PROTOCOL, CAN I ADOPT THE NOTION THAT

17   IF A PARTICULAR DEVICE, STRUCTURE, IS CALLED OUT BY THE

18   DEPENDENT CLAIMS, CAN I JUST AS A MATTER OF COURSE IGNORE THOSE

19   FOR PURPOSES OF CONSTRUING THE NECESSARY COMPONENTS FOR THE

20   INDEPENDENT CLAIM?

21             DO YOU UNDERSTAND MY QUESTION?

22             **MR. STEPHENS:**  I DO, YOUR HONOR.

23             **THE COURT:**  AND SO IF BOTH SIDES COULD ADDRESS THAT

24   THAT WOULD HELP ME WITH RESPECT TO ALL THESE.

25             NOT THAT'S NOT TO SAY YOU MIGHT NOT HAVE SOMETHING TO

```
1   SAY ABOUT WHETHER THERE'S SOME OTHER PROBLEM WITH THESE VARIOUS

2   MEANS CLAIMS.  BUT WHEN I ASKED FOR CORRESPONDING STRUCTURE, THE

3   REASON I DID SO WAS BECAUSE IN THE FIRST ROUND OF THIS I WAS

4   GETTING A LOT OF DISAGREEMENT ABOUT HOW BIG THAT SHOULD BE, HOW

5   DETAILED IT SHOULD BE.

6           AND I WAS HOPING TO GET:  WHAT IS THE CORE GROUP

7   OF -- AND IT LOOKS LIKE YOU BOTH AGREE TO SOME THINGS AS BEING

8   IN COMMON, AND PART OF WHAT SHOULD BE THE NECESSARY ELEMENTS.

9   BUT THEN, I LOOK AT YOUR LISTS, AND YOURS GETS BIGGER.  THEIRS

10  GET TO -- DIFFERENT.  THEY ARE DIFFERENT.

11          AND SO THAT IS HOW I WANT TO HAVE YOUR GUIDANCE IS

12  WHAT SHOULD I DO WITH RESPECT TO HOW TO HANDLE ANYTHING THAT IS,

13  OF NECESSITY, TIED TO A DEPENDENT CLAIM?

14          MR. STEPHENS:  OKAY.

15          THE COURT:  SO WE'LL COME BACK IN ABOUT TEN MINUTES.

16          MR. STEPHENS:  THANK YOU, YOUR HONOR.

17          THE CLERK:  ALL RISE.

18          (THEREUPON, A RECESS WAS TAKEN.)

19          THE CLERK:  REMAIN SEATED AND COME TO ORDER.

20          THE COURT:  YOU MAY CONTINUE.

21          MR. STEPHENS:  THANK YOU, YOUR HONOR.

22          I'VE BEEN THINKING ABOUT YOUR QUESTION, AND I THINK

23  THE FIRST ANSWER IS THAT CLAIM DIFFERENTIATION IS A JUDICIALLY

24  CREATED DOCTRINE.  IT'S COMMON LAW, AND IT CANNOT OVERRIDE THE

25  STATUTE.
```

1        112-6 TELLS THE COURT WHAT IT MUST DO IN ORDER TO

2   CONSTRUE A MEANS-PLUS-FUNCTION CLAIM.  AND WE'VE CITED A NUMBER

3   OF CASES.  THERE'S SEVERAL LAY TERM CASES, I THINK, THAT ARE

4   GOOD ON THIS POINT THAT SAY EXPLICITLY THAT YOU CAN'T RELY ON

5   CLAIM DIFFERENTIATION TO OVERRIDE THE STATUTE.

6        BUT I THINK YOU CAN ALSO LOOK AT THE CLAIMS

7   THEMSELVES AND SEE THAT IF YOU DO THAT WHAT YOU ARE LEFT WITH IS

8   NOTHING BUT AN EMPTY BOX.

9        SO, FOR EXAMPLE, I THINK YOU CAN SEE FROM THIS FIGURE

10  1O2 IS A BOX THAT CORRESPONDS TO THE HOST INTERFACE LOGIC.

11  INSIDE WE HAVE THIS BOX 107 THAT TRANSMITS STUFF. THAT INCLUDES

12  TRANSMIT DESCRIPTOR AND DOWNLOAD DMA LOGIC.

13       WELL, THAT IS ALSO CLAIMED AS A DEPENDENT CLAIM.  SO

14  IF CLAIM DIFFERENTIATION WERE APPLIED IN CLAIM THREE, WHICH

15  DEPENDS FROM CLAIM ONE AND SAYS:

16            "WHEREIN HOST INTERFACE MEANS INCLUDES TRANSMIT

17            DESCRIPTOR LOGIC AND DOWNLOAD LOGIC," ALL YOU ARE

18  LEFT WITH IN CLAIM ONE IS AN EMPTY BOX, 107, FOR TRANSMISSION.

19       AND THE THINGS THAT ARE SHOWN IN 108, THE TRANSFER

20  AND UPLOAD LOGIC AND VIEW LOGIC, THOSE ARE ALSO ALL CLAIMED

21  SEPARATELY AS DEPENDENT CLAIMS.

22       THE TRANSFER AND UPLOAD LOGIC IS IN CLAIM NINE, THE

23  VIEW LOGIC IN CLAIM TEN.  ALL THESE CLAIMS DEPEND FROM IN CLAIM

24  ONE.

25       SO IF YOUR HONOR WERE TO SAY THAT CLAIM

1    DIFFERENTIATION MEANS THAT CLAIM ONE DOESN'T CORRESPOND TO THOSE

2    STRUCTURES, THERE'S NOTHING LEFT.  ALL YOU HAVE IS AN EMPTY BOX.

3            AND THE SPECIFICATION TELLS YOU THAT IT ISN'T JUST

4    THAT EMPTY BOX 102 THAT IS TIED TO THE RECITED FUNCTION.

5            **THE COURT:**  LET ME SEE IF I UNDERSTAND YOUR POSITION.

6    I HAVE THE FUNCTION, AND SO THE CORRESPONDING STRUCTURE AT, I

7    THOUGHT BOTH SIDES AGREED, WAS THE DOWNLOAD AND UPLOAD DMA

8    LOGIC.

9            **MR. STEPHENS:**  NOT AT ALL, YOUR HONOR.  SO THAT IS A

10   STRUCTURE THAT OVERLAPS BETWEEN THE TWO SIDES, SUPPOSEDLY.  BUT

11   OUR VIEW IS THAT'S NOT NEARLY ENOUGH TO ACCOMPLISH THE RECITED

12   FUNCTION.

13           **THE COURT:**  WELL, MAYBE NOT SUFFICIENT, BUT IT IS A

14   CORRESPONDING STRUCTURE.

15           **MR. STEPHENS:**  OKAY.

16           **THE COURT:**  IN OTHER WORDS, THE CORRESPONDING

17   STRUCTURE HAS TO BE THE STRUCTURE THAT PERFORMS THE FUNCTION.

18   BUT YOUR ARGUMENT IS THAT IT NEEDS MORE.

19           **MR. STEPHENS:**  THAT'S RIGHT.

20           **THE COURT:**  ALL RIGHT. AND SO I SHOULD DRAW FROM YOUR

21   POSITION WHAT MORE IS NEEDED OTHER THAN THOSE TWO?

22           **MR. STEPHENS:**  YES.

23           **THE COURT:**  WHAT MORE IS?

24           **MR. STEPHENS:**  OKAY.  IF I MAY, THOUGH, YOUR HONOR,

25   LET ME POINT OUT THAT UNDER THIS CLAIM DIFFERENTIATION VIEW THAT

1    THE PLAINTIFFS HAVE ARGUED, THOSE TWO PIECES OF STRUCTURE WHICH

2    ARE THE ONLY ONES THAT OVERLAP AND THE ONLY ONES EVEN RELATED TO

3    THIS FUNCTION IN THEIR PROPOSED STRUCTURE WOULD ALSO NOT BE

4    APPROPRIATELY INCLUDED IN THE HOST INTERFACE LOGIC IN CLAIM ONE,

5    BECAUSE THEY ARE SEPARATELY RECITED INDEPENDENT CLAIMS.

6         **THE COURT:**  ALL RIGHT.  WELL, SO THAT WOULD ARGUE

7    AGAINST MY PROPOSITION THAT I CAN USE THAT. I UNDERSTAND THAT.

8    BUT THAT DOESN'T NECESSARILY MEAN THAT THEY ARE NOT

9    CORRESPONDING STRUCTURE.

10        **MR. STEPHENS:**  OH, NO. WELL, AND WE AGREE THAT THEY

11   ARE CORRESPONDING DESCRIPTION.  I MEAN, THE PROBLEM, OF COURSE,

12   IS ALL YOU HAVE IS THE BOX LABELED "DOWNLOAD DMA LOGIC."

13   THERE'S NO INDICATION HOW IT WORKS IN THE SPECIFICATION.

14        PUTTING THAT TO ONE SIDE, WE AGREE THAT THAT

15   DESCRIPTION CORRESPONDS TO A PART OF THE FUNCTION.

16        **THE COURT:**  ALL RIGHT.  WHAT ELSE?

17        **MR. STEPHENS:**  OKAY.  I'LL SHOW YOU.

18        SO BASICALLY THE OTHER THINGS THAT ARE SHOWN IN THE

19   BOX WITH THE DOWNLOAD DMA LOGIC AND THE UPLOAD DMA LOGIC, AND

20   THE REASON WE THINK THAT IS BECAUSE THE SPEC TELLS YOU THAT IS

21   THE CASE.

22        SO, AGAIN, THE QUOTE THAT I HAVE UP HERE NOW IN

23   COLUMN TWO, LINE SIX TO 15, TIES THE HOST INTERFACE LOGIC

24   EXPLICITLY TO THE RECITED FUNCTIONS OF MANAGING DATA TRANSFERS

25   IN OPERATIONS TRANSPARENT TO THE HOST.

```
 1              BUT THEN IT GOES ON TO DESCRIBE IN ANOTHER PART OF

 2   THE SPECIFICATION THAT THE HOST INTERFACE LOGIC INCLUDES THESE

 3   COMPONENTS:  DOWNLOAD DMA LOGIC AND TRANSMIT DESCRIPTOR LOGIC

 4   USED IN THE TRANSMIT PROCESS, AND VIEW LOGIC, TRANSFER

 5   DESCRIPTOR LOGIC, AND UPLOAD DMA LOGIC USED IN THE RECEIVE

 6   PROCESS.

 7              AND THEN, RIGHT AFTER THAT AT THIS POINT IN COLUMN

 8   NINE IT SAYS:

 9                   "THESE MODULES BASICALLY MANAGE COMMUNICATION

10         OF DATA BETWEEN THE INDEPENDENT MEMORY AND THE HOST,"

11   EXACTLY THEIR RECITED FUNCTIONS.

12              SO EACH OF THOSE THINGS THAT ARE SHOWN IN BOXES 107

13   AND 108 ARE EXPLICITLY TIED TO THE RECITED FUNCTION BY THE

14   SPECIFICATION.  AND THAT IS WHAT SECTION 112 PARAGRAPH SIX

15   REQUIRES YOUR HONOR TO LOOK TO TO IDENTIFY CORRESPONDING

16   STRUCTURE, WHAT THE SPECIFICATION SAYS IS USED TO PERFORM THAT

17   FUNCTION.

18              THE COURT:  WELL, AND YOUR ARGUMENT IS I CAN DO THAT

19   WITHOUT RUNNING THE RISK THAT I AM DEFINING THE CLAIM BY

20   REFERENCE TO MULTIPLE POTENTIAL EMBODIMENTS --

21              MR. STEPHENS:  YES.

22              THE COURT:  -- BECAUSE I STILL HAVE TO WORRY ABOUT

23   THAT, DON'T I?  OR DO I NOT?  IN OTHER WORDS, IF I'M IN A 112-6

24   WORLD, AND THERE ARE EMBODIMENTS, I HAVE TO PAY ATTENTION TO THE

25   WRITTEN DESCRIPTION BECAUSE THAT'S WHERE I DRAW MY DEFINITION OF
```

1   "STRUCTURE."

2           BUT DON'T I ALSO HAVE TO BE CAUTIOUS ABOUT IMPOSING

3   MULTIPLE EMBODIMENTS AS BEING THE DEFINITION OF WHAT IS A

4   NECESSARY DESCRIPTION OF WHAT THE STRUCTURE IS?

5           **MR. STEPHENS:**  WELL, YES AND NO. SO YOU DO HAVE TO BE

6   MINDFUL OF EMBODIMENTS.  AND THEY WOULD, I THINK AS A GENERAL

7   MATTER, BE CONSIDERED ALTERNATIVES.

8           SO, FOR EXAMPLE, YOU MIGHT HAVE TWO DIFFERENT TYPES

9   OF DOWNLOAD DMA LOGIC, LET'S SAY.  AND THEY WOULD BOTH BE

10  CORRESPONDING STRUCTURE, BUT YOU COULD FIND INFRINGEMENT BY

11  FINDING AN EQUIVALENT OF EITHER ONE OF THEM.  IT WOULDN'T HAVE

12  TO BE THE EQUIVALENT OF BOTH.

13          SO THEY WOULD BOTH BE THE STRUCTURE THAT IS TIED TO

14  PERFORMING THE FUNCTION BY THE SPECIFICATION.  BUT BECAUSE TWO

15  DIFFERENT TYPES OF DOWNLOAD DMA LOGIC ARE DISCLOSED, THEN

16  INFRINGEMENT WOULD ULTIMATELY BE JUDGED BY EQUIVALENTS TO EITHER

17  ONE OF THOSE EMBODIMENTS.

18          THAT'S NOT THE SITUATION HERE, HOWEVER, BECAUSE

19  THERE'S NOT SEPARATE EMBODIMENTS DISCLOSED.  THIS IS THE ONLY

20  ONE. AND YOU CAN'T USE THE DMA LOGIC IN THE DISCLOSED EMBODIMENT

21  WITHOUT WRITING A TRANSMIT DESCRIPTOR TO THE TRANSMIT DESCRIPTOR

22  BUFFER.

23          THE TRANSMIT DESCRIPTOR IS WHAT IDENTIFIES THE DATA

24  TO BE DOWNLOADED.  AND THE DOWNLOAD DMA LOGIC USES THE TRANSMIT

25  DESCRIPTOR TO FIGURE OUT WHERE TO DOWNLOAD DATA FROM.

1          SO THESE AREN'T SEPARATE EMBODIMENTS.  THERE'S ONLY A

2     SINGLE EMBODIMENT.  AND EACH OF THE PIECES OF STRUCTURE THAT THE

3     SPECIFICATION EXPLICITLY TIES TO PERFORMING THE RECITED FUNCTION

4     IS A PART OF THAT SINGLE EMBODIMENT.

5          **THE COURT:**  BUT AREN'T THOSE TRANSMIT DESCRIPTORS

6     SOMETHING THAT HELP THE FUNCTION BUT AREN'T NECESSARILY THE

7     FUNCTION?  IN OTHER WORDS, I KNOW THAT I NEED WAYS OF KEEPING

8     TRACK OF THINGS.  THAT'S WHAT THESE THINGS DO, THE MAPPING

9     TRANSMIT DESCRIPTORS DO SOMETHING THAT HELPS IT. BUT IS THAT THE

10    FUNCTION?

11         **MR. STEPHENS:**  THE FUNCTION, AGAIN, IS MANAGING DATA

12    TRANSFERS BETWEEN THE HOST ADDRESS SPACE AND THE BUFFER MEMORY

13    AND OPERATION --

14         **THE COURT:**  SO SOMETHING MANAGES IT.  AND IT MIGHT

15    PULL ON A NUMBER OF RESOURCES TO HELP IT DO THAT JOB, BUT THE

16    CORRESPONDING STRUCTURE IS THE MANAGING STRUCTURE, NOT THE

17    THINGS THAT IT MIGHT CALL ON.  BECAUSE EVEN THE BUFFERS

18    THEMSELVES AS THINGS ARE BEING MOVED IN AND OUT ARE PART OF HOW

19    IT DOES ITS MANAGING JOB, BECAUSE IT'S GOT TO LOOK AT THAT.  BUT

20    THE BUFFERS AREN'T NECESSARY TO THAT, ARE THEY?

21         **MR. STEPHENS:**  NO, I AGREE THEY ARE NOT.  BUT THAT'S

22    BECAUSE THE RECITED FUNCTION IS MOVING DATA BETWEEN ONE THING

23    AND THE OTHER.  SO TO MANAGE THAT MOVEMENT BETWEEN DOESN'T

24    REQUIRE THE THINGS THAT ARE AT THE END.

25         BUT I BELIEVE THAT BOTH THESE, JUST TO STICK WITH OUR

1   EXAMPLE, THE TRANSMIT DESCRIPTORS AND THE DOWNLOAD DMA LOGIC

2   ARE BOTH STRICTLY NECESSARY TO THAT PROCESS OF MANAGING THE DATA

3   TRANSFER, BECAUSE THE DOWNLOAD DMA LOGIC CAN'T TRANSFER DATA

4   UNLESS IT KNOWS WHAT TO TRANSFER.

5           AND THE ONLY WAY THAT IT KNOWS TO TRANSFER DATA IS TO

6   LOOK INSIDE THE TRANSMIT DESCRIPTOR.  AND I SHOULD MENTION ALSO

7   THAT THE TRANSMIT DESCRIPTOR IS ALSO PART OF THE EMBODIMENT THAT

8   ACTUALLY MOVES THE DATA, RIGHT?

9           IN OTHER WORDS, THE WAY THIS WORKS IS THE HOST SYSTEM

10  WRITES A TRANSMIT DESCRIPTOR TO THE TRANSMIT AREA OF THE

11  ADAPTOR INTERFACE ADDRESS BLOCK.

12          AND THERE'S A MAP OF THAT SHOWN.  I BELIEVE IT'S

13  FIGURE FOUR.

14          THE HOST WRITES IT, A TRANSMIT DESCRIPTOR, AND THAT

15  TRANSMIT DESCRIPTOR ACTUALLY TYPICALLY INCLUDES A PORTION OF THE

16  FRAME.

17          **THE COURT:**  BUT IN THE DEPENDENT CLAIM 12 I'M GIVEN A

18  JOB FOR THE TRANSMIT DESCRIPTOR.  IT'S TOLD, IT SAYS, "FOR

19  MAPPING."  IT DOESN'T SAYING ANYTHING FOR MANAGING.  IT'S "FOR

20  MAPPING."

21          **MR. STEPHENS:**  WELL, IT'S -- YOU ARE GIVING THE JOB

22  OF TRANSMIT DESCRIPTOR LOGIC, NOT THE TRANSMIT DESCRIPTOR.

23          SO THE TRANSMIT DESCRIPTOR LOGIC MAPS TRANSMIT

24  DESCRIPTORS FROM THE HOST SYSTEM TO THE BUFFER MEMORY.

25          **THE COURT:**  AND THAT'S EVERY TIME THAT PHRASE IS USED

1   IT IS FOR MAPPING. AND SO MY -- I UNDERSTAND YOUR ARGUMENT.  I'M

2   NOT SURE I WILL ADOPT IT AS TO WHETHER OR NOT IF I'M GIVEN THE

3   FUNCTION OF MANAGING DATA TRANSFERS BETWEEN TWO THINGS, DO I

4   NECESSARILY INCLUDE AS CORRESPONDING STRUCTURE SOMETHING THAT IS

5   GIVEN A JOB IN THE CLAIM, BUT IT'S NOT THAT JOB. IT'S GIVEN SOME

6   OTHER JOB THAT MIGHT BE HELPFUL TO THE MANAGER, BUT NOT

7   NECESSARILY TO IT.

8            **MR. STEPHENS:**  WELL, IMPORTANTLY, YOUR HONOR, THAT

9   MAPPING IS ACTUALLY HOW THE DATA TRANSFER IS ACCOMPLISHED.

10           **THE COURT:**  YOU SAID THAT BEFORE, AND I MADE THAT

11   NOTE.  SO I NEED TO PAY ATTENTION TO:  IS IT NECESSARY BECAUSE

12   YOU CAN'T MANAGE WITHOUT IT?

13           **MR. STEPHENS:**  YES.  AND I THINK A CAREFUL READING OF

14   THE SPECIFICATION SHOWS THAT THAT IS THE CASE.

15           AND THAT MAPPING IS ACCOMPLISHED BY USING THESE

16   STRUCTURES THAT ARE SHOWN HERE IN FIGURES NINE AND 11.  SO,

17   AGAIN, STICKING WITH THE TRANSMIT DESCRIPTOR LOGIC, WHICH FOR

18   SOME REASON I CAN'T UNDERSTAND IS DESCRIBED AS "HOST DESCRIPTOR

19   LOGIC" IN THESE FIGURES. IT USES THESE POINTERS TO PERFORM THE

20   MAPPING.  AND SO THE CURRENT HOST DESCRIPTOR POINTER CHD AND THE

21   HOST WRITE POINTER THERE ATTACH TO THE HOST DESCRIPTOR LOGIC

22   150.

23           ALL THESE, REMEMBER, ARE SHOWN AS A PART OF THE HOST

24   INTERFACE LOGIC.

25           WHAT THOSE POINTERS DO IS THAT WHEN THE HOST WRITES A

1    TRANSMIT DESCRIPTOR, WHICH ACTUALLY INCLUDES FRAME DATA, AS WELL

2    AS A POINTER TO THE HOST MEMORY, TO THE TRANSMIT REGISTERS,

3    WHICH ARE SHOWN THERE ON THE LEFT SIDE OF FIGURE NINE, AND ALSO

4    SHOWN ARE THE ADAPTER INTERFACE ADDRESS BLOCK IN 101 IN FIGURE

5    THREE.

6              THOSE POINTERS SHOW THAT PERFORM THE MAPPING, AND

7    WHAT HAPPENS IS THE HOST WRITE IS REMAPPED DIRECTLY INTO THE

8    TRANSMIT DESCRIPTOR BUFFER IN THE ADAPTER MEMORY.

9              SO BY PERFORMING THAT MAPPING THE DATA IS ACTUALLY

10   MOVED FROM ONE ADDRESS SPACE TO ANOTHER:  THE ADDRESS SPACE OF

11   THE HOST INTO THE BUFFER ADDRESSES.

12             SO IT IS THE POINTERS THAT PERFORM BOTH THE

13   MANAGEMENT AND THE ACTUAL DATA TRANSFER, BECAUSE THEY

14   IDENTIFY -- THEY MANAGE IT BY IDENTIFYING THE PLACE IT'S GOING

15   TO GO AND THE ACTUAL TRANSFER.  AT LEAST THE ONLY MECHANISM

16   DESCRIBED IN THE PATENT FOR PERFORMING THE TRANSFER IS THAT THE

17   WRITE IS MAPPED INTO THOSE NEW ADDRESSES.

18             SO THESE STRUCTURES, YOUR HONOR, INCLUDING THE

19   POINTERS, BECAUSE THE POINTERS ARE THE ONLY THING THAT EVEN

20   COMES CLOSE TO BEING STRUCTURE.  THERE'S NO ALGORITHMS.  THERE'S

21   NO CIRCUITRY.  THERE'S JUST LOGIC.  THE LOGIC INCLUDES POINTERS.

22             WE DON'T THINK THAT'S ENOUGH. BUT TO THE EXTENT

23   THERE'S ANYTHING THAT EVEN RESEMBLES STRUCTURE IN THESE PATENTS

24   IT'S THESE POINTERS THAT PERFORM THE DATA TRANSFER AND THE

25   MANAGEMENT OF THE DATA TRANSFER AT THE SAME TIME BY REMAPPING

1    THE HOST ADDRESS SPACE INTO THE BUFFER.

2            AND, AGAIN, IT'S TIED EXPLICITLY TO THESE FUNCTIONS

3    OF:

4                    "THE HOST DESCRIPTOR LOGIC GENERATES POINTERS

5                FOR THE TRANSMIT DESCRIPTOR RING BUFFER ON THE

6                ADAPTER MEMORY, WHICH IDENTIFY THE CURRENT POSITION

7                OF HOST ACCESSES FOR WRITING DESCRIPTORS IN THE

8                TRANMIT DESCRIPTOR RING BUFFER."

9            SO THAT PERFORMS THIS MAPPING BY WHICH A HOST WRITE

10   TO THE ADAPTER INTERFACE ADDRESSES IS REMAPPED AND SORT OF

11   AUTOMAGICALLY TRANSFORMED INTO A HOST WRITE INTO THE BUFFER

12   MEMORY.

13           THE POINTERS ARE WHAT ACCOMPLISHES THAT. AND I DON'T

14   MEAN TO BELABOR THIS, BUT THE SUBSEQUENT SLIDES WE HAVE WALK

15   THROUGH THESE OTHER POINTERS FOR THE OTHER PORTIONS OF THE LOGIC

16   THAT ARE ALL A PART OF THE HOST INTERFACE LOGIC.

17           AND THE SYSTEM CAN'T WORK IF YOU TAKE OUT PART OF

18   THIS, RIGHT?  SO IF YOU TAKE OUT THE HOST DESCRIPTOR LOGIC AND

19   DOWNLOAD DMA LOGIC, WON'T WORK, BECAUSE IT DOESN'T HAVE ANY WAY

20   OF FIGURING OUT WHAT THE MECHANISM IS TO MOVE DATA FROM ONE

21   ADDRESS SPACE TO THE OTHER.

22           SIMILARLY, ON THE RECEIVE SIDE YOU HAVE UPLOAD DMA

23   LOGIC WITH A RECEIVE TAIL POINTER PREVIEW LOGIC WITH A CURRENT

24   FRAME POINTER IN IT.

25           AND THE PREVIEW LOGIC IS QUITE INTERESTING BECAUSE IT

1    DOES EXACTLY THE SAME THING.  THE HOST READS TO WHAT IS CALLED

2    "A LOOKBUF REGISTER," WHICH IS JUST AN ADDRESS IN THE BLOCK OF

3    ADDRESSES THAT IS ALLOCATED TO THE ADAPTER.

4            WHEN THE HOST READS THAT ADDRESS, WHAT HAPPENS IS

5    THAT CURRENT FRAME POINTER IS POINTING TO A LOCATION IN THE

6    BUFFER MEMORY.  AND THAT READ IS AUTOMAGICALLY REMAPPED INTO THE

7    BUFFER MEMORY.  AND WHAT THE HOST GETS BACK WHEN IT READS THAT

8    ADDRESS IS THE DATA THAT'S IN THE RECEIVE BUFFER.  SO THE ACTUAL

9    MOVEMENT OF THE DATA FROM THE BUFFER MEMORY INTO THE HOST

10   ADDRESS SPACE IS ACCOMPLISHED BY THOSE POINTERS.

11           **THE COURT:**  WELL, YOU CERTAINLY HAVE CONVINCED ME

12   THAT IN THE DESCRIPTION THE INVENTORS SHOW VARIOUS WAYS TO

13   PERFORM THE HOST INTERFACE PROCESS.  BUT I HAVE TO FIGURE OUT

14   WHAT IS THE "HOST INTERFACE MEANS."  AND I'M STILL TROUBLED BY

15   THE FACT THAT IN THE DEPENDENT CLAIMS THE WHEREIN THAT MEANS IS

16   THIS TRANSMIT DESCRIPTOR LOGIC.

17           THAT IS AN ADDED THING THAT COMES OUT OF THE

18   DEPENDENT CLAIM, AND I CAN'T IGNORE THE FACT THAT LATER ON IN

19   THE SPECIFICATION I CAN SEE WHAT IS THE CORRESPONDING STRUCTURE

20   FOR THAT.

21           AND SO IF I WERE TO STATE THE LAW NOW FOR CLAIM

22   CONSTRUCTION IT WOULD BE, AS YOU'RE ASKING ME TO ADOPT IT, IF AN

23   EMBODIMENT THAT IS CLEARLY CALLED OUT IN THE DEPENDENT CLAIM HAS

24   A STRUCTURE THAT IS ATTACHED TO THAT NEW FUNCTION, THAT MORE

25   LIMITED FUNCTION THAT IS CALLED OUT IN THE DEPENDENT CLAIM, YOU

1    CAN USE THAT.  YOU CAN USE THAT AS A NECESSARY ELEMENT OF THE

2    GENERAL, THE MORE BROAD CLAIM.

3            AND I HAVEN'T READ A CASE THAT SAYS THAT YET.  IF YOU

4    HAVE ONE, I'D LOVE TO READ IT.

5            **MR. STEPHENS:**  WE DO, YOUR HONOR.  THE <u>LAITRIAM</u> CASES

6    THAT ARE CITED IN OUR BRIEFS SAY THAT EXPLICITLY.

7            **THE COURT:**  ALL RIGHT.  SO THAT'S WHAT I'LL LOOK AT.

8    THE <u>LAITRIAM</u> CASES?

9            **MR. STEPHENS:**  <u>LAITRIAM</u>, L-A-I-T-R-I-A-M.  AND

10   THERE'S A FEW OTHERS CITED ALONG WITH THAT.

11           IT'S WELL-ESTABLISHED, YOUR HONOR, THAT THE

12   JUDICIALLY CREATED DOCTRINE OF CLAIM DIFFERENTIATION DOES NOT

13   TRUMP 112-6.

14           **THE COURT:**  NO, THAT'S NOT THE STATEMENT.  THAT

15   WASN'T MY STATEMENT.  I UNDERSTAND THAT.

16           **MR. STEPHENS:**  RIGHT.

17           **THE COURT:**  THAT'S A VERY GENERAL STATEMENT THAT I'VE

18   READ TONS OF TIMES, AND I UNDERSTAND THAT CLAIM DIFFERENTIATION

19   IS ONE OF THE MERE TOOLS THAT WE USE.

20           BUT IT IS A USEFUL ONE.  BUT I HAVEN'T SEEN A CASE

21   WHERE IT SAYS THE COURT IN 112-6 CONSTRUCTION WHERE IT IS

22   LOOKING FOR CORRESPONDING STRUCTURE SHOULD INCLUDE ANYTHING

23   OTHER THAN THE NECESSARY COMPONENTS THAT PERFORM THAT FUNCTION.

24           AND WHEN A NEW FUNCTION IS ADDED BY A DEPENDENT

25   CLAIM, AND THERE'S A STRUCTURE THAT IS TIED TO THAT, UNLESS YOU

 1   FIND IT'S NECESSARY AND -- THAT'S WHY I MADE A NOTE AS TO THE

 2   NECESSARY.  BUT CLEARLY WHEN I SEE A NEW STRUCTURE THAT IS TIED

 3   TO A DEPENDENT CLAIM, IT CAUSES ME TO RAISE A QUESTION WHETHER

 4   OR NOT IT'S NECESSARY FOR THE GENERAL CLAIM.

 5           **MR. STEPHENS:**  FAIR ENOUGH, YOUR HONOR.

 6           **THE COURT:**  AND SO BECAUSE BY CALLING IT OUT AND

 7   TYING IT INTO SPECIFICATION WHAT THE INVENTOR IS SAYING:

 8                   "AH, I'VE GOT A WAY OF NARROWING WHAT THIS IS."

 9           AND THAT IS A VERY DIFFERENT -- THAT'S A WHOLE

10   DIFFERENT CLAIM THAN MY FIRST ONE.

11           **MR. STEPHENS:**  WELL, THIS IS PRECISELY WHY

12   MEANS-PLUS-FUNCTION CLAIMS ARE TREATED SO DIFFERENTLY THAN

13   RUN-OF-THE-MILL CLAIMS, RIGHT?  THE CLAIM DIFFERENTIATION WORKS

14   IN THE RUN-OF-THE-MILL CLAIMS.

15           BUT THESE CASES, THE LAITRIAM CASES SAY, I THINK,

16   EXACTLY WHAT YOUR HONOR IS THINKING, WHICH IS THAT AS LONG AS

17   THE STRUCTURE IS NECESSARY IF YOU CITE IT IN A DEPENDENT CLAIM

18   IT DOESN'T TAKE IT OUT OF THE CORRESPONDING STRUCTURE.

19           **THE COURT:**  THAT'S THE PROPOSITION.  ALL RIGHT.

20   THANK YOU.

21           **MR. STEPHENS:**  OKAY. SO AND TO TURN A LITTLE BIT TO

22   WHETHER OR NOT THE LOGIC THAT IS ACTUALLY DESCRIBED IN THE

23   SPECIFICATIONS IS SUFFICIENT, THERE'S ANOTHER CASE, A FAIRLY

24   RECENT CASE FROM THE FEDERAL CIRCUIT, ERGO LICENSING, WHERE THE

25   CLAIMS WERE DIRECTED TO A CONTROL MEANS.  AND THEN, THE ONLY

1    SUPPORT FOR THE CONTROL MEANS IN THE SPECIFICATION WAS A CONTROL

2    DEVICE, VERY MUCH LIKE THIS:  JUST A BOX LABELED "CONTROL

3    DEVICE."

4              AND THE FEDERAL CIRCUIT SAID THAT THAT DOESN'T ADD

5    ENOUGH.  TO JUST RELABEL THE SAME BOX AS "CONTROL DEVICE" ISN'T

6    SUFFICIENT STRUCTURE TO SUPPORT A 112-6 CLAIM AND HELD THAT THE

7    CLAIMS WERE INDEFINITE.

8              THAT'S THE SITUATION WE HAVE HERE. SO YOU CAN GO

9    THROUGH THIS PROCESS OF IDENTIFYING THE BOXES LABELED "LOGIC" IN

10   THE SPECIFICATION THAT THE SPEC SAYS PERFORM THE RECITED

11   FUNCTIONS.  AND WE TRIED TO DO THAT BOTH IN OUR BRIEF AND IN

12   THESE FIGURES.

13             BUT THEN, WHEN YOU STEP BACK AND SAY:

14              "WELL, WHAT IS IN THOSE BOXES?"  THE PATENT

15   DOESN'T TELL YOU.  IT IS JUST A BOX LABELED WITH THE FUNCTION

16   FOLLOWED BY THE WORD "LOGIC" IN SOME CASES.

17              AND THAT IS NOT SUFFICIENT STRUCTURE.  IF YOU ARE

18   GOING TO USE A 112-6 TYPE CLAIM WHERE YOU'RE ALLOWED TO CLAIM

19   FUNCTIONALLY, BECAUSE YOU'RE NOT OTHERWISE, THEN THE QUID PRO

20   QUO IS THAT YOU'RE LIMITED TO THE STRUCTURE DISCLOSED IN THE

21   SPECIFICATION FOR PERFORMING THAT FUNCTION.

22              IF YOU DON'T DISCLOSE AN ACTUAL STRUCTURE FOR

23   PERFORMING THAT FUNCTION AND INSTEAD YOU JUST SAY A GIZMO FOR

24   PERFORMING THE FUNCTION -- AND THAT'S ESSENTIALLY WHAT THEY HAVE

25   DONE BY JUST PUTTING -- CALLING IT ALL "LOGIC" -- THEN YOU'RE

1  NOT ENTITLED TO USE 112-6, AND THE CLAIM'S INVALID.

2  **THE COURT:**  WELL, "LOGIC" IS DIFFERENT FROM "GIZMO,"

3  ISN'T IT, IN THE SENSE THAT LOGIC DOES MEAN SOMETHING?  IT MIGHT

4  BE A DEBATE AS TO WHETHER IT'S HARDWARE OR SOFTWARE, BUT IT'S

5  NOT LIKE "GIZMO," IS IT?

6  **MR. STEPHENS:**  WELL, I THINK IT IS LIKE "GIZMO,"

7  BECAUSE IT DOESN'T TELL YOU WHAT GIZMO -- WHAT IS USED TO

8  IMPLEMENT IT, RIGHT?  IF IT DID SUGGEST AN IMPLEMENTATION, YOUR

9  HONOR MIGHT BE RIGHT.  BUT IT DOESN'T.  "LOGIC" IS A TERM THAT

10  IS SO BROAD IN SCOPE --

11  **THE COURT:**  BUT COULD -- LET ME ASK THIS QUESTION:

12  COULD, IF I'M LOOKING FOR STRUCTURE, COULD LOGIC AS A SOFTWARE

13  FUNCTION, A STRUCTURE,  MUSTN'T IT BE HARDWARE?

14  **MR. STEPHENS:**  IF THE SPECIFICATION, FOR EXAMPLE, HAD

15  A SNIPPET OF CODE THAT SAID:

16  "HERE'S HOW YOU MOVE DATA FROM THE INTERFACE --

17  FROM THE HOST ADDRESS SPACE INTO THE BUFFER," AND

18  THEN YOU USED THE WORD "LOGIC," I WOULD SAY THAT WOULD BE FINE.

19  **THE COURT:**  ALL RIGHT.

20  **MR. STEPHENS:**  YES.  "LOGIC" IS A WORD THAT COULD

21  COVER IT.

22  BUT THERE'S NOTHING LIKE THAT IN THE SPECIFICATION.

23  AND THAT'S WHY IT FAILS.

24  WE HAVE SOME MORE DISCUSSION OF THIS WHEN WE GET TO

25  THE SEPARATE LOGIC TERMS.

1      **THE COURT:**  ALL RIGHT.

2      **MR. STEPHENS:**  BUT AT ANY RATE, YOUR HONOR, TO THE

3   EXTENT YOU FIND THE CLAIMS NOT INDEFINITE, THIS IS THE STRUCTURE

4   THAT WE BELIEVE CORRESPONDS TO IT.  AND THIS MAPS ON VERY

5   CLOSELY TO FIGURE THREE, FIGURE NINE AND FIGURE 11 AND THE

6   DISCUSSION THAT DESCRIBES THAT.

7      **THE COURT:**  THANK YOU.

8      **MR. STEPHENS:**  MOVING ON TO THE CLAIM 13, HOST

9   INTERFACE MEANS, IT'S VERY SIMILAR, BUT SLIGHTLY DIFFERENT, AS I

10  THINK YOUR HONOR HAS POINTED OUT.

11      CLAIM ONE, IT'S VERY INSTRUCTIVE, I THINK, TO COMPARE

12  THE RECITED FUNCTIONS.

13      CLAIM ONE HAS:

14          "MANAGING DATA TRANSFERS BETWEEN THE HOST

15          ADDRESS SPACE AND THE BUFFER MEMORY."

16  CLAIM 13 HAS ACTUALLY THREE SEPARATE FUNCTIONS:

17          "MAPPING DATA ADDRESSED TO THE FIRST AREA INTO

18          THE TRANSMIT BUFFER; MAPPING DATA INTO THE RECEIVE

19          BUFFER INTO THE SECOND AREA."

20      AND THESE AREAS ARE IN A PRESPECIFIED BLOCK OF HOST

21          ADDRESSES.

22      AND THEN, THE LAST IS:

23          "UPLOADING DATA FROM THE RECEIVE BUFFER INTO THE

24          HOST."

25      BUT IF YOU LOOK AT THOSE THREE FUNCTIONS, WHAT YOU

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

1    SEE IS THAT THEY ARE ALL DATA TRANSFERS BETWEEN THE HOST ADDRESS

2    SPACE AND THE BUFFER MEMORY.

3          SO THEY ARE, IN EFFECT, PIECES OF THE KINDS OF

4    TRANSFERS THAT ARE BEING MANAGED BY CLAIM ONE.  AND THAT, I

5    THINK, HELPS SHOW WHY THE STRUCTURES ARE, IN FACT, VERY SIMILAR.

6          SO THE CORRESPONDING DESCRIPTION FOR THIS FUNCTION IN

7    CLAIM 13 IS ACTUALLY A SUBSET OF THE STRUCTURE THAT CORRESPONDS

8    TO CLAIM ONE.

9          AND IF YOU JUST TAKE THOSE THREE SEPARATELY RECITED

10   FUNCTIONS ONE AT A TIME, THE FIRST ONE SAYS:

11               "MAPPING DATA ADDRESSED TO THE FIRST AREA INTO

12               THE TRANSMIT BUFFER."

13          AND, AGAIN, THE FIRST AREA, THE FIRST AND SECOND

14   AREAS ARE PART OF THIS PRESPECIFIED BLOCK OF ADDRESSES.  AND

15   THOSE WOULD CORRESPOND TO THE ADAPTER INTERFACE ADDRESS.

16          AND IT'S PRETTY CLEAR.  AND I HAVE ANOTHER SLIDE THAT

17   SHOWS THAT, I THINK, IN A MINUTE.

18          SO YOU CAN TELL THAT THAT IS PERFORMED BY THE BOX 107

19   BECAUSE THE ARROW POINTS TOWARDS THE BUFFER MEMORY.  SO IT'S

20   MAPPING DATA FROM THE FIRST AREA IN THE ADAPTER BLOCK INTO THE

21   TRANSMIT BUFFER.  SO IT'S PERFORMED BY THAT.

22          NOW, BECAUSE THE FIRST ADDRESS BLOCK IS IN THIS

23   PRESPECIFIED BLOCK OF ADDRESSES, YOU KNOW THAT IT'S NOT

24   SOMETHING OUTSIDE OF THAT. THE DOWNLOAD DMA LOGIC DOWNLOADS DATA

25   FROM THE HOST.  SO IT'S DOESN'T DOWNLOAD DATA FROM THE ADAPTER

1    INTERFACE.   OTHERWISE, IT WOULD BE DOWNLOADING DATA FROM ITSELF.

2                    AND AS A RESULT YOU CAN TELL THAT THIS FIRST FUNCTION

3    ISN'T PERFORMED BY THE DOWNLOAD DMA LOGIC, BECAUSE THE DOWNLOAD

4    DMA LOGIC DOESN'T MOVE DATA FROM THAT PRESPECIFIED BLOCK OF HOST

5    ADDRESSES IN THE ADAPTER INTERFACE BLOCK INTO THE ADAPTER

6    MEMORY.

7                    SO THE RESULT IS YOU CAN TELL THAT THE CORRESPONDING

8    STRUCTURE THAT'S APPROPRIATE FOR THIS FIRST FUNCTION IS THE

9    TRANSMIT DESCRIPTOR LOGIC, BECAUSE IT DOES DO THAT.   IT MAPS

10   ADDRESSES IN THE ADAPTER INTERFACE BLOCK 101 INTO THE ADAPTER

11   MEMORY.

12                   THE NEXT MAPPING THAT'S REQUIRED BY THE FUNCTION IS

13   MAPPING DATA FROM THE RECEIVE BUFFER INTO THE -- THIS

14   PRESPECIFIED BLOCK OF ADDRESSES.   AGAIN, BECAUSE OF THE

15   DIRECTION, YOU CAN TELL THAT IT'S SOMETHING PERFORMED BY 108.

16                   AND WHAT I'LL SHOW YOU IN MINUTE IS THAT IS YOU CAN

17   ALSO TELL THAT IT'S THE VIEW LOGIC.

18                   BUT MOVING ON FOR THE MOMENT TO THE UPLOAD DMA LOGIC,

19   THAT'S ACTUALLY RECITED EXPLICITLY AS THE THIRD FUNCTION FOR THE

20   HOST INTERFACE MEANS IN CLAIM 13, UPLOADING DATA FROM THE

21   RECEIVE BUFFER TO THE HOST.

22                   AND I WOULD, AGAIN, I GUESS, JUST POINT OUT THAT WHEN

23   YOU ARE -- THE DMA LOGIC MOVES DATA TO ADDRESSES THAT ARE

24   OUTSIDE THE TO AND FROM THAT ARE ADDRESSES OF THE HOST ADDRESS

25   SPACE THAT ARE OUTSIDE THE ADAPTER INTERFACE BLOCK.

1    THE OTHER PIECES MOVE DATA THAT ARE INSIDE THAT

2  ADDRESS BLOCK TO AND FROM THE ADAPTER MEMORY.

3    SO WITH THAT PREFACE, YOU CAN TAKE A LOOK AT THE

4  CORRESPONDING STRUCTURE FOR CLAIM ONE AND SEE WHAT IS MISSING.

5  IT'S THE DOWNLOAD LOGIC.  THE UPLOAD LOGIC IS EXPLICITLY

6  RECITED. THE OTHER TWO FUNCTIONS ARE MAPS BETWEEN THE ADDRESS

7  ADAPTER INTERFACE BLOCK OF HOST ADDRESSES.  THE THING THAT IS

8  MISSING IS THE DOWNLOAD DMA LOGIC.

9    SO IF YOU TAKE THE STRUCTURE CORRESPONDING TO CLAIM

10  ONE AND JUST DELETE THE DOWNLOAD DMA LOGIC YOU'LL GET THE

11  APPROPRIATE STRUCTURE.

12    AND I'LL APPLY THIS TO THE SPECIFICATION IN A LITTLE

13  MORE DETAIL IN A MOMENT.  BUT FIRST LET'S TAKE A LOOK AT WHAT

14  U.S. ETHERNET PROPOSED.

15    WELL, THEY HAVE THE SAME PROBLEM THEY HAD BEFORE.

16  THEY INCLUDED THE BUFFER MEMORY, THE HOST SYSTEM AND

17  INTERCONNECTING CIRCUITRY.  AND I'VE ALREADY EXPLAINED WHY

18  THAT'S NOT APPROPRIATE.

19    SO LET'S GO BACK TO WHAT THE SPECIFICATION SAYS ABOUT

20  THE FUNCTIONS THAT WE SEE IN THE CLAIM.  SO A PART OF THE SORT

21  OF CONTEXT OF THE THREE RECITED FUNCTIONS IS THIS PRESPECIFIED

22  BLOCK OF HOST ADDRESSES OF LIMITED SIZE DEFINING FIRST AREA AND

23  SECOND AREA.

24    AND YOU NEED THOSE TWO AREAS TO UNDERSTAND THE

25  MAPPING THAT IS DESCRIBED IN THE FUNCTIONS. WELL, THE

1  SPECIFICATION TELLS YOU THAT ADAPTER INTERFACE IS A PRESPECIFIED

2  BLOCK OF HOST ADDRESS SPACE.

3          SO IN INTERPRETING THE STRUCTURE THAT CORRESPONDS TO

4  THIS MEANS, THAT'S WHAT IT'S REFERRING TO IN THE CLAIM WHEN IT'S

5  TALKING ABOUT:

6               "A PRESPECIFIED BLOCK OF HOST ADDRESSES OF

7               LIMITED SIZE."

8          NOW, I WILL ALSO MENTION THE FIRST AND SECOND AREA

9  WITHIN THAT.

10          AND FIGURE FOUR IS A MAP OF THE ADAPTER INTERFACE

11  ADDRESS BLOCK. SO THERE ARE SEPARATE AREAS THAT ARE SHOWN WITHIN

12  THAT ADAPTER INTERFACE BLOCK.  YOU HAVE THE TRANSMIT AREA, THE

13  TRANSFER AREA, THE LOOK BUFFER.  THESE ARE ALL AREAS IN THERE.

14          AND YOU'LL BE ABLE TO TELL FROM LOOKING AT THIS WHICH

15  IS THE FIRST AND SECOND AREA THAT CORRESPONDS TO THE MAPPINGS

16  THAT ARE RECITED BY THE CLAIM.

17          AGAIN, THE FIRST MAPPING IS A MAPPING FROM DATA,

18  MAPPING DATA ADDRESSED TO THE FIRST AREA INTO THE TRANSMIT

19  BUFFER.

20          UNSURPRISINGLY, THE SPECIFICATION TELLS YOU THAT IT

21  IS THE TRANSMIT AREA THAT IS MAPPED THAT WAY.  IT'S MAPPED INTO

22  A TRANSMIT DESCRIPTOR RING IN THE INDEPENDENT ADAPTER MEMORY.

23          SO THE STRUCTURE THAT CORRESPONDS TO THAT FUNCTION IS

24  THE STRUCTURE THAT MAPS THE TRANSMIT AREA INTO THE TRANSMIT

25  DESCRIPTOR RING.

1    SIMILARLY, THE SECOND MAPPING IS MAPPING DATA INTO

2   RECEIVE BUFFER INTO THE SECOND AREA.  WELL, THE STRUCTURE THAT

3   IS DESCRIBED FOR DOING THAT IS -- OR MORE THE AREA THAT DOES

4   THAT IS THE LOOK BUFFER.  THE LOOK BUFFER PROVIDES A READ ONLY

5   WINDOW INTO THE RECEIVE RING BUFFER.

6    SO THE STRUCTURE THAT PROVIDES THAT MAPPING, THE

7   MAPPING FROM THE RECEIVE BUFFER INTO THE LOOK BUFFER IS THE

8   STRUCTURE THAT CORRESPONDS TO THIS MAPPING.

9    AND, LASTLY, THE UPLOAD LOGIC IS PRETTY SIMPLE. IT

10  TIES DIRECTLY TO THE UPLOAD LOGIC THAT IS DESCRIBED IN THE

11  SPECIFICATION.

12    BUT, AGAIN, EVEN THE FUNCTION IS SHOWN AND

13  CORRESPONDS TO THE DESCRIPTION.

14    SO IF YOU ARE LOOKING FOR THE ACTUAL STRUCTURES THAT

15  PERFORM THESE MAPPINGS, AGAIN, THESE ARE THE SAME -- IT'S A

16  SUBSET OF THE POINTERS THAT WE ALREADY TALKED ABOUT WITH CLAIM

17  ONE.

18    SO THE HOST DESCRIPTOR LOGIC HAS THESE TWO POINTERS:

19  THE CHD, THE CURRENT HOST DESCRIPTOR POINTER, AND HOST WRITE

20  POINTER.  THOSE MAP THE TRANSMIT AREA INTO THE TRANSMIT

21  DESCRIPTOR RING BUFFER.  THAT IS THE STRUCTURE THAT PERFORMS

22  THAT FIRST MAPPING.

23    THE PREVIEW LOGIC WITH ITS CURRENT FRAME POINTER IS

24  WHAT MAPS THE RECEIVE BUFFER INTO THE LOOKBUF AREA, SO THAT WHEN

25  THE HOST READS AN ADDRESS IN THAT AREA, WHAT IT GETS IS DATA OUT

1   OF THE RECEIVE BUFFER.

2            AND THEN, THE UPLOAD DMA LOGIC ALSO HAS ITS POINTER

3   THAT ALLOWS IT TO PERFORM ITS FUNCTION.

4            THOSE ARE THE THINGS THAT PERFORM THE RECITED

5   FUNCTIONS.

6            NOW, AGAIN, WE DON'T THINK THAT THOSE ARE SUFFICIENT

7   STRUCTURE BECAUSE THEY ARE NOT STRUCTURE.  THE SPECIFICATION

8   NEVER TELLS YOU HOW THEY ARE GENERATED, NEVER TELLS YOU WHAT

9   THEY ARE, WHERE THEY ARE STORED, WHETHER THEY ARE STORED IN

10  MEMORY OR REGISTER OR SOME OTHER TYPE OF THING.

11           NO ALGORITHM OR CIRCUITRY IS DISCLOSED FOR MANAGING

12  THOSE POINTERS.  HOW YOU CHANGE THEM, WHEN YOU CHANGE THEM, WHAT

13  VALUES ARE STORED IN THEM, JUST DOESN'T SAY.

14           AT ANY RATE, THIS IS THE DESCRIPTION IN THE

15  SPECIFICATION THAT WE BELIEVE CORRESPONDS TO THE THREE DIFFERENT

16  MAPPINGS RECITED BY THIS LIMITATION.

17           NOW, LET'S MOVE ON TO THE NETWORK INTERFACE CLAIMS.

18  I'M GOING TO PICK UP THE PACE HERE A LITTLE BIT.  I'LL TRY TO

19  TALK SLOWLY, BUT MOVE MORE QUICKLY THROUGH THE MATERIAL.

20           SO THE NETWORK INTERFACE MEANS, AS WE TALKED ABOUT,

21  IS THE PART THAT WOULD BE ON THE RIGHT SIDE OF -- I DON'T HAVE A

22  GOOD FIGURE FOR THAT.  SORRY ABOUT THAT.

23           THE NETWORK INTERFACE MEANS IS THE RIGHT SIDE OF

24  FIGURE THREE, SO IT SITS BETWEEN THE BUFFER MEMORY AND THE

25  NETWORK TRANSCEIVER.  AND IT MOVES THE DATA BETWEEN THE BUFFER

1   MEMORY AND THE NETWORK TRANSCEIVER.

2          SO WE DON'T HAVE A DISPUTE THERE THAT 112-6 APPLIES.

3   THE PARTIES AGREE TO THAT.  WE DO DISAGREE ABOUT WHETHER THE

4   STRUCTURE IS SUFFICIENT; AND IF IT IS SUFFICIENT, WHAT IT IS.

5          U.S. ETHERNET PROPOSES A VERY SIMILAR STRUCTURE FOR

6   HERE TO WHAT THEY PROPOSED IN HOST INTERFACE MEANS.  IT HAS THE

7   SAME PROBLEMS WITH THE BUFFER MEMORY AND INTERCONNECTING

8   CIRCUITRY.

9          THE POINTERS THAT PERFORM THESE FUNCTIONS ARE THE

10  SAME POINTERS THAT -- ARE THE SAME TYPES OF POINTERS, BUT ON THE

11  OTHER SIDE OF THE BUFFER MEMORY IN FIGURES NINE AND 11.

12         SO THE TRANSMIT DATA LOGIC IS SHOWN ON THE RIGHT SIDE

13  OF FIGURE NINE.  AND IT HAS A COLLECTION OF POINTERS THAT

14  PERFORM THE MAPPING THAT MOVES THE DATA BACK AND FORTH.

15         AND THE TRANSMIT DMA LOGIC ALSO IS ON THE RIGHT SIDE

16  OF THE BUFFER MEMORY AND INCLUDES A COLLECTION OF POINTERS THAT

17  MOVE THE DATA BETWEEN THE BUFFER MEMORY AND THE NETWORK

18  TRANSCEIVER.

19         SO THE LOGIC THAT PERFORMS THESE FUNCTIONS IS VERY

20  EXPLICITLY TIED TO THE FUNCTIONS.  THE QUESTION REALLY FOR YOUR

21  HONOR IS WHETHER THAT LOGIC IS SUFFICIENT.

22         MOVING ON TO THE THRESHOLD TERMS, THESE ARE

23  SUBSTANTIALLY DIFFERENT, UNLESS IF YOUR HONOR HAS NO QUESTIONS

24  ON THOSE NETWORK INTERFACE --

25         **THE COURT:**  YOU CAN MOVE ON.

1      **MR. STEPHENS:** -- TO THE NEXT MEANS.

2          OH, YOUR HONOR, I'VE JUST BEEN HANDED SOMETHING.  I

3  WANT TO MENTION A COUPLE OF OTHER CASES ON THIS 112-6 POINT

4  CLAIM DIFFERENTIATION.

5          THESE ARE IN ADDITION TO ONES IN OUR BRIEF.  THE

6  NOMOS CORPORATION V. BRAINLAB.

7      **THE COURT:**  JUST GIVE ME THE CITE.

8      **MR. STEPHENS:**  YES. 357 F.3D 1364, AT PAGE 1368.

9          AND THE OTHER IS HOST INTERFACE LOGIC COMPANY.  IT'S

10  CITE IS 2004 WL -- IT'S A WEST LAW CITE 2600 134, AT STAR FIVE,

11  FOOTNOTE SEVEN.

12          OKAY.  ALSO, I'VE BEEN HANDED A COPY OF LAITRIAM WITH

13  THE PORTION I WAS TALKING ABOUT.  I CAN HAND THIS UP, IF YOUR

14  HONOR WOULD LIKE.

15      **THE COURT:**  NO, I'LL GET MY OWN.

16      **MR. STEPHENS:**  OKAY. FAIR ENOUGH.

17          ALL RIGHT. LET'S MOVE ON TO THE NEXT MEANS TERMS.

18  THIS IS MEANS FOR COMPARING.  THIS IS IN '459 PATENT, CLAIM ONE.

19          THE DISPUTES BEFORE YOUR HONOR DON'T INCLUDE WHETHER

20  IT'S 112-6.  WE AGREE THAT IT'S 112-6.  THE DISPUTE IS LIMITED

21  TO WHAT IS THE CORRESPONDING STRUCTURE.

22          WE DO NOT CONTEND THAT THESE THRESHHOLD TERMS ARE

23  INDEFINITE, BECAUSE THE CORRESPONDING DESCRIPTION IN THE

24  SPECIFICATION AT LEAST HAS STRUCTURE.  IT HAS THINGS THAT WOULD

25  DESCRIBE POTENTIALLY A CONCRETE IMPLEMENTATION.

1      THE FIRST DISPUTE IS ABOUT WHETHER OR NOT THE

2   LIMITATION CORRESPONDS TO THE STRUCTURE THAT PROVIDES A SIGNAL

3   TO THE HOST PROCESSOR.

4      AND, OF COURSE, IT ACTUALLY SAYS THAT IT DOES.  IT

5   SAYS THAT -- IT SAYS:

6          "GENERATING AN INDICATION SIGNAL TO THE

7          HOST PROCESSOR."

8      AND THE STRUCTURE THAT IS CITED BY U.S. ETHERNET

9   DOESN'T EXTEND TO THE HOST PROCESSOR. THE SPECIFICATION TELLS

10  YOU WHAT DOES.

11      IT TELLS YOU THAT THERE'S AN INTERRUPT CONTROLLER

12  MODULE 60 THAT PASSES INTERRUPT SIGNALS THROUGH VARIOUS ENABLES

13  AND MASKS AND THEN DRIVES THEM ONTO THE HOST BUS.

14      SO BY PUTTING THEM ONTO THE HOST BUS, IT THEN

15  PROVIDES THE SIGNAL TO THE HOST PROCESSOR.

16      SO THIS IS A NECESSARY STRUCTURE TO PERFORM THE

17  FUNCTION OF PROVIDING AN INDICATION SIGNAL TO THE HOST

18  PROCESSOR, AS THE RECITED FUNCTION REQUIRES.

19      NOW, FOR THE REST OF THE CLAIM YOU HAVE THIS MEANS

20  FOR COMPARING THE COUNTER AND GENERATING AN INDICATION SIGNAL.

21      SO THE LOWER HALF OF WHAT I CITED THERE, THE EXCERPT

22  FROM THE CLAIM, IS THE LIMITATION THAT IS AT ISSUE.

23      AND THE COUNTER PORTION OF THE CLAIM IS SHOWN JUST

24  ABOVE IT, BELOW THE FIGURE.

25      WHAT YOU CAN TELL FROM READING THE CLAIM IS THAT THE

```
1    COUNTER COUNT IS STATED AS GOING EITHER TO OR FROM THE BUFFER

2    MEMORY.

3               AND WE KNOW FROM LOOKING AT FIGURE THREE THE BUFFER

4    GOES TO THE -- EXCUSE ME -- THE DATA GOES TO THE BUFFER MEMORY

5    WHEN YOU'RE TRANSMITTING.  AND IT ALSO GOES TO THE BUFFER MEMORY

6    WHEN YOU'RE RECEIVING.

7               AND IT ALSO GOES FROM THE BUFFER MEMORY ON EACH OF

8    THOSE SIDES, AS WELL.  SO WHEN DATA IS BEING RECEIVED IT'S MOVED

9    FROM THE BUFFER MEMORY TO THE HOST SYSTEM.  WHEN DATA IS BEING

10   TRANSMITTED IT MOVES FROM THE BUFFER MEMORY TO THE NETWORK

11   TRANSCEIVER.

12              SO THERE'S FOUR DIFFERENT PLACES WHERE DATA IS MOVED

13   TO OR FROM THE BUFFER MEMORY, OR DIFFERENT TYPES OF TRANSACTIONS

14   IN WHICH THAT HAPPENS.

15              AND THE SPECIFICATION DISCLOSES FOUR SEPARATE

16   EMBODIMENTS.  THIS IS AN EXAMPLE OF WHAT WE WERE TALKING ABOUT

17   EARLIER, YOUR HONOR.

18              SO THE CLAIM IS BROAD ENOUGH TO COVER ANY OF THOSE

19   TRANSFERS TO OR FROM THE BUFFER MEMORY.  AND THERE'S AN

20   EMBODIMENT DISCLOSED FOR EACH. WE DON'T CONTEND THAT IN ORDER TO

21   INFRINGE THAT AN INFRINGING DEVICE WOULD HAVE TO HAVE ALL FOUR,

22   BUT IT WOULD HAVE TO BE EQUIVALENT TO AT LEAST ONE OF THOSE

23   FOUR.

24              NOW, THERE'S NO ALLEGATIONS OF INFRINGEMENT HERE

25   BASED ON TRANSMISSION.  THEY ARE ALL ABOUT RECEIVING. SO I'M
```

1    GOING TO FOCUS JUST ON THE TWO RECEIVING EMBODIMENTS.

2              STARTING WITH THE RECEIVE INDICATION EMBODIMENT, SO

3    WHAT THIS DOES IS IT COUNTS DATA THAT IS BEING MOVED INTO THE

4    BUFFER MEMORY FROM THE NETWORK TRANSCEIVER.  AND THEN, BASED ON

5    THAT COUNT IT GENERATES AN INDICATION SIGNAL.

6              U.S. ETHERNET POINTS TO A COMPARATOR 213 THAT THEY

7    CLAIM PERFORMS THE RECITED FUNCTION OF COMPARING THE COUNTER TO

8    THE THRESHHOLD VALUE.  NOW, I'LL TELL YOU RIGHT NOW THE '459

9    PATENT IS PARTICULARLY DIFFICULT. THESE PATENTS, I THINK, ARE

10   ALL SOMEWHAT DIFFICULT, BUT THE '459 PATENT STRUCTURE IS VERY,

11   VERY CONFUSING.  IT'S FULL OF DETAILS THAT ARE NOT EXPLAINED.

12             MY GUESS AT HOW THE SPECIFICATION WAS GENERATED WAS

13   THERE WAS A LARGER TECHNICAL DOCUMENT AND SOME CHUNKS OF IT WERE

14   PULLED OUT AND STUCK INTO THE SPECIFICATION, BECAUSE THERE ARE

15   THINGS THAT YOU JUST CAN'T TELL FROM IT.

16             BUT THE STRUCTURE THAT IS DESCRIBED FOR THIS RECEIVE

17   INDICATION EMBODIMENT IS QUITE COMPLICATED AND NOT NEARLY AS

18   SIMPLE AS U.S. ETHERNET MAKES IT SOUND.  AND IT DOESN'T DO THE

19   RECITED FUNCTION IN THE WAY THAT U.S. ETHERNET SAYS IT DOES.

20             THE COMPARATOR 213 DOES NOT COMPARE THE OUTPUT OF A

21   COUNTER WITH A THRESHOLD VALUE.

22             THE FIRST INPUT TO IT IS A FRAME SIZE. IT'S NOT A

23   THRESHOLD VALUE.  SO IT'S THE SIZE OF THE FRAME THAT'S BEING

24   RECEIVED.  AND THE OTHER INPUT IS A SUM THAT INCLUDES BOTH AN

25   AMOUNT OF DATA THAT HAS BEEN COUNTING, BUT IT'S SUMMED WITH THE

1    THRESHOLD VALUE.

2            SO WHAT YOU HAVE IS A THRESHOLD VALUE THAT IS ADDED

3    TO THE NUMBER OF BYTES THAT HAVE BEEN RECEIVED, AND THEN THAT'S

4    COMPARED AGAINST THE SIZE OF THE FRAME THAT'S BEING RECEIVED.

5    VERY DIFFERENT THAN JUST COMPARING THE COUNTER TO THE THRESHOLD

6    VALUE.

7            SO LET'S TALK ABOUT THE TRANSFER COMPLETE INDICATION.

8    U.S. ETHERNET AGAIN PULLS OUT A COMPARATOR FROM A MUCH LARGER

9    AND MORE COMPLICATED STRUCTURE AND SAYS:

10               "AH, THIS IS THE COMPARATOR THAT CORRESPONDS TO

11               THAT EMBODIMENT."

12            AGAIN, THEY ARE WRONG.  IT DOESN'T PERFORM THIS

13    SIMPLE FUNCTION OF COMPARING A THRESHOLD VALUE TO A COUNT.

14    AGAIN, THIS IS QUITE COMPLICATED.  BUT INSTEAD THE INPUTS ARE A

15    TRANSFER LINK AND AN UPLOAD BYTE COUNT.

16            AND ONE PROBLEM WITH THIS IS THE SPECIFICATION JUST

17    NEVER TELLS YOU WHAT THE UPLOAD BYTE COUNT IS AT ALL.

18            SO INTERPRETING THE STRUCTURE HERE THAT IS TIED TO

19    THE FUNCTION IN THE SPECIFICATION IS ACTUALLY PRETTY DIFFICULT.

20    BUT WE HAVE GIVEN THEM SOME BENEFITS OF THE DOUBT AND COME UP

21    WITH WHAT WE THINK IS ACTUALLY GOING ON HERE.

22            AND I'M NOT GOING TO BELABOR YOU WITH ALL THE DETAILS

23    OF THE ALGORITHM THAT IS DESCRIBED IN THE SPECIFICATION, BUT I

24    THINK I CAN EXPLAIN TO YOU WHAT IT DOES IN THE END.

25            AND IT IS MORE COMPLICATED THAN U.S. ETHERNET

1    SUGGESTS. IT ACTUALLY APPLIES TWO DIFFERENT THRESHOLDS DEPENDING

2    ON THE STATUS OF THE CURRENTLY -- THE FRAME THAT IS CURRENTLY

3    BEING RECEIVED.

4              AND THE STRUCTURE THAT DOES THAT IS IN THE LOWER

5    LEFT.  YOU SEE THE CURRENT FRAME IS CURRENT RECEIVED?  THAT'S A

6    SIGNAL THAT TELLS THAT SELECTOR 340 WHETHER OR NOT THE FRAME

7    THAT IS CURRENTLY BEING RECEIVED IS ACTUALLY STILL ON THE WIRE

8    AND COMING IN OR FULLY RECEIVED AND ALREADY IN THE BUFFER.

9              AND THEN, BASED ON THAT VALUE, THAT STATUS, IT

10   SELECTS ONE OF TWO DIFFERENT THRESHOLDS, THE LENGTH LEFT

11   THRESHOLD OR THE TRANSFER COMPLETE THRESHOLD.

12             AND HERE'S THE NET EFFECT OF THAT.  IF AT THE TIME

13   THAT THE TRANSFER THRESHOLD IS MET THE FRAME IS ALREADY IN THE

14   BUFFER, THEN THE SYSTEM GOES AHEAD AND TRIGGERS AN INTERRUPT.

15             SO THE TRANSFER THRESHOLD STARTS WHEN THE FRAME IS

16   ALREADY FULLY IN THE BUFFER.  SO AS SOON AS THE TRANSFER

17   THRESHOLD IS MET IT TRIGGERS AN INTERRUPT.

18             THAT'S THE CONSERVATIVE SITUATION.  YOU'VE GOT THE

19   FRAME ALREADY IN THE BUFFER.  YOU CAN TRIGGER THE INTERRUPT

20   WITHOUT WAITING ANY LONGER BECAUSE YOU KNOW YOU ALREADY HAVE THE

21   DATA.

22             IT APPLIES A DIFFERENT SITUATION WHEN THE DATA IS NOT

23   ALREADY FULLY IN THE BUFFER, BECAUSE IT'S STILL ON THE WIRE.

24   SOMETHING MIGHT HAPPEN.  MAYBE THE FRAME WILL BE LONGER THAN YOU

25   THINK.

```
1            THE TRANSFER THRESHOLD IS MET, BUT THE FRAME IS STILL

2   ON THE WIRE.  YOU DON'T HAVE IT YET, SO YOU WAIT A LITTLE

3   LONGER, THE MORE CONSERVATIVE THING TO DO.  WAIT A LITTLE BIT

4   LONGER BEFORE YOU TRIGGER THE INTERRUPT.  MAKES IT'S LESS LIKELY

5   THAT YOU'LL HAVE AN UNDERRUN ERROR.

6            SO THAT'S THE STRUCTURE THAT CORRESPONDS TO THIS

7   PARTICULAR EMBODIMENT.  AND IT'S MORE COMPLICATED, AS I SAID,

8   THAN U.S. ETHERNET SUGGESTS. AND THAT'S --

9            THE COURT:  BUT WOULDN'T -- DO I HAVE TO CONCERN

10  MYSELF WITH, AGAIN, ALL OF THE THINGS, INFORMATION THAT IT NEEDS

11  TO DO IT?  BUT IF THE FUNCTION IS, AS YOU SAY, TO GENERATE, TO

12  COMPARE VALUE AND GENERATE A SIGNAL.

13            MR. STEPHENS:  YES.

14            THE COURT:  AND SO IF I HAVE A DEVICE THAT DOES THAT,

15  IT MAY -- THAT'S SUFFICIENT.

16            MR. STEPHENS:  THAT'S CORRECT.  SO YOU HAVE TO LOOK

17  FOR A PLACE IN THE SPECIFICATION WHERE THAT'S DISCLOSED.  AND

18  THEN YOU HAVE TO ADOPT THAT STRUCTURE, NOT SOME DIFFERENT

19  STRUCTURE THAT YOU EDIT TO ACCOMPLISH A SIMILAR RESULT, BUT THE

20  ACTUAL STRUCTURE THAT IS DISCLOSED IN THE SPECIFICATION.

21            THE COURT:  SO IS THE COUNTER PART OF THE MEANS FOR

22  COMPARING?

23            MR. STEPHENS:  NO, IT'S SEPARATE.

24            THE COURT:  SO THE COUNTER IS SEPARATE. AND SO ALL I

25  NEED -- WHY COULDN'T I USE JUST THE COMPARATOR AND THE CONTROL
```

1   BLOCK?  THE CONTROL BLOCK IS WHAT GENERATES MY SIGNAL.

2           **MR. STEPHENS:**  THE REASON THAT YOU CAN'T IS THAT

3   THOSE BY THEMSELVES AREN'T THE STRUCTURES THAT ARE DISCLOSED IN

4   THE SPECIFICATION FOR DOING IT, BECAUSE THEY DON'T RECEIVE THE

5   OUTPUT OF A COUNTER, RIGHT?

6           **THE COURT:**  WELL --

7           **MR. STEPHENS:**  SO THERE'S NO PLACE IN THE

8   SPECIFICATION --

9           **THE COURT:**  BUT THE COMPARATOR CAN DO IT WITHOUT

10  ITSELF RECEIVING IT.  THE COMPARATOR IS SOMETHING THAT JUST

11  COMPARES TWO THINGS.

12          **MR. STEPHENS:**  IT COULD IF THAT WERE DISCLOSED. BUT

13  INSTEAD, WHAT THE SPECIFICATION ACTUALLY DISCLOSED IS THIS MORE

14  COMPLICATED STRUCTURE THAT COMPARES THINGS THAT ARE ALREADY

15  PROCESSED IN A MORE COMPLICATED WAY.

16          SO IT IS FAIR, YOUR HONOR, TO SAY, YES, I'M GOING

17  LOOK AT THE COMPARATOR, BUT I GOT TO LOOK AT WHAT IT ACTUALLY

18  COMPARES, RIGHT?

19          I CAN'T TAKE, AGAIN, A STRUCTURE THAT'S SOMETHING

20  DIFFERENT THAN WHAT IS DISCLOSED IN THE SPECIFICATION.

21          **THE COURT:**  SO I'VE GOT THIS THRESHOLD VALUE, AND

22  THAT THING IS MOVING, RIGHT?  THE THRESHOLD VALUE IS PRESET OR

23  NOT?

24          **MR. STEPHENS:**  IT, I BELIEVE, IS PRESET, BUT THERE'S

25  MORE THAN ONE, RIGHT?  SO IT CHANGES DEPENDING ON THE STATUS OF

1   THE FRAME.

2   **THE COURT:**  BUT YOU AGREE THAT AT LEAST THE

3   COMPARATOR AND THE CONTROL BLOCK ARE PART OF THE MEANS FOR THE

4   STRUCTURE PERFORMING THIS.

5   **MR. STEPHENS:**  I AGREE THAT AT LEAST THAT MUCH IS

6   REQUIRED, BUT THAT'S NOT ENOUGH, BECAUSE THAT BY ITSELF IS

7   INSUFFICIENT.  I MEAN, PARTICULARLY THE CONTROL -- I FORGOT

8   EXACTLY HOW IT'S PHRASED.  BUT THE CONTROL BOX CERTAINLY DOESN'T

9   TELL YOU HOW IT WORKS.

10   **THE COURT:**  OKAY.

11   **MR. STEPHENS:**  LET'S MOVE ON TO THE NEXT PHRASE.  IT

12   IS THE MEANS FOR MONITORING.  AND MARVELL COUNSEL, RAY ZADO, IS

13   GOING TO ARGUE THIS.

14   **THE COURT:**  A NEW VOICE.

15   **MR. ZADO:**  GOOD MORNING, YOUR HONOR.

16   AND AS MR. STEPHENS HAS INDICATED, I'M GOING TO BE

17   DISCUSSING THE MEANS FOR MONITORING, OUT OF THE '872 PATENT,

18   CLAIM ONE.  AND, SPECIFICALLY, IT'S THE ONE THING I CAN POINT

19   OUT IN CONNECTION WITH THIS PARTICULAR LANGUAGE WAS THAT THE

20   FUNCTION HAD PREVIOUSLY BEEN IN DISPUTE.  IN PARTICULAR, THE

21   LANGUAGE WITH RESPECT:

22   "TO MAKE A THRESHOLD DETERMINATION OF AN AMOUNT

23   OF DATA OF THE FRAME TRANSFERRED TO THE BUFFER

24   MEMORY."

25   HOWEVER, YOU RESOLVED THAT DISPUTE IN THE FIRST CLAIM

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

1    CONSTRUCTION ORDER AND FOUND THAT EXPLICITLY TO BE PART OF THE

2    FUNCTION CORRESPONDING TO THE DISCLOSED MEANS.

3            SO TO BRIEFLY SUMMARIZE THE DISPUTES BETWEEN THE

4    PARTIES, THERE'S NO DISPUTE THAT THE LIMITATIONS IS SUBJECT TO

5    112, PARAGRAPH SIX.  BUT THE DISPUTE CAN BE FRAMED RELATIVELY

6    NARROWLY BECAUSE IT'S THE QUESTION THAT:

7                "THE DEFENDANTS CONTEND THAT THE STRUCTURE MUST

8                ACCOUNT FOR BOTH THE IMMEDIATE DATA AND DOWNLOADED

9                DATA AS DESCRIBED IN THE SPECIFICATION."

10           THAT'S DATA THAT IS STORED IN THE TRANSMIT

11   DESCRIPTOR.  AND I'LL EXPLAIN THAT IN A MINUTE IN THE NEXT

12   COUPLE OF SLIDES.

13           WHEREAS, USEI CONTENDS THE STRUCTURE, THE

14   CORRESPONDING STRUCTURES ONLY NEED TO ACCOUNT FOR DOWNLOADED

15   DATA.

16           AND TO EXPAND UPON USEI'S POSITION A LITTLE BIT, USEI

17   INCORRECTLY ASSERTS THAT THERE ARE TWO EMBODIMENTS DISCLOSED IN

18   THE SPECIFICATION, WHICH THEY REFER TO AS A "DOWNLOAD DATA

19   EMBODIMENT" AND "IMMEDIATE DATA EMBODIMENT."

20           HOWEVER, THE SPECIFICATION DISCLOSES -- AND WE'VE

21   HEARD IT SEVERAL TIMES -- IT'S A SINGLE EMBODIMENT THAT MUST BE

22   ABLE TO COMPARE BOTH IMMEDIATE DATA AND DOWNLOADED DATA.

23           FOR EXAMPLE, THE CITATION WE HAVE HERE AT COLUMN

24   THREE, REFERS THAT THE CORRESPONDING STRUCTURE IDENTIFIED IN

25   FIGURES 11 THROUGH 18:

1          "PROVIDE ONE IMPLEMENTATION OF LOGIC FOR

2     IMPLEMENTING THE EARLY TRANSMISSION FEATURE OF THE

3     PRESENT INVENTION."

4          AND ANOTHER CITATION THAT'S ALSO RELEVANT TO THIS

5  POINT WOULD BE COLUMN 23 AT LINES 21 TO 27.

6          NOW, THE WESTERN DISTRICT OF WISCONSIN RECENTLY

7  CONSIDERED AND REJECTED THIS VERY ARGUMENT MADE BY USEI.  AND

8  IT'S THE APPLE V. MOTOROLA CASE.

9          SO TO BRIEFLY DISCUSS, IN THAT CASE THE CLAIM TERM AT

10  ISSUE WAS A STORING -- WAS "STORING MEANS."

11          AND THE QUESTION WAS WHETHER THE CORRESPONDING

12  STRUCTURE FOR THE STORING MEANS INCLUDED BOTH A BROADCAST

13  CONSUMER DATABASE AND A SEQUENTIAL CONSUMER DATABASE.

14          AND THE PLAINTIFF THERE ASSERTED THAT THE SEQUENTIAL

15  CONSUMER DATABASE WAS OPTIONAL, WAS NOT REQUIRED AS PART OF THE

16  CORRESPONDING STRUCTURE, IN PART BECAUSE OF STATEMENTS IN THE

17  SPECIFICATION THAT THERE MAY BE BROADCAST CONSUMERS, THERE MAY

18  BE SEQUENTIAL CONSUMERS, OR THERE MAY BE BOTH, IN THE

19  ALTERNATIVE LANGUAGE IN THE SPECIFICATION.

20          THE COURT REJECTED THAT ARGUMENT, AND SPECIFICALLY

21  HELD THAT THERE WAS A SINGLE EMBODIMENT THAT WAS DISCLOSED THAT

22  WAS CAPABLE OF HANDLING BOTH THE BROADCAST CONSUMER DATABASE

23  AND SEQUENTIAL CONSUMER DATABASE.

24          **THE COURT:**  YOU HEARD MY EARLIER STATEMENT ABOUT

25  DEPENDENT CLAIMS, BECAUSE YOU HAVE THE SAME THING HERE, RIGHT?

```
1   YOU HAVE WITH RESPECT TO THIS IMMEDIATE DATA AREA VERSUS A

2   DIFFERENT KIND OF DATA. YOU HAVE A DEPENDENT STRUCTURE THAT

3   HANDLES THE IMMEDIATE DATA.

4           MR. ZADO:  I WOULD RESPOND TO THAT IN TWO WAYS, YOUR

5   HONOR.  FIRST IS I BELIEVE YOU'RE REFERRING TO DEPENDENT CLAIM

6   TWO?

7           THE COURT:  YES.

8           MR. ZADO:  DEPENDENT CLAIM TWO IS NOT STRICTLY

9   DISCUSSING THE IMMEDIATE DATA.  WHILE IT'S REFERENCED IN CLAIM

10  TWO, IT'S ACTUALLY NARROWER.  AND THE DEPENDENT CLAIM TWO REALLY

11  REQUIRES USE OF A RING BUFFER FOR STORING DESCRIPTORS.

12          SO I THINK THE SCOPE IS NOT SUCH THAT IT WOULD

13  INCLUDE CONCEPT OF THE IMMEDIATE DATA BEING THE CORRESPONDING

14  STRUCTURE.

15          THE COURT:  SO THE LANGUAGE IS:

16              "WHEREIN THE MEANS FOR MONITORING," WHICH IS THE

17              TERM WE'RE LOOKING AT, "INCLUDES THE IMMEDIATE DATA

18              IN THE THRESHOLD DETERMINATION," RIGHT?

19          SO THAT COULD -- IN OTHER WORDS, YOU'RE EDUCATING ME

20  I SHOULD LOOK CLOSELY AT WHAT THAT IS REFERRING TO?

21          MR. ZADO:  NO.  I WAS REFERRING YOU TO THE FULL BODY

22  OF DEPENDENT CLAIM TWO.

23          THE COURT:  ALL RIGHT.  SO I'LL LOOK AT THAT.

24          GO AHEAD, MR. ZADO.

25          MR. ZADO:  OKAY. AND, OF COURSE, I WOULD ALSO
```

1    REFERENCE THE CASES THAT WERE CITED MY MR. STEPHENS IN HIS

2    EARLIER DISCUSSION.  AND, IN PARTICULAR, THE CONCEPT WHEN

3    THERE'S ONLY ONE EMBODIMENT IN THE INVENTION THAT IS DESCRIBED

4    IN PATENT, THE CORRESPONDING STRUCTURE IS LIMITED TO THAT

5    EMBODIMENT.

6              AND ANOTHER CASE FOR THAT WOULD BE THE SOQUE HOLDINGS

7    V. KEYSCAN.  THE CITE WAS 2010 WL 2292316, AT STAR NINE.

8              **THE COURT:**  ALL RIGHT.

9              **MR. ZADO:**  SO I WILL TRY AND SPEED THIS UP QUICKLY.

10   SO THE TRANSMIT DESCRIPTOR INCLUDE OR IDENTIFIES FRAME DATA IN

11   TWO MECHANISMS OR TWO WAYS.

12             FIRST, IT INCLUDES IMMEDIATE DATA, WHICH IS ACTUALLY

13   DATA, FOR EXAMPLE, FROM THE HEADER OF THE FRAME, AND THE BUFFER

14   DESCRIPTORS, WHICH ARE ACTUALLY POINTERS TO DATA THAT NEEDS TO

15   BE DOWNLOADED, TO THE DMA FROM THE HOST MEMORY TO THE TRANSMIT

16   DATA BUFFER.

17             AND THE SPECIFICATION SPECIFICALLY TEACHES THAT YOU

18   REFER TO THE PATENT.  YOU COMPARE THE COMBINATION OF THIS DATA

19   AND DETERMINE WHETHER THAT MEETS THE THRESHOLD TO DETERMINE WHEN

20   THE ACTUAL TRANSMISSION OF THE FRAME'S TO BE INITIATED.

21             SO LOOKING AT THE ACTUAL DISCLOSED EMBODIMENT IN

22   CONNECTION WITH FIGURE 11, THIS COUNTER 300, IT ACTUALLY COUNTS

23   THE DATA.

24             THIS COUNTER 300 ACTUALLY COUNTS THE DATA THAT IS

25   BEING TRANSMITTED VIA DMA.  AND THAT DATA IS ACTUALLY ADDED TO

1    THE IMMEDIATE LENGTH VALUE, WHICH IS A VALUE FOR THE AMOUNT OF

2    DATA IN THE -- THE VALUE THAT CORRESPONDS TO THE AMOUNT OF DATA

3    IN THE IMMEDIATE AREA OF THE TRANSMIT DESCRIPTOR.

4              NOW, FIGURE 12 ACTUALLY SHOWS THE KEY STRUCTURES FOR

5    PERFORMING THAT THRESHOLD DETERMINATION.  AND SO THE START

6    THRESH REGISTER STORES THE START THRESH VALUE, WHICH IS THE

7    VALUE THAT YOU NEED TO EXCEED IN ORDER TO INITIATE THE

8    TRANSMISSION.

9              NOW, THE KEY STRUCTURE HERE IS THIS DATA AVAILABLE

10   CONTROL, WHICH ACTUALLY OUTPUTS THE TRANSMIT DATA AVAILABLE

11   SIGNAL THAT INDICATES ENOUGH DATA IS IN THE ADAPTER THAT THE

12   TRANSMISSION SHOULD BEGIN.

13             THAT HAS TWO INPUTS.  FIRST, THIS DOWNLOAD COMPARE,

14   WHICH RECEIVES THE OUTPUT OF THE DOWNLOAD BYTES RESIDENT IN

15   FIGURE 11, AS WELL AS THE IMMEDIATE COMPARE, WHICH ALSO

16   CALCULATES THE AMOUNT OF IMMEDIATE DATA THAT HAS BEEN DOWNLOADED

17   FROM THE TRANSMIT DESCRIPTOR.  AND WHEN EITHER OF THOSE EXCEED

18   THE THRESHOLD, THEN THE TRANSMIT DATA AVAILABLE SIGNAL IS

19   TRIGGERED.

20             SO JUST TO SUMMARIZE, THE SLIDES INDICATE WHAT THE

21   CORRESPONDING STRUCTURES ARE, BUT, REALLY, THE KEY POINT IS THAT

22   THE PATENTS TEACH A SINGLE EMBODIMENT FOR PERFORMING THESE

23   CORRESPONDING FUNCTIONS OR FOR PERFORMING THE FUNCTION

24   CORRESPONDING TO THE STRUCTURE FOR THE MEANS FOR COMPARING.

25             FOR EXAMPLE, IN THE '459 PATENT THE PATENTEE

```
 1   SPECIFICALLY KNEW HOW TO CLAIM AND DESCRIBED IT IN MULTIPLE

 2   EMBODIMENTS.  AND THEY WOULD REFER TO THOSE AS MULTIPLE

 3   EMBODIMENTS.  BUT IN THE '874 PATENT, THE PATENTEE SPECIFICALLY

 4   REFERS TO IT AS A SINGLE IMPLEMENTATION THAT IS ADAPTED THROUGH

 5   ALL OF FIGURES 11 THROUGH 18.

 6             AND I BELIEVE MY TIME IS UP.

 7             THE COURT:  AND YOU'RE MAKING THE SAME ARGUMENT ON

 8   '872, CLAIM 28?

 9             MR. ZADO:  YES, THAT'S CORRECT.

10             THE COURT:  ALL RIGHT.  NOW, LET'S TALK ABOUT TIME,

11   BECAUSE NOW WE'RE AT TEN OF NOON, AND WE'VE ONLY HEARD FROM ONE

12   OF YOU ON THIS IMPORTANT AREA, SO OBVIOUSLY WE ARE GOING TO HAVE

13   TO COME BACK.

14             BUT WHY DON'T WE USE PROFITABLY THE TIME BETWEEN NOW

15   AND NOON, AND THEN WE'LL FIND A LOGICAL PLACE TO BREAK AND TALK

16   ABOUT WHETHER WE -- HOW WE HANDLE THE REST.

17             MR. WALSH:  THANK YOU, YOUR HONOR.  GOOD MORNING. I'M

18   RYAN WALSH, ONCE AGAIN, FOR U.S. ETHERNET.

19             AND COULD I ASK HOW MUCH TIME EACH SIDE HAS LEFT AT

20   THIS POINT?

21             THE CLERK:  YOU'VE USED 37 MINUTES OF YOUR TIME.

22             MR. WALSH:  OKAY. THANK YOU.

23             OKAY. THERE WE ARE.

24             YOUR HONOR, YOU PUT YOUR FINGER ON AN ISSUE THAT

25   RUNS -- A THEME THAT RUNS THROUGHOUT THE MEANS-PLUS-FUNCTION
```

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

1    ANALYSIS.   FRANKLY, A LOT OF THE CLAIM CONSTRUCTION ANALYSIS,

2    BUT CERTAINLY THE MEANS-PLUS-FUNCTION 112-6 ANALYSIS.

3              THERE ARE REALLY THREE THEMES THAT YOU SEE WITH THEIR

4    CLAIM CONSTRUCTION ANALYSIS IN THIS SECTION.   FIRST, THEY WHOLLY

5    IGNORE THE RECITED FUNCTION. REGARDLESS OF THE AFTER THE FOR,

6    THEY ARE CITING TO WHATEVER THE MEANS LANGUAGE IS AND TRYING TO

7    CRAM EVERY SINGLE ELEMENT THEY CAN INTO THAT, REGARDLESS OF THE

8    FUNCTION.

9              AND, FRANKLY, THEY GENERALLY IGNORE THE CLAIM

10   LANGUAGE ITSELF EVEN IN THE DEPENDENT CLAIMS IN COMING TO THEIR

11   CONSTRUCTIONS.

12             THE SECOND KEY FLAW IS THAT THEY IDENTIFY FAR MORE

13   THAN THE MINIMUM STRUCTURE NECESSARY TO PERFORM THE RECITED

14   FUNCTION.

15             AND THIRD, THEY VIOLATE THE FUNDAMENTAL PRINCIPLE OF

16   CLAIM DIFFERENTIATION.   AND I THINK THAT'S THE POINT YOU RAISED,

17   YOUR HONOR.   AND I WANTED TO TOUCH ON IT, AND MAYBE WE CAN DO

18   THIS JUST BEFORE THE BREAK.

19             BUT ONE OF THE POINTS THAT COUNSEL MADE WITH RESPECT

20   TO THE HOST INTERFACE MEANS WAS THAT -- AND IF YOU'LL TURN TO

21   84, I BELIEVE IT IS.

22             IT WAS A FIGURE LIKE THIS, AND HE POINTED OUT:

23                  "WELL, YOUR HONOR, IF YOU TAKE OUT THE

24             REFERENCES IN THE DEPENDENT CLAIMS FROM THAT TOP BOX

25             YOU'RE LEFT WITH AN EMPTY BOX."

1          WELL, THAT'S PURELY FALSE, YOUR HONOR. WHAT CLAIM

2   THREE CLAIMS IS A "TRANSMIT DESCRIPTOR LOGIC," WHICH IS TRUE,

3   BUT IT ALSO CLAIMS:

4               "DOWNLOAD LOGIC RESPONSIVE TO TRANSMIT

5               DESCRIPTORS IN THE BUFFER MEMORY."

6          THAT'S A PARTICULAR TYPE OF DOWNLOAD LOGIC, THE

7   DOWNLOAD LOGIC THAT IS COVERED BY CLAIM ONE.

8          SO YOU'RE EXACTLY RIGHT, YOUR HONOR, AS FAR AS

9   LOOKING TO DEPENDENT CLAIMS FOR GUIDANCE AS FAR AS THE

10  INDEPENDENT CLAIMS ARE CONCERNED.

11         AND IN THAT REGARD, WE CITED YOUR HONOR TO THE WENGER

12  CASE IN OUR BRIEFING.  AND THAT'S AT 239 F.3D 1225.  AND IT

13  STANDS FOR THAT PROPOSITION THAT IF YOU HAVE A DEPENDENT CLAIM

14  IN MEANS-PLUS-FUNCTION FORMAT THAT STRUCTURE IS PRESUMABLY NOT

15  PART OF THE STRUCTURE OF THE INDEPENDENT CLAIM.

16         AND THERE ARE OTHER CASES INCLUDING THE ENZO BIOCHEM

17  CASE, AND I BELIEVE THE NORTHROP GRUMAN CASE THAT WE CITED THAT

18  ALSO DISCUSS THAT PROPOSITION.

19         THE LAITRIAM CASE, YOUR HONOR, THAT THEY HAVE

20  REFERENCED REPEATEDLY IS ACTUALLY DISTINGUISHED IN THE WENGER

21  CASE. AND IN THE WENGER CASE YOU HAD A DISCLOSURE THAT DISCUSSED

22  A MEANS FOR PROVIDING -- I THINK THEY CALLED IT A SLURRY, BUT TO

23  FOOD, LIKE CANDY OR SOMETHING, SPRAYING SUGAR OR SALT OR

24  SOMETHING ON FOOD.

25         AND THE ISSUE WAS:  HOW DO YOU KEEP THE MOISTURE FROM

1    GETTING INSIDE THAT?

2            AND SO IT TALKED ABOUT A CIRCULATING FAN WAS WHAT WAS

3    IN THE DISCLOSURE. BUT THE DISCLOSURE ALSO TALKED ABOUT A

4    RECIRCULATING FAN.  BUT THE INDEPENDENT CLAIM DIDN'T MENTION A

5    RECIRCULATING FAN.

6            AND THE COURT HELD -- THE FEDERAL CIRCUIT, NOT THE

7    DISTRICT OF DELAWARE, BUT THE FEDERAL CIRCUIT CLAIMED THAT:

8                "SURELY THE DISCLOSURE MENTIONS THIS

9                RECIRCULATING FUNCTION, BUT THAT'S NOT PART OF THE

10               FUNCTION IN THE INDEPENDENT CLAIM.  AND SO WE'RE ONLY

11               GOING TO DEAL WITH CIRCULATING.  AND SO WE'RE GOING

12               TO FIND STRUCTURE THAT PERFORMS CIRCULATING, NOT

13               RECIRCULATING THE AIR."

14           SO WITH THAT, YOUR HONOR -- WOULD YOU GO TO 53?

15           THE MEANS FOR COMPARING THAT WE WERE JUST DISCUSSING,

16   THE FUNCTION HERE WHICH IS LISTED AT THE TOP:

17               "COMPARING THE COUNTER TO THE THRESHOLD VALUE

18               IN THE ALTERABLE STORAGE LOCATION AND GENERATING AN

19               INDICATION SIGNAL TO THE HOST PROCESSOR RESPONSIVE TO

20               THE COMPARISON OF THE COUNTER AND THE ALTERABLE

21               STORAGE LOCATION."

22           YOUR HONOR, WE'RE AGAIN IDENTIFIED THE COMPARATOR

23   THAT DOES THE COMPARING AND THE CONTROL BLOCK THAT DOES THE

24   GENERATING.  THOSE ARE THE ONLY STRUCTURES NECESSARY.

25           AS YOU CAN SEE, THE DEFENDANT'S STRUCTURE IS BLANKED

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

1    THERE.  THEY SAID THERE ARE TWO ELEMENTS THAT ARE COMMON TO ALL,

2    BUT THEN THEY DISCUSS VARIOUS EMBODIMENTS AND ADDITIONAL

3    STRUCTURE THAT HAS NOTHING TO DO WITH MEANS FOR COMPARING OR

4    GENERATING.

5              OKAY. THAT WAS ALL, I BELIEVE.

6              AGAIN, THE PARTIES AGREE ON 112-6.  THEY AGREE ON THE

7    FUNCTION.  BUT THE DISPUTE HERE IS ABOUT THEIR ATTEMPT TO IMPORT

8    EXCESSIVE AND EXTRANEOUS STRUCTURE.

9              AGAIN, THERE'S THE WENGER CASE THAT WE CITED AND

10   NORTHROP GRUMAN CASE THAT IS CITED IN OUR BRIEFING.

11             THE '459 PATENT -- AND I KNOW WE DISCUSSED IT AT

12   LENGTH, AND I KNOW YOU'RE FAMILIAR WITH IT, BUT AT THIS POINT

13   THE THRESHOLD LOGIC IS REALLY WHAT IS AT ISSUE IN THIS CLAIM

14   TERM.  AND THRESHOLD LOGIC SPELLS OUT THREE DISCRETE

15   SUBELEMENTS:  "A COUNTER, AN ALTERABLE STORAGE LOCATION," AND

16   THEN THE CLAIM TERM THAT IS AT ISSUE HERE:

17                  "MEANS FOR COMPARING AND GENERATING."

18             AND IT'S THE THIRD.  IT'S THAT MEANS.  THAT'S THE

19   ONLY THING, THAT'S THE ONLY CLAIM TERM THAT IS AT ISSUE HERE.

20   NOT THE COUNTER AND NOT THE ALTERABLE STORAGE LOCATION.

21             AND THIS, AGAIN, JUST HIGHLIGHTS AN EMBODIMENT THAT

22   IDENTIFIES SOME OF THE STRUCTURE.  AND I NOTE DEFENSE COUNSEL

23   HAS TAKEN ISSUE WITH SOME OF THE STRUCTURES WE'VE IDENTIFIED. I

24   WAS HAPPY TO LEARN, I GUESS, THAT THEY DON'T BELIEVE A "COUNTER"

25   IS NECESSARY STRUCTURE ANYMORE.  THEY PREVIOUSLY HAD IDENTIFIED

1    THE COUNTER.

2              BUT THE COUNTER, WE BELIEVE, IS WHAT IS INDICATED IN

3    RED.  THE ALTERABLE STORAGE LOCATION IS WHAT IS IN GREEN.

4    AGAIN, THOSE ARE SEPARATE SUBELEMENTS OF THE CLAIM TERMS.

5              WHAT THE QUESTION HERE IS:  WHAT IS COMPARING THOSE

6    VALUES, AND THEN WHAT IS GENERATING AN INDICATION SIGNAL?  THE

7    STRUCTURES IN BLUE ARE WHAT ARE ACCOMPLISHING THOSE FUNCTIONS.

8              SO, AGAIN, THOSE ARE THE ONLY TWO FUNCTIONS FOR THE

9    COMPARING AND GENERATING, THE COMPARATOR AND THE CONTROL BLOCK.

10             THE NORTHROP GRUMAN CASE, YOUR HONOR AGAIN, JUST TO

11   EMPHASIZE IT, THAT THE FEATURES THAT DO NOT PERFORM THE RECITED

12   FUNCTION DO NOT CONSTITUTE CORRESPONDING STRUCTURE, WHICH I

13   BELIEVE YOU TOUCHED ON EARLIER.

14             THERE'S NO QUESTION, WE DON'T DENY THAT THE PATENT

15   DISCUSSES, THE SPECIFICATION DESCRIBES SEVERAL DIFFERENT

16   EMBODIMENTS OF WAYS THAT YOU CAN DO THIS. AND SO THERE ARE

17   DIFFERENT -- THERE ARE DIFFERENT TYPES OF COUNTERS AND THE THERE

18   ARE DIFFERENT TYPES OF THRESHOLDS.  THERE'S RECEIVE THRESHOLD

19   LOGIC.  THERE'S TRANSMIT THRESHOLD LOGIC.  THERE'S LOOK AHEAD

20   THRESHOLD.  LENGTH LEFT THRESHOLD THAT DETERMINES HOW YOU'RE

21   ACTUALLY MEASURING THE FRAMES THAT'S COMING IN OR GOING OUT.

22             BUT, REGARDLESS, THE STRUCTURE THAT PERFORMS THE

23   RECITED FUNCTION OF COMPARING THE COUNTER AND THRESHOLD IS A

24   COMPARATOR. AND THE STRUCTURE THAT PERFORMS THE RECITED FUNCTION

25   OF GENERATING THE INDICATION SIGNAL IS A CONTROL BLOCK.

```
 1              THE DEFENDANT'S POSITION IS UNTENABLE.  AGAIN, IT

 2   MATCHES UP STRUCTURES THAT ARE PART OF OTHER CLAIM ELEMENTS THAT

 3   SIMPLY CAN'T BE PART OF THE MEANS FOR COMPARING AND GENERATING.

 4              AGAIN, THEY IMPORT EXCESSIVE STRUCTURE INTO THESE

 5   FUNCTIONS.

 6              THE NORTHROP GRUMAN CASE, JUST BASICALLY IT WAS A

 7   VERY ANALOGOUS SITUATION WHERE YOU HAD SIGNALS THAT ARE

 8   MONITORED BY THE MEANS -- I'M SORRY.  IT HAD A MEANS FOR

 9   MONITORING SIGNALS.

10              AND THE COURT HELD THAT THE SIGNALS THAT ARE

11   MONITORED BY THE MEANS FOR MONITORING CANNOT BE A PART OF THE

12   STRUCTURE THAT DOES THE MONITORING.

13              THE LAST ELEMENT HERE, YOUR HONOR, IS THAT THEY ALSO

14   INCLUDE AN INTERRUPT CONTROLLER, BUT THE SPECIFICATION MAKES IT

15   CLEAR THAT THE THRESHOLD LOGIC CAN GENERATE INDICATION SIGNALS

16   THAT GO TO THE HOST PROCESSOR. AND IT DOESN'T NECESSARILY

17   INCLUDE ANY LIMITATIONS OTHER THAN THAT IN THE CLAIMS,

18   CERTAINLY.  BUT THE SPECIFICATION, THESE ARE JUST TWO EXAMPLES

19   WHERE THE LENGTH LEFT THRESHOLD LOGIC WILL GENERATE AN EARLY

20   INDICATION SIGNAL TO THE HOST, SO THAT THAT IS NOT AN ISSUE WITH

21   THIS CLAIM TERM.

22              BEFORE GETTING TO MEANS FOR MONITORING, IS THIS A

23   GOOD TIME FOR A BREAK, OR WOULD YOU LIKE ME TO KEEP GOING?

24              THE COURT:  I'M HAPPY TO.  MAYBE I COULD ASK HOW MUCH

25   TIME THE TWO SIDES HAVE LEFT OR REQUIRE TO FINISH THIS UP?  AND
```

1    THAT WILL HELP ME TO SEE WHAT THE AFTERNOON IS GOING TO BE LIKE.

2              **THE CLERK:**  YOU'VE USED 47 MINUTES.

3              YOU'VE USED 92 MINUTES.

4              **THE COURT:**  SO YOU WILL BE QUIET, WON'T YOU?

5              BUT I GUESS I WOULD BENEFIT IN HEARING A LITTLE BIT

6    OF A RESPONSE WITH RESPECT TO THE LOGIC PART OF THIS.

7              SO THAT MEANS THAT WE'VE GOT ABOUT AN HOUR LEFT.  SO

8    IF WE COME BACK AT 1:00 O'CLOCK WE OUGHT TO BE FINISHED AT ABOUT

9    2:00 O'CLOCK.  I HAD INTENDED THIS ALL TO BE DONE HERE IN THE

10   MORNING, SO LET ME KNOW IF THAT'S INCONVENIENT FOR YOU TO COME

11   BACK.

12             **MR. WALSH:**  THAT WORKS FOR US, YOUR HONOR.

13             **THE COURT:**  ALL RIGHT.  SO LET'S COME BACK AT

14   1:00 O'CLOCK.

15             **MR. WALSH:**  THANK YOU VERY MUCH.

16             (THEREUPON, A RECESS WAS TAKEN.)

17             **THE COURT:**  VERY WELL. YOU MAY RESUME.

18             **MR. WALSH:**  THANK YOU, YOUR HONOR. EXCUSE ME.

19             ALL RIGHT. YOUR HONOR, BEFORE WE BROKE WE WERE

20   TALKING ABOUT THE MEANS-PLUS-FUNCTION TERMS, AND I THINK THE

21   NEXT ONE THAT WE HAD HERE WAS MEANS FOR MONITORING.

22             I'D LIKE TO GO THROUGH THIS, AND THEN HIT ON SOME

23   HIGH POINTS FOR THE HOST INTERFACE AND NETWORK INTERFACE MEANS

24   CLAIMS BEFORE WE GET TO THE LOGIC TERMS.

25             BUT WITH RESPECT TO THE MEANS FOR MONITORING IN THE

```
1    '872 PATENT, CLAIM ONE, THIS WAS THE IMMEDIATE DATA AND DOWNLOAD

2    DATA ISSUE, IF YOU RECALL, FROM THIS MORNING.

3              THE FUNCTION IS:

4                   "MONITORING THE TRANSFERRING OF DATA OF A FRAME

5              TO THE BUFFER MEMORY TO MAKE A THRESHOLD

6              DETERMINATION OF AN AMOUNT OF DATA OF THE FRAME

7              TRANSFERRED TO THE BUFFER MEMORY."

8              WE'VE IDENTIFIED THE FOUR STRUCTURES TO THE LEFT IN

9    THEIR EMBODIMENTS:  COUNTER, THRESHOLD STORE, COMPARATOR,

10   INTERCONNECTING CIRCUITRY.

11             THE DEFENDANTS, IN CONTRAST, HAVE IDENTIFIED

12   EVERYTHING IN THE RIGHT-HAND COLUMN, I THINK. I THINK THAT'S IT.

13   OKAY. SO, THAT'S THE DISTINCTION.

14             THE COURT:  LET ME ASK.

15             MR. WALSH:  YES.

16             THE COURT:  WHEN YOU USE "INTERCONNECTING CIRCUITRY,"

17   THAT'S ESSENTIAL.

18             MR. WALSH:  WELL, IT LINKS THE STRUCTURES, YOUR

19   HONOR. IN FACT, IN JUST A SECOND WE'LL GET TO A FIGURE.  I THINK

20   MAYBE I'LL POINT OUT TO YOU WHAT WE MEAN BY INTERCONNECTING

21   CIRCUITRY.

22             THE COURT:  BUT THE REASON I ASK IS THAT WHAT YOUR

23   POSITION IS THAT THE THINGS LISTED BY YOUR OPPONENT ARE BEYOND

24   INTERCONNECTING CIRCUITRY.  BUT THAT IF THEY ARE PART OF THE

25   INTERCONNECTING CIRCUITRY THEN THEY WOULD BE PART OF THE
```

1    STRUCTURE.

2         **MR. WALSH:**  I THINK, AGAIN, OUR POINT IS SIMPLY THE

3    GENERAL LEGAL PROPOSITION THAT THE FEDERAL CIRCUIT HAS HELD

4    THAT ONLY THE MINIMUM STRUCTURE NECESSARY TO PERFORM THE RECITED

5    FUNCTION IS REQUIRED STRUCTURE. AND WE DO NOT DISPUTE THAT THERE

6    HAS TO BE SOMETHING CONNECTING THESE ELEMENTS. AND SO THE

7    ELEMENTS HAVE TO FEED INTO EACH OTHER IN SOME INSTANCES.  THAT

8    THERE HAS TO BE --

9         **THE COURT:**  RIGHT.  BUT IF YOU FED THROUGH SOMETHING

10   ELSE AND YOU'RE CLAIMING INTERCONNECTING CIRCUITRY AS PART OF

11   THE ESSENTIAL STRUCTURE, THEN THE "SOMETHING ELSE" WOULD BE

12   INCLUDED?

13        **MR. WALSH:**  NO, IT WOULD NOT, BECAUSE IT'S NOT

14   NECESSARY. IT'S NOT -- LET ME SHOW YOU THIS FIGURE HERE. THESE

15   ARE SIMILAR.

16        THIS IS THE CLAIM TERM, AGAIN, THE MEANS FOR

17   MONITORING.

18        AGAIN, IT DEALS WITH A COUPLE OF EMBODIMENTS:  DATA,

19   IMMEDIATE DATA.  WE BELIEVE THAT ONE OF THE EMBODIMENTS IN THIS

20   CLAIM DEALS WITH JUST THE MONITORING OF DOWNLOAD DATA.  THERE

21   ARE OTHER EMBODIMENTS THAT ARE IN THE DEPENDENT CLAIMS THAT TALK

22   ALSO ABOUT INCLUDING IMMEDIATE DATA IN THE MONITORING.

23        **THE COURT:**  SO HERE'S THE CHALLENGE THAT IT PRESENTS

24   FOR THE COURT, BECAUSE ONE OF THE THINGS I THOUGHT WOULD BE

25   HELPFUL TO DO AND THAT YOU'RE STARTING TO DO IS TO SORT OF TRACE

```
1    WHAT IS THE STRUCTURE THAT PERFORMS THE FUNCTION. AND WHEN YOU

2    HAVE AN EMBODIMENT THAT IS A CIRCUITRY DIAGRAM OR SOME KIND OF A

3    FUNCTIONAL DIAGRAM THAT SHOWS IT AND THINGS ARE ALL ON THAT ONE

4    DIAGRAM, IT'S VERY CHALLENGING TO SAY:

5                 "OKAY, I'M GOING TO SKIP SOMETHING THAT'S ON

6              THE DIAGRAM THAT IS PLAINLY THERE AND THROUGH WHICH

7              THE CIRCUITRY RUNS."

8              NOW, IN THE CLAIM YOU CAN SAY:

9                 "I DON'T NEED THAT OR I'M NOT CLAIMING THAT AT

10             THIS POINT," AND IN THE DEPENDENT CLAIMS YOU CAN ADD

11   IT.

12             BUT THEN, UNDER 112-6 I'VE GOT TO GO TO THE

13   SPECIFICATION. I'VE GOT TO GO TO THE WRITTEN DESCRIPTION.  I

14   HAVE TO FIND WHAT IS THE CORRESPONDING STRUCTURE.  AND IF WHAT

15   I'M FINDING IS A DESCRIPTION OF A DRAWING OR A DRAWING, IT'S

16   VERY CHALLENGING TO FIGURE OUT HOW TO DO THE DRAWING IN A WAY TO

17   IGNORE SOMETHING THROUGH WHICH THE SIGNAL LOOKS LIKE IT PASSES

18   IN THE DRAWING.

19             MR. WALSH:  WELL, AND I THINK, YOUR HONOR, THAT'S

20   WHAT THE FEDERAL CIRCUIT IN THE WENGER CASE WENT INTO.  I MEAN,

21   AGAIN, IT TALKED ABOUT HOW THE EMBODIMENT IN THAT CASE INCLUDED

22   BOTH A CIRCULATING FAN AND A RE -- OR, SORRY, A CIRCULATING

23   FUNCTION AND A RECIRCULATING FUNCTION.  AND WHAT THE COURT SAID

24   WAS, WELL, IN THE INDEPENDENT CLAIM IT DIDN'T DISTINGUISH THE

25   TWO.
```

1          **THE COURT:**  BUT DID THEIR DRAWING SHOW BOTH FANS?

2          **MR. WALSH:**  THEY MAY HAVE HAD DIFFERENT DRAWINGS,

3    YOUR HONOR.  I'M NOT SURE.

4          **THE COURT:**  THAT ONE I CAN HANDLE.

5          **MR. WALSH:**  YES.

6          **THE COURT:**  BUT WHEN YOU HAVE A SINGLE DRAWING,

7    THAT'S WHY I'M A LITTLE BIT CHALLENGED IN TRYING TO FIGURE OUT

8    HOW TO DO IT IF YOU HAVE A SINGLE DRAWING.

9          **MR. WALSH:**  AND I UNDERSTAND THAT, YOUR HONOR. BUT,

10   AGAIN, THE FEDERAL CIRCUIT HAS BEEN VERY CLEAR THAT IT'S JUST

11   THE MINIMUM STRUCTURE REQUIRED FOR THAT FUNCTION.

12          SO HERE, AGAIN, WE HAVE A DEPENDENT CLAIM TWO THAT

13   INCLUDES:

14              "WHEREIN, THE MEANS FOR MONITORING INCLUDES THE

15              IMMEDIATE DATA AND THE THRESHOLD DETERMINATION,"

16   WHICH, AGAIN, GETS TO THE POINT THAT YOU MADE THIS MORNING.

17          AGAIN, WE BELIEVE IT'S JUST THE COUNTER, THE

18   THRESHOLD STORE AND THE COMPARATOR, AS WELL AS THE

19   INTERCONNECTING CIRCUITRY THAT ARE NECESSARY TO PERFORM THAT

20   FUNCTION.

21          HERE WE HAVE TWO FIGURES, YOUR HONOR, AND THE FIGURE

22   11 AND FIGURE 12.  THE COUNTER IS RIGHT HERE (INDICATING), IS

23   300, THIS BLOCK RIGHT HERE (INDICATING).

24          THE LINE THAT GOES OUT THROUGH THIS ADDER BECOMES

25   DOWNLOAD BYTE RESIDENT TEN, RIGHT HERE (INDICATING).

1          THAT'S THE SAME INPUT RIGHT HERE ON FIGURE 12. AND IN

2     FIGURE 12 YOU HAVE 320, THE THRESHOLD STORE, AND YOU HAVE THE

3     COMPARATOR 321, RIGHT HERE (INDICATING).

4          THESE ARE THE STRUCTURES THAT ARE REQUIRED TO MONITOR

5     THE DATA THAT IS DISCUSSED IN CLAIM ONE. AND IN CONTRAST, IN

6     CLAIM TWO IT, AGAIN, SAYS:

7               "WHEREIN, THE MEANS FOR MONITORING INCLUDES THE

8               IMMEDIATE DATA IN THE THRESHOLD DETERMINATION."

9          BUT WHAT'S HIGHLIGHTED IN BLUE HERE IS THE IMMEDIATE

10    DATA. AND SO HERE YOU HAVE -- THE DESCRIPTION SHOWS AN ADDER ON

11    THE CIRCUITRY LEADING TO THE DOWNLOAD COMPARE.  BUT THAT'S NOT

12    NECESSARY TO PERFORM THIS FUNCTION OF CLAIM ONE.  IT'S ONLY

13    NECESSARY IN THIS INPUT HERE.  IT'S ONLY NECESSARY FOR DEPENDENT

14    CLAIM TWO. AND THAT'S WHY WE BELIEVE THAT IT'S IMPROPERLY

15    INCLUDED IN THE STRUCTURE.

16         AGAIN, THE WENGER CASE THAT WE TALKED ABOUT THIS

17    MORNING, THE GOLIGHT CASE THAT SAYS IT'S NOT MINIMUM STRUCTURE

18    REQUIRED TO PERFORM THE RECITED FUNCTION ARE SUPERFLUOUS TO THE

19    112-6 INQUIRY.

20         YOUR HONOR, THAT BRINGS US TO THE HOST INTERFACE

21    MEANS, THE FIRST HOST INTERFACE MEANS CLAIM, HOST INTERFACE

22    MEANS FOR MANAGING.

23         THERE ARE A COUPLE OF POINTS HERE, YOUR HONOR, THAT I

24    WANTED TO HIGHLIGHT AS WE GO THROUGH.  THE FIRST IS THIS

25    MORNING, YOU KNOW, MR. STEPHENS SPENT A LONG TIME DISCUSSING THE

1  VARIOUS ELEMENTS THAT MIGHT BE INCLUDED IN THIS HOST INTERFACE

2  MEANS FOR MANAGING CLAIM.

3          AND I KNOW THERE WERE REFERENCES TO POINTERS.  AND

4  CERTAINLY THE DEFENDANTS ARGUE THAT POINTERS ARE REQUIRED

5  STRUCTURE, EVEN FOR HOST INTERFACE MEANS FOR MANAGING.  BUT AS

6  YOU CAN SEE HERE, YOUR HONOR, THEY POINT TO A LOT MORE THAN

7  POINTERS AS REQUIRED STRUCTURE.

8          THEY TALK ABOUT TRANSFER DESCRIPTORS, TRANSFER

9  DESCRIPTOR LOGIC, VIEW LOGIC, FAR BEYOND JUST THE POINTERS THAT

10 WERE MENTIONED THIS MORNING.

11         AGAIN, IT'S OUR PROPOSED STRUCTURE, WE BELIEVE, IS

12 DOWNLOAD DMA LOGIC, UPLOAD DMA LOGIC, A BUFFER MEMORY AND A HOST

13 SYSTEM.  TO BE HONEST, YOUR HONOR, THE DEFENDANTS HAD PREVIOUSLY

14 INDICATED THAT THEY BELIEVED A BUFFER MEMORY WAS A REQUIRED

15 STRUCTURE HERE. TO NARROW THE ISSUES WE INCLUDED A BUFFER MEMORY

16 HERE.

17         IF THEY DON'T BELIEVE IT'S NECESSARY, THEN I DON'T

18 THINK WE WOULD NECESSARILY DISPUTE THAT. I THINK WE WOULD AGREE

19 TO THAT.

20         THEY DO ARGUE, HOWEVER, THAT THE HOST SYSTEM,

21 INCLUDING HOST MEMORY, THEY HAVE ARGUED THAT THAT IS NOT

22 REQUIRED STRUCTURE.

23         BUT I WOULD LIKE TO POINT YOU TO RIGHT HERE.  THEY

24 HAVE IN THEIR REQUIRED STRUCTURE ADAPTER INTERFACE ADDRESS BLOCK

25 IN HOST MEMORY SPACE.

1          SO IT MAY BE SINCE WE GOT THIS STRUCTURE THEY HAVE

2     CHANGED THEIR STRUCTURE AGAIN.  THEY HAVE DONE IT SEVERAL TIMES,

3     SO THAT'S POSSIBLE.

4          BUT THE BOTTOM LINE IS THAT AT THE LAST WE HEARD THEY

5     WERE INCLUDING THE ADAPTER INTERFACE ADDRESS BLOCK IN HOST

6     MEMORY SPACE AS A REQUIRED STRUCTURE.

7          SO GETTING TO THE SPECIFICS HERE, AGAIN, THIS IS THE

8     MEANS FOR MANAGING.  THE '313 PATENT HAS A NUMBER OF

9     EMBODIMENTS.  THEY RANGE IN COMPLEXITY. THERE IS MANAGEMENT OF

10    THE COMMUNICATIONS BETWEEN THE HOST AND THE BUFFER. THERE'S

11    MAPPING. THEY GO FROM BASIC, WHICH INCLUDE JUST THE MANAGEMENT

12    OF THE ACTUAL DATA TRANSFERS TO THE MORE COMPLEX.  BUT NOT ALL

13    THE EMBODIMENTS ARE REQUIRED IN CLAIM ONE.

14         THIS -- I KNOW YOU'VE SEEN THIS BEFORE -- BUT THIS IS

15    THE HOST INTERFACE CIRCUITRY THAT WE'RE TALKING ABOUT.

16         AGAIN, CLAIM ONE ONLY TALKS ABOUT THE MANAGING DATA

17    TRANSFERS. I THINK IT'S ALSO IMPORTANT TO NOTE THE COURT HAS

18    ALREADY CONSTRUED OPERATIONS TRANSPARENT TO THE HOST SYSTEM.

19    AND THAT'S BEEN CONSTRUED AS OPERATIONS PERFORMED INDEPENDENTLY

20    OF MANAGEMENT BY THE HOST SYSTEM, NOT OPERATIONS THAT DO NOT

21    INVOLVE THE HOST SYSTEM.

22         THAT'S WHAT THE DEFENDANTS ARGUED IN THE FIRST CLAIM

23    CONSTRUCTION PROCEEDING.  THE COURT REJECTED THAT POSITION, BUT

24    THE DEFENDANTS HAVE NOT TAKEN THAT INTO ACCOUNT IN SOME OF THEIR

25    ARGUMENTS.

1              AGAIN, THIS IS JUST A COMPARISON TO CLAIM 13.  YOU

2    WENT INTO DETAIL ON THIS THIS MORNING, SO I WON'T GO THROUGH THE

3    DETAILS AGAIN.  BUT IT DOES DEAL WITH THE MAPPING OF DATA THAT'S

4    NOT REFERENCED IN CLAIM ONE.

5              THIS IS WHAT WE BELIEVE TO BE THE ONLY REQUIRED

6    STRUCTURE.

7              THE DOWNLOAD DMA IN THE SPEC IS RESPONSIBLE FOR

8    ISSUING REQUESTS FOR BUS MASTER DOWNLOADS OF DATA FROM THE HOST

9    SYSTEM.

10             UPLOAD DMA LOGIC MANAGES TRANSFERS FROM THE RECEIVER

11   BUFFER TO THE ADAPTER.

12             AGAIN, WE'VE MENTIONED THIS, THE WENGER CASE THAT

13   THEY ARE IMPORTING LIMITATIONS FROM DEPENDENT CLAIMS.

14             IMPORTANTLY, AGAIN, FOR THE TRANSMIT DESCRIPTOR LOGIC

15   FOR MAPPING, THESE ARE FUNCTIONS THAT ARE IN THE DEPENDENT

16   CLAIMS THAT DON'T BELONG IN INDEPENDENT CLAIM ONE.

17             THE SAME THING WITH VIEW LOGIC.  VIEW LOGIC IS ALSO

18   MENTIONED IN CLAIM 11.  WE DON'T BELIEVE IT'S -- AND IT'S

19   DEPENDENT UPON CLAIM ONE.  WE DON'T BELIEVE IT'S APPROPRIATE TO

20   INCORPORATE THAT IN.

21             AGAIN, WE MENTION BUFFER MEMORY.  WE MENTIONED THEY

22   BELIEVED BUFFER MEMORY WAS REQUIRED. IF THEY DON'T, I THINK WE

23   CAN AGREE WITH THAT.

24             WE DISAGREE WITH THEM ON THE HOST SYSTEM, THOUGH.

25                 "THE HOST INTERFACE MEANS MANAGES DATA TRANSFERS

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

1          TO AND FROM THE HOST MEMORY IN THE HOST SYSTEM BY

2          ACCESSING ADDRESSES ON THE HOST ADDRESS SPACE. AND

3          THE HOST ELEMENTS ALL RESIDE IN THE HOST SYSTEM."

4          AND AS I MENTIONED, THEY HAVE LISTED AS REQUIRED

5   STRUCTURE:

6          "THE ADAPTER INTERFACE ADDRESS BLOCK IN HOST

7          MEMORY SPACE."

8          AND THIS WAS THE POINT I WAS MAKING, YOUR HONOR, WITH

9   THE HOST MEMORY SPACE ISSUE. THE DEFENDANTS IN MAKING THEIR HOST

10  INTERFACE MEANS ARGUMENTS SUGGEST THAT OUR POSITIONS HAVE TO BE

11  WRONG BECAUSE THEY, IN SOME WAY, INVOLVE HOST ELEMENTS.

12         BUT, YOUR HONOR, THEY NEGLECT TWO OF THE

13  CONSTRUCTIONS FROM YOUR FIRST ORDER, ONE BEING "HOST ADDRESS

14  SPACE," WHICH THE COURT HELD WERE ADDRESSES ON THE HOST SYSTEM

15  BUS THAT BE CAN BE USED AS SPACE FOR DATA THAT IS IN THE HOST,

16  AS WELL AS THE OPERATIONS TRANSPARENT TO THE HOST SYSTEM.

17         THE COURT HAS NOT HELD THAT THAT TERM MEANS THAT

18  NOTHING IN THE HOST SYSTEM CAN BE INVOLVED. IT HAS SIMPLY HELD

19  THAT THE OPERATIONS HAVE TO BE PERFORMED INDEPENDENTLY OF

20  MANAGEMENT BY THE HOST SYSTEM, WHICH OUR CONSTRUCTIONS COMPORT

21  WITH.

22         NOW, THIS -- I DO WANT TO DEAL WITH THIS, TOO, YOUR

23  HONOR. THE DEFENDANTS HAVE A NEW INVALIDITY THEORY THAT THEY

24  HAVE NOW ARGUED WITH RESPECT TO ALL OF THE INTERFACE, BOTH THE

25  HOST -- I BELIEVE BOTH WITH THE HOST AND THE NETWORK INTERFACE

1   MEANS CLAIMS.

2           THIS IS A NEW THEORY, AND THE TOP PART IT'S NOT

3   TIMELY. I DON'T BELIEVE ANY OF THE FOUR ARE MENTIONED IN THEIR

4   INVALIDITY CONTENTIONS, EVEN THEIR AMENDED INVALIDITY

5   CONTENTIONS. AND WE DON'T POINT THAT OUT NECESSARILY AS A GOTCHA

6   ARGUMENT.

7           WE POINT IT OUT, YOUR HONOR, JUST TO MAKE THE POINT

8   THAT THEY CLAIM THAT THIS TERM IS INDEFINITE, YET FOR ABOUT TWO

9   YEARS WITH LOTS OF LAWYERS POURING THROUGH THAT THEY NEVER CAME

10  UP WITH THAT ARGUMENT.

11          SO, OBVIOUSLY, THEY UNDERSTOOD THE TERM UNTIL VERY

12  RECENTLY. THEREFORE, IT CAN'T BE INSOLUBLY AMBIGUOUS WITHIN THE

13  MEANING OF NINTH CIRCUIT CASE LAW.

14          SUBSTANTIVELY, YOUR HONOR, THEY POINT TO THE

15  WMS GAMING CASES AND ITS PROGENY TO ARGUE THAT WHAT'S BEEN

16  CLAIMED IN THESE TERMS IS SIMPLY FUNCTIONAL LANGUAGE THAT DOES

17  NOT DEFINE ANY STRUCTURE.

18          THAT'S SIMPLY NOT THE CASE, YOUR HONOR. WHAT THEY ARE

19  ARGUING FOR WOULD BE A DRAMATIC EXPANSION OF THE WMS GAMING

20  CASES. THOSE CASES REFER TO MEANS-PLUS-FUNCTION TERMS IN WHICH A

21  GENERAL PURPOSE COMPUTER IS THE STRUCTURE CORRESPONDING TO THE

22  FUNCTIONAL LIMITATION.

23          AND WHAT WE HAVE HERE IS STRUCTURE THAT IS NEITHER

24  GENERAL PURPOSE NOR A COMPUTER. THE WMS GAMING CASES ARE JUST

25  NOT APPLICABLE. RATHER, HERE WE'RE DEALING WITH CIRCUITRY THAT

1    CAN ONLY PERFORM SPECIFIC LIMITED TASKS.

2              HOST INTERFACE LOGIC IS ONE OF THE CIRCUITS THAT IS

3    DISCUSSED THAT PERFORMS COMMUNICATIONS AND DATA TRANSFERS WITH

4    THE HOST.

5              AND ALSO AS THE DEFENDANTS HAVE POINTED OUT -- AND I

6    CAN POINT YOU BACK TO THE SLIDES THAT WE JUST SHOWED -- THEY

7    HAVE FOUND A LOT OF STRUCTURE THAT CORRESPONDS WITH THESE TERMS.

8    AND TO ARGUE NOW THAT THEY CAN'T FIND ANY THAT'S NOT FUNCTIONAL

9    IS, WE BELIEVE TO BE DISINGENUOUS.

10             THE NEXT TERM, YOUR HONOR, IS THE HOST INTERFACE

11   MEANS FOR MAPPING. AGAIN, THIS WAS DISCUSSED AT LENGTH THIS

12   MORNING.

13             BUT, AGAIN, THE IMPORTANCE, I THINK, IS TO RECOGNIZE

14   THE DISTINCTION IN THE FUNCTION. THE FUNCTION IS:

15             "MAPPING DATA ADDRESSED TO THE FIRST AREA INTO

16             THE TRANSMIT BUFFER, MAPPING DATA IN THE RECEIVE

17             BUFFER INTO THE SECOND AREA, AND UPLOADING DATA FROM

18             THE RECEIVE BUFFER TO THE HOST."

19             THAT IS VERY DIFFERENT FROM THE FUNCTION IN CLAIM

20   ONE. AND THIS IS THE STRUCTURE, AGAIN.

21             AGAIN, WE JUST WENT THROUGH THE FUNCTION ITSELF.

22   THESE ARE THE SPECIFIC DIFFERENCES BETWEEN THE MANAGING DATA

23   TRANSFERS AND THE VARIOUS MAPPING AND UPLOADING FUNCTIONS.

24             DESPITE THESE OBVIOUS DIFFERENCES, THE DEFENDANTS

25   PROPOSE NEARLY IDENTICAL STRUCTURE FOR BOTH CLAIM TERMS. THERE

1    ARE THREE DISCRETE FUNCTIONS. I THINK THE DEFENDANTS AGREE WITH

2    THIS AND MENTIONED THIS THIS MORNING. WE BELIEVE THESE ARE THE

3    CLAIM ELEMENTS THAT ARE INVOLVED IN THAT. AGAIN, AS FAR

4    AS -- WELL, THE DOWNLOAD DATA POINTER; TRANSFER AREA REGISTER;

5    UPLOAD DMA LOGIC; BUFFER MEMORY; HOST SYSTEM AND THE

6    INTERCONNECTING CIRCUITRY, WE BELIEVE, ARE ALL REQUIRED TO

7    PERFORM THE RECITED FUNCTION.

8              THIS DISCUSSES, YOUR HONOR, WE BELIEVE, THIS DOWNLOAD

9    DATA POINTER IS NECESSARY BECAUSE THE POINTERS, WE BELIEVE, ARE

10   WHAT MAP THIS DATA. AND THE DOWNLOAD DATA POINTER POINTS TO THE

11   LOCATION WITHIN THE TRANSMIT BUFFER WHERE THE DOWNLOAD PROCESS

12   IS JUST WRITING THE DATA.

13             AND THIS ALLOWS THE HOST INTERFACE LOGIC TO MAP THE

14   DATA FROM THE PRESPECIFIED BLOCK OF HOST ADDRESS SPACE INTO THE

15   TRANSMIT BUFFER ITSELF.

16             THE TRANSFER AREA REGISTER HAS A SIMILAR FUNCTION,

17   BUT GOING IN A DIFFERENT DIRECTION. IT'S MAPPING DATA IN THE

18   RECEIVE BUFFER INTO THE SECOND AREA, THE UPLOAD AREA OF THE

19   PRESPECIFIED BLOCK OF HOST ADDRESS SPACE.

20             AND IT SUPPLIES THE ADAPTER WITH POINTERS FOR

21   TRANSFER OF THE RECEIVED FRAMES. IT WRITES IT, WRITING TD DATA

22   POINTERS TO THIS REGISTER TELLS THE ADAPTER WHERE IN THE HOST

23   MEMORY THE CURRENT RECEIVE FRAME SHOULD BE TRANSFERRED.

24             AND THEN, UPLOAD DMA LOGIC IS THE LOGIC THAT ACTUALLY

25   UPLOADS THE DATA ITSELF. AND, AGAIN, THEY HAVE MENTIONED THAT

1   THEY BELIEVE VIEW LOGIC IS INCLUDED. WE WOULD ASK YOU JUST TO

2   TAKE A LOOK AT DEPENDENT CLAIM 20 THAT SPECIFICALLY REFERENCES

3   THE VIEW LOGIC.

4          THAT'S, AGAIN, JUST REITERATING WHAT WE BELIEVE TO BE

5   THE REQUIRED STRUCTURE. AND, AGAIN, AS THEY HAVE WITH THE OTHER

6   MEANS TERMS, THEY HAVE IDENTIFIED STRUCTURE THAT'S NOT NECESSARY

7   TO PERFORM THE RECITED FUNCTION.

8          THE OTHER POINTERS THAT THEY MENTION, YOUR HONOR,

9   JUST PREVIOUSLY, THE CURRENT HOST DESCRIPTOR AND HOST WRITE

10  POINTER, THOSE ARE ONLY DESCRIBED BY THE SPECIFICATION IN

11  CONJUNCTION WITH EMBODIMENTS THAT USE DESCRIPTORS.

12         THEY ARE ONLY NECESSARY TO PERFORM THE FUNCTION OF

13  DEPENDENT CLAIM 14 THAT TALKS ABOUT DESCRIPTORS.

14         THE TRANSFER DESCRIPTOR LOGIC AND VIEW LOGIC HAS

15  SIMILAR FLAWS.

16         THOSE ARE THE TWO HOST INTERFACE MEANS ELEMENTS, YOUR

17  HONOR. THE NETWORK INTERFACE MEANS FOR MANAGING DATA TRANSFERS,

18  AGAIN, I KNOW YOU TALKED ABOUT THIS THIS MORNING. THIS IS THE

19  CIRCUITRY BETWEEN THE BUFFER AND THE NETWORK TRANSCEIVER.

20         A LOT OF THE ISSUES, FRANKLY, ARE VERY SIMILAR. AND

21  SO I DON'T WANT TO BELABOR THESE POINTS AGAIN. THE FUNCTIONS IN

22  THE TWO ARE VERY DIFFERENT. MANAGING DATA TRANSFERS BETWEEN THE

23  BUFFER MEMORY AND THE NETWORK TRANSCEIVER IS CLAIM ONE.

24         THIS CLAIM ELEMENT, WE BELIEVE, INVOLVES BUFFER

25  MEMORY, TRANSCEIVER. WELL, THE CLAIM ELEMENTS HERE ARE BUFFER

1   MEMORY, TRANSCEIVER AND THE MEANS FOR MANAGING DATA TRANSFERS

2   BETWEEN THE BUFFER AND THE TRANSCEIVER.

3          THESE ARE THE REQUIRED STRUCTURES TO PERFORM THAT

4   FUNCTION. THE PARTIES AGREE THAT THE TRANSMIT DMA LOGIC IS

5   REQUIRED. IT'S THE INTERFACE BETWEEN THE BUFFER MEMORY AND THE

6   NETWORK TRANSCEIVER. AND IT'S RESPONSIBLE FOR TRANSMITTING THE

7   DATA FROM THE BUFFER MEMORY TO THE NETWORK TRANSCEIVER.

8          AGAIN, THEY TRY TO INCLUDE TRANSMIT DESCRIPTORS HERE,

9   YOUR HONOR. AND THAT RUNS AFOUL OF WENGER AND OTHER FED. CIRCUIT

10  CASES BECAUSE OF THE FACT THAT IT'S TRYING TO INCORPORATE

11  FUNCTIONS THAT ARE IN DEPENDENT CLAIMS.

12         THE RECEIVE DMA LOGIC, THIS IS ALSO A REQUIRED

13  STRUCTURE. BUT THE DEFENDANTS BELIEVE -- THEY ATTEMPT TO IMPORT

14  THE LIMITATIONS FROM OTHER CLAIMS, AGAIN, WITH TRANSMIT

15  DESCRIPTORS AND ASSOCIATED POINTERS THAT ARE FOUND IN THE

16  EMBODIMENT IN CLAIM 28.

17         AND, FINALLY, YOUR HONOR, THIS IS THE NETWORK

18  INTERFACE MEANS THAT INVOLVES THE MAPPING FUNCTION FOR

19  TRANSFERRING DATA AND MAPPING DATA.

20         IT'S SPECIFICALLY TRANSMITTING DATA FROM THE TRANSMIT

21  BUFFER TO THE NETWORK TRANSCEIVER AND MAPPING DATA INTO THE

22  RECEIVE BUFFER FROM THE NETWORK TRANSCEIVER.

23         THIS IS THE -- I'M SORRY. THIS IS THE STRUCTURE THAT

24  WE BELIEVE IS REQUIRED. AS YOU CAN SEE HERE, THE DEFENDANTS

25  BELIEVE IT'S THE EXACT SAME STRUCTURE DESPITE THE DIFFERENCE

1   BETWEEN THE FUNCTIONS.

2          AGAIN, I DON'T WANT TO BELABOR THIS POINT. I THINK WE

3   WENT THROUGH IT THIS MORNING. BUT THIS FUNCTION DOES INVOLVE

4   TRANSFERRING DATA AND MAPPING DATA, WHICH IS WHY WE BELIEVE

5   THERE SHOULD BE ADDITIONAL DATA HERE. THESE ARE THE OBVIOUS

6   DIFFERENCES BETWEEN THE TWO CLAIMS.

7          THIS, WE BELIEVE, IS THE REQUIRED STRUCTURE. AGAIN,

8   THE TRANSFERRING DATA VERSUS THE MAPPING OF DATA, WE BELIEVE, IS

9   A KEY DISTINCTION.

10         AND I WOULD LIKE TO ADD, YOUR HONOR: I THINK, AGAIN,

11  A LOT OF THIS IS REPETITIVE. THEY HAVE MADE THE SAME INVALIDITY

12  ARGUMENT. I BELIEVE THEY MADE THE SAME INVALIDITY ARGUMENT WITH

13  EACH OF THESE HOST AND NETWORK INTERFACE MEANS TERMS. THE

14  ARGUMENTS, I BELIEVE, ARE IDENTICAL AS FAR AS THE SUBSTANCE IS

15  CONCERNED. BUT, AGAIN, WE BELIEVE IT'S CLEAR THAT THE WMS GAMING

16  CASE AND ITS PROGENY DON'T APPLY.

17         AND I'M NOT SURE HOW MUCH TIME I HAVE LEFT, BUT IF

18  IT'S OKAY WITH YOU I WOULD JUST GO AHEAD WITH THE LOGIC TERMS --

19         **THE COURT:** SURE.

20         **MR. WALSH:** -- IF THAT'S OKAY WITH YOU.

21         **THE COURT:** CERTAINLY.

22         **MR. WALSH:** YOUR HONOR, IT PROBABLY WOULD HAVE BEEN

23  BETTER, QUITE FRANKLY, TO START WITH THE LOGIC TERMS RATHER THAN

24  WANDER INTO THE MEANS-PLUS-FUNCTION LAND BEFOREHAND, BUT WE ARE

25  WHERE WE ARE, SO -- BUT THE LOGIC TERMS, AS YOU KNOW, THERE ARE

1    VARIOUS TERMS WITHIN THE PATENT THAT ARE USED IN THE CLAIMS AND

2    THE SPECIFICATION THAT EMPLOYS THIS LOGIC ELEMENT.

3              IN THE FIRST CLAIM CONSTRUCTION ORDER THE COURT ASKED

4    US TO IDENTIFY TEN TERMS, LOGIC TERMS FOR THE PURPOSE OF

5    INFORMING THE COURT AS TO HOW "LOGIC" SHOULD BE CONSTRUED. I

6    THINK THAT'S VERY RELEVANT, YOUR HONOR, BECAUSE IF YOU LOOK AT

7    THE CHART, I THINK THE DEFENDANTS JUST SUBMITTED ANOTHER CHART

8    TO YOU. THEY DON'T IDENTIFY THE LOGIC TERMS.  THEY IDENTIFY

9    ENTIRE PHRASES THAT INCLUDE A LOGIC TERM, AND ASK THE COURT TO

10   CONSTRUE THOSE.

11             BUT IN ANY EVENT, WE BELIEVE THAT EACH LOGIC TERM

12   SELECTED REFLECTS THAT THE PROPER CONSTRUCTION IS CIRCUITRY.

13   AND THAT THE TERM ITSELF CONNOTES SUFFICIENT STRUCTURE TO AVOID

14   112-6.

15             JUST SOME GENERAL PRINCIPLES, YOUR HONOR.  IT IS

16   ENTIRELY PERMISSIBLE FOR THE COURT -- THE COURT ASKED IN ITS

17   OPENING CLAIM CONSTRUCTION BRIEF WHETHER IT WAS PERMISSIBLE TO

18   LEAVE THE IMPLEMENTATION OF LOGIC UNSPECIFIED AS FAR AS HARDWARE

19   OR SOFTWARE IS CONCERNED.  WE BELIEVE THE CASE LAW SHOWS THAT

20   THAT IS PERMISSIBLE, YOUR HONOR. THE 3COM VERSUS D-LINK CASE

21   INVOLVING THREE OF THESE SAME PATENTS REACHED THAT CONCLUSION.

22   IT CITED TO THE LINEAR TECHNOLOGY CASE IN REACHING THAT

23   DECISION.

24             THE ADAMS VERSUS DELL CASE IN UTAH, AGAIN, IT FOUND

25   THAT A SYSTEM CLOCK CAN INCLUDE AN ELEMENT MADE UP OF HARDWARE,

1   SOFTWARE, SOME COMBINATION OF THE TWO.  THE KERNIUS CASE HAD A

2   SIMILAR FINDING. AND WHILE A PERSON OF ORDINARY SKILL IN THE ART

3   WOULD UNDERSTAND "LOGIC" TO MEAN "CIRCUITRY" IN THE CONTEXT OF

4   THESE PARTICULAR PATENTS, THE FOUR PATENTS THAT ARE AT ISSUE

5   HERE, A CONSTRUCTION THAT ACKNOWLEDGES THE POSSIBILITY OF

6   PROGRAMMING IN CONNECTION WITH THAT CIRCUITRY WOULD NOT RENDER

7   THE LOGIC TERM INDEFINITE.

8           BUT SETTING THAT ISSUE ASIDE, AGAIN, WE BELIEVE THAT

9   THE PROPER ANALYSIS OF THE TERM "LOGIC" IN THESE PATENTS

10  INDICATES THAT IT'S USED CONSISTENTLY TO DENOTE "CIRCUITRY,"

11  AND, FRANKLY, SPECIFIC TYPES OF CIRCUITRY.

12          SOME VERY IMPORTANT CONTROLLING LAW, YOUR HONOR --

13  AND YOU REFERENCED SOME OF THESE CASES IN YOUR INITIAL CLAIM

14  CONSTRUCTION BRIEF.  BUT, FRANKLY, DUE TO THE SORT OF HECTIC

15  NATURE OF BRIEFING I DON'T THINK WE HAD A REALLY GOOD

16  OPPORTUNITY TO ADDRESS THESE DIRECTLY.

17          BUT THE WATTS CASE THAT YOU CITED MADE IT VERY CLEAR

18  THAT EACH LOGIC TERM, BECAUSE IT DOES NOT INCLUDE THE MEANS

19  INDICATOR, IT HAS A PRESUMPTION AGAINST 112-6.  BECAUSE MEANS

20  WAS OBVIOUSLY INTENTIONALLY OMITTED I DON'T THINK THERE'S A

21  DISPUTE THERE.

22          APPLYING 112-6 TO A LOGIC TERM JUST BECAUSE IT

23  CONTAINS FUNCTIONAL LANGUAGE LIKE "TRANSFERRING" WOULD LIMIT

24  CLAIMS IN A MANNER THAT WAS NEVER INTENDED BY CONGRESS.  AND

25  THAT'S WHAT THE FED. CIRCUIT HELD IN THE O.I. CORPORATION CASE.

1          AND THEN, FINALLY, TO THE EXTENT ANY FUNCTIONAL

2   LIMITATIONS ARE FOUND, EACH LOGIC TERM HERE AVOIDS 112-6 BECAUSE

3   THE TERM ITSELF IDENTIFIES SUFFICIENT STRUCTURE TO PERFORM IT.

4   AND TO THAT QUESTION WE GET TO THE GREENBERG CASE, WHICH IS THE

5   PREDECESSOR TO THE WATTS CASE.

6          AND WHAT GREENBERG AND WATTS TELL US -- WELL, FIRST,

7   THE FEDERAL CIRCUIT HAS MADE IT CLEAR THAT A TERM NEED NOT

8   IDENTIFY A SINGLE WELL-DEFINED STRUCTURE TO AVOID 112-6.  I

9   THINK THAT'S A VERY IMPORTANT POINT. AND, AGAIN, THAT'S IN THE

10  GREENBERG FED. CIRCUIT CASE IN 1996 AND THE WATTS CASE THAT

11  FOLLOWED.

12         AND AS THE COURT ALSO NOTED IN ITS FIRST CLAIM

13  CONSTRUCTION ORDER:

14              "SUFFICIENT STRUCTURE MAY BE DISCLOSED WHEN A

15              TERM, AS THE NAME FOR STRUCTURE, HAS A

16              REASONABLY WELL UNDERSTOOD MEANING IN THE ART."

17         AND I DON'T THINK THAT'S IN DISPUTE. I THINK YOU

18  ACTUALLY QUOTED THAT EXACT SAME LANGUAGE IN THE OPENING CLAIM

19  CONSTRUCTION ORDER.

20         AND THAT'S ALSO REFERENCED IN GREENBERG. AND THAT'S

21  VERY RELEVANT HERE, YOUR HONOR,  BECAUSE UNDER THAT CONTROLLING

22  LAW THE LOGIC TERMS HAVE TO AVOID 112-6. AND THERE'S PLENTY OF

23  EVIDENCE TO SUGGEST THAT.  AND THE FIRST IS THAT THE

24  DEFENDANTS -- AND THIS IS, FRANKLY, YOUR HONOR, SOMETHING THAT

25  WAS NOT IN OUR BRIEF, SO I DO WANT TO EMPHASIZE IT.  THE

```
 1   DEFENDANTS HAVE PREVIOUSLY ARGUED THAT THE MAJORITY OF THE LOGIC
 2   TERMS THAT ARE AT ISSUE HERE IDENTIFY COMPONENTS THAT ARE AT
 3   LEAST REASONABLY WELL UNDERSTOOD IN THE ART.  AND I'LL SHOW THAT
 4   IN OUR SLIDES HERE.
 5          IN ADDITION, YOUR HONOR, THE DEFENDANT'S OWN PATENT
 6   FILINGS DEMONSTRATE THAT CERTAIN LOGIC TERMS AT ISSUE ARE
 7   COMMONLY UNDERSTOOD WITHIN THE ART. AND, MOREOVER, THERE IS NO
 8   EVIDENCE THAT ANY OF THE LOGIC TERMS THAT ARE AT ISSUE HERE ARE
 9   NOT WELL-UNDERSTOOD BY ONE IN THE ART. THERE'S BEEN NO EVIDENCE
10   SUBMITTED THAT THAT'S THE CASE.
11          THE COURT:  HOW ABOUT "RECEIVE LOGIC"?
12          MR. WALSH:  I CAN -- WELL, WE CAN GO SPECIFICALLY TO
13   THAT, IF YOU WOULD LIKE TO, YOUR HONOR.
14          LET ME SEE IF THE -- WE DO BELIEVE, YOUR HONOR --
15   AND, AGAIN, RECEIVE LOGIC IS A LITTLE FARTHER DOWN IN THE
16   PRESENTATION.  BUT FOR THE REASONS THAT ARE SHOWN IN THE LINEAR
17   TECH CASE, WHICH I DON'T BELIEVE WE HAVE UP FRONT HERE.  YES,
18   HERE IT IS.
19          RECEIVE LOGIC -- THE RECEIVE LOGIC, I DON'T BELIEVE,
20   IS SPECIFICALLY REFERENCED IN THE DEFENDANT'S INVALIDITY
21   CONTENTIONS, BUT THE SOQUE HOLDINGS CASE THAT THE DEFENDANTS
22   CITE, AS WELL AS LINEAR TECHNOLOGIES CASE IS THAT CITED IN THAT
23   CASE APPLIES DIRECTLY TO THE RECEIVE LOGIC FUNCTION.
24          AND WHAT THE SOQUE CASE HELD THAT THE LINEAR
25   TECHNOLOGY RULE OF AVOIDING 112-6 DID NOT APPLY BECAUSE THE
```

1    CLAIM LIMITATION AT ISSUE WAS SIMPLY A GENERAL PURPOSE COMPUTER.

2             SO IN THAT CASE YOU HAD A GENERAL PURPOSE COMPUTER.

3    THERE WAS NO OTHER LANGUAGE THAT WOULD MAKE IT A SPECIFIC

4    PURPOSE COMPUTER.  AND UNDER WMS GAMING AND ITS PROGENY THAT'S

5    NOT ENOUGH.

6             BUT WHAT LINEAR TECHNOLOGY HELD WAS -- THAT INVOLVED

7    AN ACTUAL CIRCUIT, A CIRCUIT FOR DOING SOMETHING. AND WHAT

8    LINEAR TECHNOLOGY HELD WAS THAT THE CIRCUIT TERM AVOIDED 112-6

9    BECAUSE AS IS THE CASE HERE WITH "RECEIVE LOGIC" AND THESE OTHER

10   TERMS:

11                  "THE STRUCTURE-CONNOTING TERM HERE 'RECEIVE

12             LOGIC' WAS COUPLED WITH A DESCRIPTION OF THE

13             CIRCUIT'S OPERATION."

14             RECEIVE LOGIC FOR MAPPING RECEIVE DATA FROM THE

15   NETWORK TRANSFER TO THE BUFFER MEMORY.  AND UNDER LINEAR

16   TECHNOLOGY THAT'S ALL YOU NEED, YOUR HONOR, IS A

17   STRUCTURE-CONNOTING TERM COUPLED WITH A DESCRIPTION OF THE

18   CIRCUIT'S OPERATION.

19             NOW, THEY SAY THAT'S NOT ENOUGH BECAUSE IT'S

20   FUNCTIONAL LANGUAGE.  BUT THAT FLIES RIGHT IN THE FACE OF

21   LINEAR TECHNOLOGY.

22             SO I WOULD LIKE TO NOTE, YOUR HONOR, THE DEFENDANT'S

23   IRRECONCILABLE POSITIONS HERE. THEY ARGUE THAT EIGHT OF THE TEN

24   LOGIC TERMS MUST BE CONSTRUED UNDER 112-6 BECAUSE THEY FAIL TO

25   RECITE OR REFER TO TERMS THAT ARE REASONABLY WELL UNDERSTOOD IN

1    THE ART AS NAMES FOR STRUCTURE.

2            AND ACTUALLY, YOUR HONOR, I HAVE BEEN TOLD THAT THE

3    RECEIVE LOGIC IS CITED IN THE INVALIDITY CONTENTIONS JUST AS

4    HOST INTERFACE LOGIC IS.  BUT THE DEFENDANTS PREVIOUSLY ARGUED

5    THE EXACT OPPOSITE IN THEIR INVALIDITY CONTENTIONS.  THAT THE

6    LOGIC TERMS AT ISSUE ARE WELL-KNOWN STRUCTURES IN THE ART.  THEY

7    ARGUED IN THEIR INVALIDITY CONTENTIONS AT THAT TIME ONE OF

8    ORDINARY SKILL IN THE ART KNEW THAT ANY SUCH CONTROLLER OR

9    ADAPTER WOULD UTILIZE HOST INTERFACE LOGIC TO TRANSFER DATA TO

10   AND FROM THE HOST. THEY KNOW WHAT THIS TERM MEANS, YOUR HONOR.

11   IT'S NOT A GENERAL PURPOSE COMPUTER.

12           **THE COURT:**  WELL, YOU KNOW, I CAN LISTEN TO MORE OF

13   THIS. AND I'VE BENEFITED A LITTLE BIT BY WHAT IS GOING ON. IT'S

14   JUST THAT THERE WERE SO MANY USES OF "LOGIC," SOME WITH

15   MODIFIERS AND SOME WITH NOT.

16           THE REASON I ASKED ABOUT "RECEIVE LOGIC" IS IT WAS

17   AMONG THE ONES THAT INDICATED TO ME THAT I NEEDED TO PAY

18   ATTENTION TO THAT BECAUSE THE ONE THAT I HAD IN MIND WAS '459,

19   CLAIM 22.  AND THIS WAS AN APPARATUS CLAIM. AND THE LIMITATION

20   WAS:

21               "RECEIVE LOGIC FOR RECEIVING THE DATA FRAME."

22           AND SO, IT SEEMED TO ME THAT THAT PUT THE INVENTOR IN

23   A POSITION WHERE THE WORD "LOGIC" WAS USED IN A FASHION THAT

24   CAUSED ME TO SAY:

25               "OKAY.  I NEED TO PAY ATTENTION TO THAT BECAUSE

1          WHAT IS THAT?"

2          AND THE REASON I ASKED ABOUT IT WAS YOU SAID THAT'S

3     SOMETHING THAT IS COMMONLY KNOWN AND UNDERSTOOD.  AND,

4     THEREFORE, AS I UNDERSTAND IT, YOU WOULD HAVE ME CONSTRUE ALL

5     USES OF THAT AS CIRCUITRY.

6          **MR. WALSH:**  WE WOULD CONSTRUE LOGIC AS CIRCUITRY IN

7     CONNECTION WITH ANYTHING -- AND THE RECEIVE LOGIC MEANS IT'S A

8     SPECIFIC TYPE OF CIRCUITRY.  IT'S NOT JUST GENERAL PURPOSE

9     CIRCUITRY.  IT'S RECEIVE LOGIC.

10          AND AS YOU SEE HERE, YOUR HONOR, I HAVE RECEIVE LOGIC

11     TERM FROM THE '459 PATENT HERE, CLAIM 22.  WE BELIEVE THE PROPER

12     CONSTRUCTION IS:

13               "CIRCUITRY CAPABLE OF RECEIVING THE DATA FRAME

14               FROM THE NETWORK TRANSCEIVER TO THE BUFFER MEMORY."

15          NOW, WE BELIEVE BOTH IN THE CLAIM ITSELF AND THE

16     SPECIFICATION THERE'S SUPPORT FOR THAT CONSTRUCTION.  BUT,

17     AGAIN, LINEAR TECHNOLOGY CASE SHOWS US THIS IS THE

18     STRUCTURE-CONNOTING TERM RECEIVE LOGIC THAT'S COUPLED WITH A

19     DESCRIPTION OF ITS OPERATION:  FOR RECEIVING THE DATA FRAME FROM

20     THE NETWORK TRANSCEIVER TO THE BUFFER MEMORY.

21          THAT TELLS ONE OF SKILL IN THE ART EXACTLY WHAT IT

22     IS, OR AT LEAST WITH SUFFICIENT SPECIFICITY.  I SHOULDN'T HAVE

23     SAID THAT.  IT DOESN'T HAVE TO TELL YOU EXACTLY WHAT IT IS.  IT

24     JUST HAS TO HAVE SUFFICIENT SPECIFICITY.

25          HERE, THIS, YOUR HONOR, IS THE QUESTION YOU HAD

1    EARLIER.  RECEIVE LOGIC AVOIDS 112-6 BECAUSE IT HAS A REASONABLY

2    WELL UNDERSTOOD MEANING IN THE ART.

3            THE DEFENDANT'S INVALIDITY CONTENTIONS SHOW THAT THIS

4    IS THE CASE. IT'S UNDERSTOOD AS CIRCUITRY THAT MOVES DATA FROM A

5    NETWORK MEDIUM TO AN ADAPTER MEMORY.

6            SO THIS IS STRAIGHT FROM THEIR INVALIDITY

7    CONTENTIONS.

8            SO THAT, YOUR HONOR, IS RECEIVE LOGIC. THE OTHER

9    LOGIC TERMS FOLLOW SUIT.

10           WOULD YOU GO TO 146?

11           HOST INTERFACE LOGIC.  THIS ONE ACTUALLY WAS COVERED,

12   I THINK, IN THE INTRODUCTION.  AGAIN, IT'S A STRUCTURE-CONNOTING

13   TERM COUPLED WITH A DESCRIPTION OF ITS OPERATION.  HOST

14   INTERFACE LOGIC IS THE STRUCTURE-CONNOTING TERM FOR TRANSFERRING

15   DATA FRAME, ET CETERA, IS THE OPERATION.

16           **THE COURT:**  I'LL AGREE THAT THERE ARE MANY INSTANCES

17   WHERE THE TERM USED IN THE CLAIM IS ALSO USED IN THE WRITTEN

18   DESCRIPTION. BUT DOES IT HELP ME IN THE QUESTION OF WHETHER --

19   OF WHAT IT IS?  IF I SAY, THEN, ONE OF ORDINARY SKILL IN THE ART

20   WOULD UNDERSTAND EVERY USE OF LOGIC TO BE CIRCUITRY, THAT MIGHT

21   ANSWER THE PROBLEM.  IN OTHER WORDS, I WOULDN'T HAVE TO SAY

22   ANYTHING MORE THAN THAT IS YOUR ARGUMENT OTHER THAN SAY LOGIC IS

23   CIRCUITRY.  AND THEN, THAT LEAVES THE PARTY WHO HAS ME ADOPT

24   THAT DEFINITION VULNERABLE TO A CLAIM THAT THIS CAN'T BE DONE

25   THROUGH CIRCUITRY.  IT'S GOT TO BE DONE SOME OTHER WAY, AND

1    WE'LL DEAL WITH THAT LATER.

2            SO I UNDERSTAND YOUR POSITION.  THAT MAKES IT EASY

3    FOR ME TO SIMPLY SAY THAT'S THE POSITION YOU WANT ME TO ADOPT.

4    NOW, I HAVE TO PAY ATTENTION TO THE WRITTEN DESCRIPTION AND SEE

5    IF THERE'S SOMETHING INCONSISTENT WITH THAT. BUT I UNDERSTAND

6    THAT.

7            **MR. WALSH:**  OKAY. FAIR ENOUGH, YOUR HONOR. AND THIS,

8    AGAIN, THIS IS THE SELECTION FROM THE INVALIDITY CONTENTIONS.

9    BUT I THINK THIS IS ALSO IMPORTANT, YOUR HONOR.  IT'S NOT JUST

10   THE INVALIDITY CONTENTIONS.  THIS IS FROM AN INTEL PATENT THAT

11   WE BELIEVE THE DEFENDANT'S PATENTS ALSO RECOGNIZE SOME OF THESE

12   LOGIC TERMS IN SHOWING THAT THEY ARE REASONABLY WELL-UNDERSTOOD

13   IN THE ART IN WATTS.

14           HERE THE NETWORK ADAPTER HAS HOST INTERFACE LOGIC

15   THAT PROVIDES FOR COMMUNICATION TO THE HOST SYSTEM.  THIS IS

16   FROM AN INTEL PATENT.

17           ALSO, THIS IS FROM A HEWLETT-PACKARD PATENT THAT

18   SPECIFICALLY REFERENCES THE '459 PATENT, ACTUALLY.

19           AND IT SAYS:

20               "THE NETWORK ADAPTER INCLUDES HOST INTERFACE

21               LOGIC FOR TRANSFERRING THE DATA FRAME BETWEEN THE

22               BUFFER MEMORY AND THE HOST SYSTEM."

23           THE POINT IS, YOUR HONOR, THESE ARE AT LEAST

24   REASONABLY WELL-UNDERSTOOD TERMS IN THE ART, WELL SUFFICIENT TO

25   AVOID 112-6 SCRUTINY.

```
 1                AND FOR EACH OF THESE, YOUR HONOR, IN OUR SLIDES HERE
 2   WE HAVE AN ALTERNATIVE 112-6 ANALYSIS.  I BELIEVE IT'S FAIRLY
 3   SELF-EXPLANATORY.  IT'S SIMILAR TO THE 112-6 ANALYSIS TO SOME OF
 4   THE MEANS TERMS, SO I DON'T WANT TO BELABOR THAT.
 5                BUT I THINK IT IS WORTH MENTIONING, YOUR HONOR, THAT
 6   YET AGAIN THESE TERMS, THEY DO DESCRIBE -- FOR INSTANCE, HERE
 7   WITH CLAIM 22, THE '459 PATENT, IT'S HOST INTERFACE LOGIC FOR
 8   TRANSFERRING THE DATA FRAME FROM THE BUFFER MEMORY.  AND IT DOES
 9   TELL YOU WHAT THE OPERATIONS ARE.  AND THAT, AGAIN, UNDER LINEAR
10   TECHNOLOGY, NOT ONLY TAKES IT OUTSIDE OF 112-6, BUT GIVES YOU AN
11   IDEA OF EXACTLY WHAT IT IS.
12                THE DEFENDANTS DON'T WANT TO RECOGNIZE THAT. THEY
13   WANT TO SAY IF IT SAYS "HOST INTERFACE LOGIC," YOU IGNORE THE
14   REST OF THE CLAIM LANGUAGE AND YOU CRAM IN EVERYTHING WE CAN
15   FIND THAT'S ASSOCIATED WITH HOST INTERFACE LOGIC TO TELL YOU
16   WHAT IT IS.  AND THAT'S IMPROPER.
17                AND I THINK, YOUR HONOR, UNLESS YOU HAVE ANY
18   QUESTIONS, I WILL SAVE WHATEVER TIME I HAVE LEFT FOR WHATEVER
19   REBUTTAL IS NECESSARY.
20                THE COURT:  CERTAINLY.  CERTAINLY.
21                YOU'RE LIVING ON BORROWED TIME, BUT GO AHEAD.
22                MR. STEPHENS:  I'LL KEEP IT VERY BRIEF, YOUR HONOR.
23                SO I THINK THE PLACE TO START IS EXACTLY WHERE YOUR
24   HONOR LEFT OFF IN THE FIRST MARKMAN ORDER.  YOU CORRECTLY
25   POINTED OUT THAT A PERSON OF ORDINARY SKILL IN THE ART WOULD
```

1   UNDERSTAND THAT WITH RESPECT TO COMPUTER SYSTEMS LOGIC CAN BE

2   USED TO MEAN A WIDE RANGE OF THINGS.  IT DOESN'T JUST MEAN

3   "CIRCUITRY," AND THAT'S THE FUNDAMENTAL PROBLEM HERE.

4              AND IF YOU LOOK AT THE PATENTS-IN-SUIT, YOU CAN SEE

5   THAT THEY ARE USED, IN FACT, IN THE PATENTS-IN-SUIT TO MEAN A

6   WIDE RANGE OF THINGS THAT IS NOT LIMITED TO CIRCUITRY. SO IF YOU

7   LOOK, FOR EXAMPLE, AT THE '459 PATENT, IT SAYS THAT FIGURES 12

8   THROUGH 18 DESCRIBE THE RECEIVE THRESHOLD LOGIC, RIGHT?

9              SO THIS GIVES YOU A CLUE ABOUT THE KINDS OF THINGS

10  THAT THE PATENTS USE THE WORD "LOGIC" TO DESCRIBE, BECAUSE THEY

11  ARE TELLING YOU THESE FIGURES DESCRIBE LOGIC.  THEY SHOW LOGIC.

12             SO LET'S LOOK AT WHAT THOSE FIGURES SHOW.  FIGURE 12

13  IS A DATA FORMAT.  THAT'S NOT A CIRCUIT.

14             FIGURE 13 IS A FLOW CHART.  THAT'S ALSO NOT A

15  CIRCUIT.

16             FIGURE 16 IS A STATE DIAGRAM, NOT A CIRCUIT.

17             FIGURE 15.  OKAY, FINALLY WE HAVE A CIRCUIT.

18             SO THERE'S A BUNCH OF DIFFERENT KINDS OF THINGS THAT

19  THE PATENTS USE THE WORD "LOGIC" TO DESCRIBE, MANY, MANY

20  DIFFERENT KINDS OF THINGS.  AND IT'S QUITE CLEAR THAT THE

21  AUTHORS OF THE PATENTS DID CONTEMPLATE THAT THE NETWORK

22  INTERFACE PROCESSOR, AS IT'S DESCRIBED IN THE SPECIFICATION,

23  COULD EXECUTE SOFTWARE OF ITS OWN, BECAUSE IT HAD A MEMORY.  IT

24  HAD A RAM THAT IS ASSOCIATED WITH IT.  THE SPEC TELLS US IT

25  INCLUDED SOME OF ITS OWN SOFTWARE.

```
1              NOW, IT DOESN'T REALLY DISCLOSE ANY OF THAT SOFTWARE

2    OTHER THAN TO SAY THAT THERE IS SOME.  NO ALGORITHMS RELEVANT TO

3    THESE TERMS ARE DESCRIBED. BUT IT IS CLEAR THAT THAT MAY BE ONE

4    OF THE WAYS THAT THEY HAD IN MIND TO IMPLEMENT THIS.  AND, OF

5    COURSE, USING MICROPROCESSORS ON NETWORK INTERFACE ADAPTER CARDS

6    WAS COMMON PRACTICE IN THE EIGHTIES AND NINETIES.

7              SO IT IS NOT THE CASE THAT YOU WOULD NOT USE A

8    GENERAL PURPOSE MICROPROCESSOR TO IMPLEMENT SOME OF THESE

9    FUNCTIONS.  AND THEREIN LIES THE PROBLEM.  BECAUSE WHEN YOU USE

10   A WORD LIKE "LOGIC" THAT CAN ENCOMPASS SOFTWARE AND HARDWARE AND

11   DATA FORMATS AND MANY DIFFERENT KINDS OF THINGS, IT'S ACTUALLY

12   BROADER THAN USING THE WORDS "COMPUTER" OR "PROCESSOR" IN A

13   CLAIM.

14             THE COURT:  WELL, WOULDN'T IT BE SUFFICIENT, THOUGH,

15   IF ONE OF SKILL IN THE ART WOULD UNDERSTAND HOW TO SOLVE THAT

16   PROBLEM?

17             MR. STEPHENS:  NO, YOUR HONOR.  THE LAW IS QUITE

18   CLEAR THAT IT'S NOT ENOUGH THAT A PERSON OF ORDINARY SKILL WOULD

19   KNOW HOW TO SOLVE IT.  YOU HAVE TO ACTUALLY DISCLOSE IT IN THE

20   SPECIFICATION, RIGHT?

21             AND THE REASON FOR THAT IS, IN PARTICULAR IN THE

22   COMPUTER ARTS, IF YOU HAD A CLAIM WRITTEN TO A PROCESSOR OR A

23   COMPUTER OR, IN THIS CASE, LOGIC, WHICH I THINK IS EVEN BROADER

24   THAN THOSE TERMS, AND YOU CLAIM IT FUNCTIONALLY, THEN ANY WAY

25   THAT A PERSON COULD COME UP WITH FOR PERFORMING THAT PARTICULAR
```

1  FUNCTION WOULD THEN BE COVERED, BECAUSE COMPUTER ARE, IN FACT,

2  GENERAL PURPOSE DEVICES.

3          AND THAT'S WHAT WMS GAMING AND THE RELATED CASES ALL

4  SAY. AND THAT'S PRECISELY THE THING THAT YOU'RE NOT ALLOWED TO

5  DO, THAT 112-6 IS THE ESCAPE HATCH FOR, DISCLAIMING

6  FUNCTIONALLY.

7          **THE COURT:**  WELL, BUT I KIND OF MADE UP THAT QUESTION

8  BECAUSE IT IS A QUESTION. BUT IS THERE A DIFFERENCE BETWEEN

9  HARDWARE AND SOFTWARE WITH RESPECT TO LOGIC?  BECAUSE IS A GATE

10  HARDWARE OR IS IT AN INSTRUCTION?

11          **MR. STEPHENS:**  WELL, I THINK -- I DON'T PRETEND TO

12  KNOW THIS WITH CERTAINTY, BUT MY BELIEF IS MOST PEOPLE IN THIS

13  FIELD WOULD SAY A GATE IS SOMETHING THAT IS CONSTRUCTED OF

14  TRANSISTORS AND WOULD BE A CIRCUIT.

15          **THE COURT:**  BUT DOES IT HAVE TO BE?  IN OTHER WORDS,

16  A GATE IS A DECISION POINT, RIGHT, WHERE THINGS GO OR DON'T GO

17  OR BECOME A ONE OR A ZERO?

18          **MR. STEPHENS:**  FAIR ENOUGH.

19          **THE COURT:**  AND SO YOU CAN DO THAT IN WAYS THAT

20  PERHAPS IT DOESN'T MATTER AS TO WHETHER OR NOT IT'S IMPLEMENTED

21  ONE WAY OR THE OTHER. BUT THAT'S THE QUESTION I WAS ASKING

22  BECAUSE I DID SEE LOGIC, AND I KNOW THAT LOGIC CAN BE BOTH OR A

23  COMBINATION OF THE TWO.

24          **MR. STEPHENS:**  I THINK IT IS LITERALLY TRUE THAT ANY

25  LOGICAL FUNCTION THAT CAN BE IMPLEMENTED WITH GATES CAN ALSO BE

```
 1    IMPLEMENTED IN SOFTWARE.  SO I THINK IT IS TRUE THAT THERE IS A

 2    DIRECT CORRESPONDENCE, YOU KNOW.  THAT'S WHY A GENERAL PURPOSE

 3    COMPUTER IS CALLED THAT BECAUSE IT'S CAPABLE THROUGH SOFTWARE OF

 4    IMPLEMENTING LITERALLY ANY LOGICAL FUNCTION.  AND THEREIN LIES

 5    THE PROBLEM, RIGHT?

 6              AND THAT'S WHY THE WHOLE LINE OF CASES ABOUT CLAIMING

 7    IN THE COMPUTER SPACE ENDED UP WHERE IT DID BECAUSE A GENERAL

 8    PURPOSE COMPUTER IS, IN EFFECT, A UNIVERSAL LOGIC CIRCUIT THAT

 9    CAN BE USED TO IMPLEMENT ANY LOGICAL FUNCTION.

10              SO IF YOU CLAIM SOMETHING BY RECITING A COMPUTER,

11    THEN, IN EFFECT, YOU'RE CLAIMING ANY POSSIBLE WAY OF

12    IMPLEMENTING THAT PARTICULAR FUNCTION.  AND THE SAME IS TRUE

13    HERE WHEN YOU USE AN EVEN VAGUER WORD LIKE "LOGIC," PARTICULARLY

14    WHEN IN THE CONTEXT OF A PARTICULAR PATENT.  IT'S CLEAR THAT

15    THEY ARE USING IT TO --

16              THE COURT:  BUT THE HARDWARE -- I GUESS I WAS

17    CONCERNED IF IT REQUIRES SOMETHING THAT WAS MORE COMPLEX, LIKE

18    SOME KIND OF ALGORITHM.  IF I'M TOLD THAT IT'S A CIRCUITRY AND I

19    ADOPT THAT, WHAT'S THE HARM?

20              MR. STEPHENS:  THE HARM IS, YOUR HONOR, THAT THE

21    PATENT DOESN'T SUPPORT THAT, RIGHT?  THE PATENT SPECIFICALLY

22    USES THE WORD "LOGIC" TO INCLUDE OTHER TYPES OF

23    IMPLEMENTATIONS.

24              THE COURT:  WELL, BUT I WOULD HAVE TO STUDY THAT.

25    AND THAT DOES -- I APPRECIATE THAT, BECAUSE IT SEEMS TO ME THAT
```

```
 1   IF I HAVE A FLOW CHART THAT OUGHT TO TIE TO A METHOD CLAIM, BUT

 2   IT COULD TIE TO AN APPARATUS CLAIM, BECAUSE APPARATUS CAN BE

 3   DEFINED BY FUNCTION.  AND SO FLOW CHARTS AND FUNCTIONS CAN HELP

 4   ME DECIDE WHETHER I'M LOOKING AT AN APPARATUS OR I'M LOOKING AT

 5   A FUNCTION OR A METHOD.

 6            SO, YOU KNOW, IT MAY BE MORE WORK THAN I NEED TO DO

 7   AT THIS POINT IF -- IN OTHER WORDS, PERHAPS I CAN SOLVE THE

 8   PROBLEM BY SAYING THAT DECIDING WHETHER OR NOT THE INVENTOR'S

 9   LAWYERS WRITE JUST ADOPT HARDWARE OR CIRCUITRY, OR WHATEVER WORD

10   I SEE.  AND THEN, I CAN COME BACK TO A PARTICULAR PLACE WHERE

11   THAT DOESN'T WORK.  AND THAT WOULD NARROW MY WORK AND SEE

12   WHETHER OR NOT THAT BECOMES A PROBLEM.

13            MR. STEPHENS:  I THINK I UNDERSTAND WHAT YOU'RE

14   GETTING AT, YOUR HONOR, BUT I THINK THEY INTENTIONALLY CHOSE TO

15   CLAIM IT THE WAY THEY DID, RIGHT?  "CIRCUIT" IS NOT AN UNCOMMON

16   WORD.  CLEARLY, THEY COULD HAVE USED THE WORD "CIRCUIT."

17            ONE OF THE PROBLEMS, OF COURSE, IS NO CIRCUITRY IS

18   ACTUALLY DISCLOSED FOR MANY OF THE THINGS THAT ARE RECITED AS

19   LOGIC.

20            I WOULD POINT OUT THAT THERE'S CASE LAW TO THIS

21   EFFECT. THIS IS A CASE ABB VERSUS SCHLUMBERGER RESOURCE.  IT'S A

22   DELAWARE CASE IN WHICH JUDGE ROBINSON WAS CONFRONTED WITH

23   EXACTLY THIS ISSUE:  IS THE WORD "LOGIC" IN A CLAIM SUFFICIENTLY

24   STRUCTURAL TO AVOID 112-6 TREATMENT?"

25            AND SHE SAID:  "NO."
```

1          SO THIS IS NOT -- YOU'RE NOT THE FIRST JUDGE TO DEAL

2     WITH THIS. AND THERE IS PRECEDENT FOR THE POSITION THAT WE'RE

3     TALKING.

4          AGAIN, I THINK IT MIGHT DEPEND ON THE SPECIFIC

5     CONTEXT, BUT HERE I THINK THE CONTEXT AS I'VE SHOWN YOU, THE

6     DISCLOSURE IN THE SPECIFICATION, MAKES IT CLEAR THAT THE WORD

7     "LOGIC" IS USED, IN FACT, QUITE BROADLY.

8          AND IF I MAY, JUST TO POINT YOU TO ONE SPECIFIC

9     EXAMPLE, IF YOU LOOK AT THE WAY "TRANSFER DESCRIPTOR LOGIC" IS

10    USED IN THE CLAIMS, IT'S A LOT LIKE THE RECEIVE LOGIC.  RECEIVE

11    LOGIC FOR RECEIVING, WHAT DOES THAT REALLY ADD OVER SIMPLY

12    SAYING, YOU KNOW, "GIZMO FOR RECEIVING"?

13         IF YOU LOOK AT THE ACTUAL DESCRIPTION IN THE

14    SPECIFICATION FOR "TRANSFER DESCRIPTOR LOGIC," IT'S ACTUALLY

15    ONLY MENTIONED FOUR TIMES IN THE ENTIRE SPECIFICATION.  AND THE

16    ONLY DESCRIPTION OF IT AT ALL IS PURELY FUNCTIONAL:

17              "TRANSFER DESCRIPTOR LOGIC MAPS TRANSFER

18              DESCRIPTORS FROM THE HOST SYSTEM TO THE TRANSFER

19              DESCRIPTOR BUFFER."

20         THAT'S THE SAME FUNCTION THAT IS RECITED IN THE

21    CLAIM. SO IT IS ACTUALLY QUITE PARALLEL TO THE RECEIVE LOGIC

22    SITUATION WHERE YOU HAVE "RECEIVE LOGIC FOR RECEIVING."

23         WELL, THAT REALLY DOESN'T DEFINE THINGS ENOUGH TO

24    CHANGE IT FROM JUST CLAIMING ANY POSSIBLE WAY OF RECEIVING.

25         AND THIS IS A COMMON PROBLEM.  THAT'S ONE OF THE

```
1    REASONS I WANTED TO POINT YOU TO THIS EXAMPLE.  THIS IS A GOOD

2    EXAMPLE BECAUSE THERE'S SO LITTLE DISCUSSION OF THIS TRANSFER

3    DESCRIPTOR LOGIC.

4              IF YOUR HONOR HAS NO MORE QUESTIONS, I'LL LEAVE IT AT

5    THAT.

6              THE COURT:  THANK YOU.

7              MR. WALSH:  YOUR HONOR, VERY BRIEFLY, IF I MAY.

8              JUST A FEW POINTS, YOUR HONOR.   DEFENSE COUNSEL JUST

9    WENT INTO SEVERAL, I GUESS, CITATIONS IN THE SPEC. NOT

10   SURPRISINGLY, HE IGNORED THE CLAIMS AGAIN.

11             THE CLAIMS TELL US WHAT THE LOGIC IS. THE DOWNLOAD

12   LOGIC, RESPONSIVE TO TRANSMIT DESCRIPTORS FOR RETRIEVING DATA.

13             THAT'S ALL WE NEED FOR LINEAR TECHNOLOGY.

14             MR.STEPHENS ALSO MENTIONED -- I THINK HE SAID:

15             "THE LAW IS QUITE CLEAR ON THIS POINT."

16             IT IS CLEAR IF YOU ARE IN 112-6 LAND, AND YOU HAVE A

17   GENERAL PURPOSE COMPUTER.

18             WE'RE NOT IN 112-6 LAND.  WE DON'T HAVE A GENERAL

19   PURPOSE COMPUTER. WMS GAMING DOES NOT APPLY HERE.

20             HE MENTIONED THE DRAFTER COULD HAVE USED THE TERM

21   "CIRCUITRY."  HE COULD HAVE USED THE TERM "MEANS," TOO.  IN

22   FACT, HE DID USE THE TERM "MEANS" A NUMBER OF TIMES.

23             HERE HE USED THE TERM "LOGIC" AND HE USED "DOWNLOAD

24   LOGIC."

25             AND, FINALLY, YOUR HONOR, I'D ALSO LIKE TO POINT OUT
```

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

1    AGAIN IN THEIR INVALIDITY CONTENTIONS IT'S THE DEFENDANTS THAT

2    SPECIFICALLY SAY MANY COMMUNICATION CONTROLLERS AND ADAPTERS HAD

3    CIRCUITRY THAT MOVED DATA FROM A HOST MEMORY TO A FIFO ON THE

4    CONTROLLER IN REFERRING TO DOWNLOAD LOGIC.

5                THIS IS AT LEAST REASONABLY WELL-UNDERSTOOD IN THE

6    ART UNDER WATTS; IT IS NOT A 112-6 ISSUE.

7                JUST TO BE CLEAR, YOUR HONOR, WE BELIEVE THAT ALL OF

8    THESE TERMS JUST NEED THEIR PLAIN ORDINARY MEANING.  WE'VE

9    PROVIDED ALTERNATIVE CONSTRUCTIONS.  WE CAN CERTAINLY LIVE WITH

10   THE CONSTRUCTION OF "LOGIC" THAT WAS PROVIDED BEFORE THAT I

11   THINK WE SUGGESTED AT THE BEGINNING OF THIS PROCESS.

12               BUT WE BELIEVE IT'S CLEAR THAT IT'S NOT A 112-6

13   ISSUE.

14               THANK YOU.

15               **MR. STEPHENS:**  YOUR HONOR, MAY I BRIEFLY ADDRESS THE

16   INVALIDITY CONTENTION ISSUE?  IT WON'T TAKE MORE THAN A MOMENT.

17               **THE COURT:**  VERY WELL.

18               **MR. STEPHENS:**  I JUST WANT TO POINT OUT THAT WHEN WE

19   SERVED THE INVALIDITY CONTENTIONS, OF COURSE IT'S BEFORE CLAIM

20   CONSTRUCTION.  AND, OF COURSE, WE BELIEVE WE DON'T INFRINGE

21   THESE CLAIMS.  AND WE NECESSARILY HAVE TO USE THE CONSTRUCTION

22   THAT IS AT LEAST IMPLIED BY THE INFRINGEMENT CONTENTIONS, RIGHT?

23               SO WHEN WE PUT TOGETHER THOSE INVALIDLY CONTENTIONS

24   WE WERE LOOKING AT WHAT THEY SAY INFRINGES.  AND THEN SAY:

25                    "WELL, GEE, THAT'S FOUND IN THE PRIOR ART."

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

1              SO THIS IDEA THAT WE'RE MAKING ADMISSIONS ABOUT CLAIM

2    CONSTRUCTION AND WHETHER THESE CLAIMS, WHETHER THESE SPECIFIC

3    WORDS HAVE SPECIFIC MEANINGS AFTER CLAIM CONSTRUCTION WHEN WE

4    PUT TOGETHER OUR INVALIDITY CONTENTIONS IS JUST NOT RIGHT.

5              **MR. WALSH:**  A POINT OF CLARIFICATION, YOUR HONOR.

6              THE INVALIDITY CONTENTIONS WE WERE CITING TO WERE THE

7    AMENDED INVALIDITY CONTENTIONS WHICH WERE SUBMITTED AFTER --

8              **THE COURT:**  I LOVE THE PASSION WHICH YOU ALL BRING TO

9    THE COURT.  BUT I'LL TELL YOU, THIS IS ALL LOST ON ME AT THIS

10   POINT, SO SAVE YOUR BREATH.

11             BUT IF AT SOME POINT ALONG THE PROCESS IT GETS TO A

12   POINT WHERE THERE'S AN ORDER THAT MAKES THIS SIGNIFICANT, FEEL

13   FREE TO BRING IT BACK.

14             NOW, I'M GOING TO TRY AND GET YOU A RULING ON THIS.

15   AND THEN, IT IS MY PRACTICE WHEN I DO THIS IS TO SET UP ANOTHER

16   TIME FOR US TO SIT DOWN AND TALK. AND IN VIEW OF MY OWN PERSONAL

17   SITUATION THAT HAS TO DO WITH MY TENURE ON THE BENCH, I WANT TO

18   DO THAT SOONER THAN LATER SO AS TO BE OF HELP TO YOU IN MAYBE

19   HELPING TO SET THIS CASE UP SO THAT IT MOVES AHEAD MORE SMOOTHLY

20   THAN NOT.

21             IF YOU COULD SEE YOUR WAY FREE TO BE ABLE TO TRY THIS

22   CASE BETWEEN NOW AND AUGUST, THAT WOULD BE GREAT. I DOUBT IF

23   THAT'S THE CASE, BUT THERE OUGHT TO BE SOMETHING THAT MAYBE WE

24   CAN TALK ABOUT AS TO HOW BEST TO PUT THE CASE IN THE RIGHT

25   SHAPE.

1                    GIVING YOU A CLAIM CONSTRUCTION ORDER, OF COURSE, IS

2     MY CURRENT RESPONSIBILITY.  AND I'LL DO THAT AS QUICKLY AS I

3     CAN.

4                    SO THAT PART OF THE MATTER IS SUBMITTED.

5                    (THEREUPON, THIS HEARING WAS CONCLUDED.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

I, KATHERINE WYATT, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED BY ME INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

_____

/S/ KATHERINE WYATT