IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. ETHERNET INNOVATIONS, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ACER, INC.; ACER AMERICA CORPORATION; APPLE, INC.; ASUS COMPUTER INTERNATIONAL; ASUSTEK COMPUTER, INC.; DELL, INC.; FUJITSU, LTD.; FUJITSU AMERICA, INC.; GATEWAY, INC.; HEWLETT PACKARD CO.; SONY CORPORATION; SONY CORPORATION OF AMERICA; SONY ELECTRONICS INC.; TOSHIBA CORPORATION; TOSHIBA AMERICA, INC.; and TOSHIBA AMERICA INFORMATION SYSTEMS, INC.,<br><br>　　　　Defendants,<br><br>INTEL CORPORATION; NVIDIA CORPORATION; MARVELL SEMICONDUCTOR, INC.; ATHEROS COMMUNICATIONS, INC.; and BROADCOM CORPORATION,<br><br>　　　　Intervenors.<br>_____/ | No. C 10-3724 CW<br><br>ORDER GRANTING PARALLEL'S MOTION TO DISMISS (Docket No. 785) |

Third Party Defendant Parallel Technology LLC moves to dismiss the complaint asserted against it by Intervenor Broadcom Corporation. Broadcom opposes the motion. Having considered the papers filed by the parties and their arguments at the hearing, the Court GRANTS Parallel's motion.

BACKGROUND

On April 18, 2013, Broadcom filed a first amended complaint in intervention and third party complaint against Parallel and Plaintiff U.S. Ethernet Innovations. Docket No. 735. In the

complaint, Broadcom makes the following allegations relevant to this motion.

USEI is an alter ego, and mere instrumentality, of Parallel. Compl. ¶¶ 8, 10. It is a wholly-owned subsidiary of Parallel, which is the manager and sole member of USEI, and Parallel's directors are the only officers of USEI. Id. at ¶¶ 8, 11-15. In addition, USEI is an agent of Parallel. Id. at ¶ 9. Parallel causes, directs or is otherwise responsible for the activities of USEI, including its filing of patent infringement suits. Id. at ¶ 17.

3Com Corporation was the original assignee of the patents-in-suit. Id. at ¶ 1. In 2004, Broadcom and 3Com entered into an agreement, which gave Broadcom a license and associated rights to practice the patents-in-suit. Id. at ¶ 19.

In 2009, 3Com sold the asserted patents to Parallel pursuant to a patent sale agreement. Id. at ¶ 25. The sales contract identified the agreement between Broadcom and 3Com as an encumbrance on 3Com's rights to the patents. Id. at ¶ 27. In executing the sale agreement, Parallel acknowledged that it received, and had sufficient time to review, the agreement between Broadcom and 3Com. Id. at ¶ 28.

In 2009, Parallel assigned the patents-in-suit to USEI. Id. at ¶ 30; see also id. at ¶ 20 (stating that USEI is the current assignee of these patents). Broadcom alleges that Parallel's assignment of the patents to USEI did not recite or otherwise provide for any encumbrance, including that which had been set forth in the sale agreement between 3Com and Parallel, and that

2

Parallel made this assignment with the intention of evading that encumbrance. Id. at ¶¶ 32-33, 61.

On October 9, 2009, USEI filed the original complaint in this action. Id. at ¶ 36. In its complaint, USEI accused a number of Broadcom's customers of making, using, selling, offering to sell or importing products that allegedly infringe the asserted patents. Id.

Broadcom asserts a claim for intentional interference with contractual relations against Parallel. Broadcom alleges that Parallel caused or directed USEI to bring allegations of infringement of the patents by Broadcom products. Id. at ¶ 62. It further alleges that this was contrary to Broadcom's rights under its agreement with 3Com and that Parallel disrupted and interfered with Broadcom's rights under that agreement. Id. at ¶¶ 62-63. As a result of this interference, "Broadcom has incurred, and continues to incur, including without limitation the attorneys' fees, costs and expenses incurred in defending against USEI's allegations of infringement of the Asserted Patents by Broadcom Products." Id. at ¶ 65; see also id. at 8 (demanding such damages in the prayer for relief).

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the

3

complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

## DISCUSSION

Parallel moves to dismiss Broadcom's claim on the basis that it is barred by the litigation privilege and under the California Supreme Court's rule set forth in Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal. 3d 1118 (1990) (hereinafter, PG&E). It further contends that Broadcom has not plead a plausible claim against it.

I.  Litigation privilege

California Civil Code section 47(b) provides that communications made in or related to judicial proceedings are

4

absolutely immune from tort liability.  The California Supreme Court has explained that the purpose of the privilege is "to afford litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions."  Silberg v. Anderson, 50 Cal. 3d 205, 213 (1990).  "The litigation privilege applies to any communications (1) made in a judicial proceeding; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; (4) that have some connection or logical relation to the action."  Sharper Image Corp. v. Target Corp., 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006) (citing Silberg, 50 Cal. 3d at 212).  Once these requirements are met, section 47(b) operates as an absolute privilege.  Silberg, 50 Cal. 3d at 216.

The privilege is quite broad.  It covers "any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved."  Id.  Courts have applied the litigation privilege to all tort claims, with the exception of malicious prosecution.  Edwards v. Centex, 53 Cal. App. 4th 15, 29 (1997).  "The requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action."  Silberg, 50 Cal. 3d at 219-20.  "Any doubt about whether the privilege applies is resolved in favor of applying it."  Kashian v. Harriman, 98 Cal. App. 4th 892, 913 (2002).

5

1    Broadcom disputes that the litigation privilege applies to
2 bar its claim against Parallel for two reasons.  First, it argues
3 that Parallel cannot benefit from the protections of the
4 litigation privilege because it is not a litigant in USEI's
5 underlying claim or another participant authorized by law.
6 However, as this Court has recognized previously, "those non-
7 litigants possessing a 'substantial interest in the outcome of the
8 litigation' are 'authorized participants' for purposes of the
9 litigation privilege."  Sharper Image Corp. v. Target Corp., 425
10 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006) (quoting Costa v. Superior
11 Court, 157 Cal. App. 3d 673, 678 (1984)); see also Adams v.
12 Superior Court, 2 Cal. App. 4th 521, 529 (1992) ("the privilege is
13 not restricted to the actual parties to the lawsuit but need
14 merely be connected or related to the proceedings") (citing
15 Profile Structures v. Long Beach Bldg. Material Co., 181 Cal. App.
16 3d 437, 443 (1986)).  Further, as Parallel points out, Broadcom
17 has alleged that USEI is the "alter ego," "mere instrumentality"
18 and "agent" of Parallel.  Compl. ¶¶ 8-10.  Broadcom has also
19 alleged that the Parallel is in fact responsible for USEI's
20 activities, including its filing of patent infringement suits.
21 Id. at ¶ 17.  Taking Broadcom's allegations as true, Parallel is a
22 party to the underlying lawsuit and has a substantial interest in
23 its outcome.  Accordingly, Parallel may invoke the litigation
24 privilege.
25    Broadcom also argues that the "tortious conduct of which
26 Parallel is accused is not communicative."  Opp. at 10.  "Because
27 the litigation privilege protects only publications and
28 communications, a threshold issue in determining the applicability

6

of the privilege is whether the defendant's conduct was communicative or noncommunicative." Jacob B. v. County of Shasta, 40 Cal. 4th 948, 957 (2007) (internal quotation marks and citations omitted). "The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action." Rusheen v. Cohen, 37 Cal. 4th 1048, 1058 (2006) (citations omitted). "That is, the key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." Id. "[I]f the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct." Id. at 1065. "Stated another way, unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies." Id.

Broadcom contends that the conduct of which it accuses Parallel--which it characterizes as "creating a shell company," "assigning the Patents-in-Suit to that shell company," and "financing this litigation"--is not communicative.[1] However, the gravamen of Broadcom's intentional interference claim against Parallel is that it directed USEI's allegations of infringement, which purportedly interfered with Broadcom's rights under its agreement with 3Com. Put another way, Parallel's establishment of USEI, its assignment of the patents to USEI and its financing of this litigation do "not provide an independent basis for liability

---

[1] The Court also notes that Broadcom alleged in its complaint that Parallel is "responsible for" this litigation but did not allege that Parallel "financed" the litigation.

7

separate and apart from" the filing of the lawsuit, and thus the filing is the gravamen of the action.  See id.

Accordingly, the litigation privilege bars the intentional inference with contract claim that Broadcom has plead here and the Court grants Parallel's motion to dismiss.

II.  The California Supreme Court's decision in PG&E

As a separate and additional ground for dismissal, Parallel contends that Broadcom's intentional interference with contract claim fails because Broadcom did not plead that the underlying litigation lacked probable cause and terminated in its favor and cannot do so until the litigation has reached a resolution.

In PG&E, Pacific Gas & Electric (PG&E) sued Bear Stearns & Company, an investment brokerage firm, for intentional interference with its contract with Placer County Water Agency and for intentional interference with prospective business advantage, among other things.  50 Cal. 3d at 1123-24.  Placer County wanted to terminate the contract but felt it could not do so without a breach.  Id. at 1124.  Bear Stearns approached Placer County and eventually entered into an agreement with it to investigate the feasibility of terminating the contract, in return for a percentage of any resulting increase in the county's revenues.  Id. at 1124.  Thereafter, Placer County served a demand for arbitration on PG&E to resolve the question of whether it could terminate the contract without a breach.  Id.  PG&E responded by filing several lawsuits, including the one at issue in PG&E.  Id.  Then, Placer County withdrew its arbitration demand and sought declaratory judgment that the contract could be terminated.  Id.

The trial court dismissed PG&E's claims for intentional interference.

In upholding the trial court's decision, the California Supreme Court considered, among other things, "whether it is proper to impose liability for inducing a potentially meritorious lawsuit" and concluded "that it is not." Id. at 1127.  In reaching this conclusion, the court explained, "Under existing law, the only common law tort claim that treats the instigation or bringing of a lawsuit as an actionable injury is the action for malicious prosecution," and under that tort, the "actionable harm is in forcing the individual to expend the financial and emotional resources to defend against a baseless claim." Id. at 1130-31 (emphasis in original; citation omitted). Thus, "[t]he bringing of a colorable claim is not actionable; plaintiff in a malicious prosecution action must prove that the prior action was brought without probable cause and was pursued to a legal termination in plaintiff's favor." Id. at 1130-31.

The court noted that, for a malicious prosecution claim, the "probable cause requirement is essential to assure free access to the courts" and stressed that "if the bringing of a colorable claim were actionable, tort law would inhibit free access to the courts and impair our society's commitment to the peaceful, judicial resolution of differences." Id. at 1131.  The court reasoned, "To permit a cause of action for interference with contract . . . to be based on inducing potentially meritorious litigation on the contract would threaten free access to the courts by providing an end run around the limitations on the tort of malicious prosecution." Id. at 1137.  The court therefore held

9

that "a plaintiff seeking to state a claim for intentional interference with contract or prospective economic advantage because defendant induced another to undertake litigation, must allege that the litigation was brought without probable cause and that the litigation concluded in plaintiff's favor." Id.

Broadcom appears to argue that the holding in PG&E should not apply here because, in the underlying litigation in that case, Placer County sought a judgment adjudicating its rights under a contract, which is different than the underlying claim brought here. Opp. at 11. Broadcom, however, has not cited any court that reached this conclusion and the PG&E court did not frame it in such a narrow way. Further, numerous courts have applied the holding in contexts other than claims seeking to ascertain rights under an agreement, including where the underlying action was for patent infringement. See, e.g., Visto Corp. v. Sproqit Techs., Inc., 360 F. Supp. 2d 1064, 1072-1073 (N.D. Cal. 2005) (patent infringement); see also Formula One Licensing, B.V. v. Purple Interactive Ltd., 2001 U.S. Dist. LEXIS 2968, at * 15-16 (N.D. Cal.) (trademark infringement).

Broadcom has failed to plead that the litigation concluded in its favor or that it was brought without probable cause and thus has failed to state a claim for intentional interference with contract. Broadcom disputes primarily whether it could plead this prior to the resolution of that litigation. Although Broadcom acknowledges that "there must be a favorable termination of the entire underlying action to give rise to a malicious prosecution claim," Opp. at 12 n.13 (emphasis added), it nevertheless argues that it meets this requirement because the underlying litigation

10

purportedly has been partially resolved in its favor.  In support of this, Broadcom contends that USEI had recently written to Broadcom stating that certain products for which Broadcom had previously paid royalties to 3Com were inadvertently included in USEI's infringement contentions.  It argues that it has thus prevailed on the "claims against" these products.  However, Broadcom cites no case in which a court has permitted an intentional interference claim to proceed based on litigation that is still ongoing even in part.

Accordingly, the Court grants Parallel's motion to dismiss Broadcom's intentional interference claim for this independent reason as well.  Because the Court has dismissed Broadcom's claim in its entirety based on the litigation privilege and PG&E, the Court does not reach Parallel's alternative grounds for its motion.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Parallel's motion to dismiss (Docket No. 785).  This dismissal is without prejudice to Broadcom filing an amended complaint to correct the deficiencies identified above within two weeks of the resolution of the underlying litigation.

IT IS SO ORDERED.

Dated: 8/12/2013

CLAUDIA WILKEN
United States District Judge

11