1
2
3
4
5
6
7
8            UNITED STATES  DISTRICT COURT
9              Northern District of California
10              San Francisco Division
11   U.S. ETHERNET INNOVATIONS LLC,          No. C 10-03724 CW (LB)

12                    Plaintiff,
                                            **ORDER RE DISCOVERY DISPUTE**
13        v.
                                            [Re:  ECF No. 876]
     ACER INC, *et al.*,
14
                    Defendants.
15   _____/

16                        **INTRODUCTION**

17        The parties' latest discovery dispute is about USEI's request for documents and communications

18   about this litigation between HP's counsel K&L Gates and Richard Baker, who previously worked

19   for 3Com as Director of Intellectual Property Licensing and then worked briefly for its successor

20   HP.[1]  After Mr. Baker left HP, HP hired him as a consultant to continue his work.  *See id.* at 1, 3.

21   USEI asserts that it is entitled to the documents because Mr Baker is a fact witness who worked on

22   prior litigation regarding the patents in suit, and his communications cannot be privileged or work

23   product.  *Id.* at 3.  HP responds that the documents and communications are protected work product.

24   *Id.* at 5.  The undersigned held a hearing on September 25, 2013,  and orders disclosure of fact

25   information in the communications and an additional fact deposition.

26   _____

27        [1]  Citations are to the electronic case file ("ECF") with pin cites to the electronically-
28   generated page numbers at the top of the page.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

**STATEMENT**

The lawsuit is about four of 3Com's patents ('459, '872, '084, and '313) that deal with Ethernet network adaptors.  3Com sold the patents to USEI's parent company Parallel Technology in 2009 pursuant to a patent sales agreement ("PSA"), and Parallel licensed them to USEI in 2009.  *See* 8/12/13 Order Granting Parallel's Motion to Dismiss, ECF No. 855 at 2.   Mr. Baker worked for 3Com from 2005 to April 2010 as its Director of Intellectual Property Licensing, and he continued to work for HP for about seven months after 3Com was acquired by and merged with HP in April 2010.  Joint Letter Brief, ECF No. 876 at 1, 3.  On behalf of 3Com, he managed the prior Realtek litigation regarding three of the four patents at issue in this lawsuit and was an important fact and 30(b)(6) witness in that case.  *Id.* at 1, 3.  Another point raised by USEI is that as part of the 2009 PSA between 3Com and Parallel, Parallel was entitled to 75 hours of assistance from Baker and three other 3Com employees in connection with the enforcement of the 3Com patents.  *Id.* at 2.

When Mr. Baker left HP, HP (through its counsel K&L Gates) hired him as a consultant to "continue the work he was doing for HP and HP's counsel while [he was] at HP."  *Id.* at 3.  HP describes that work as follows:

> Among other things, he has provided nearly 500 hours of service to HP and its counsel at K&L Gates and Fish & Richarson to help on various issues, including consulting about the patents, consulting about how to find relevant information in more than 900,000 pages of documents, and consulting about the Patent Sales Agreement ("PSA") between HP's predecessor, 3Com, and USEI's parent, Parallel Technology, LLC ("Parallel"), which Baker negotiated on behalf of 3Com.

*Id.* at 3-4.

USEI filed a motion before the district judge on the ground that the consulting agreement with a fact witness was inappropriate and asked for the following:  (1) sanctions including striking HP's claims and defenses, precluding it from using evidence from Mr. Baker to support their claims and defenses, and disqualifying counsel; (2) disclosure of all communications between Mr. Baker and HP and its counsel; and (3) a further deposition about the communications.  *See* 8/16/13 Order, ECF No. 866.  The district judge denied sanctions, ordered that USEI could contact Mr. Baker (through his lawyer if he has one), held that HP could not require USEI to contact Mr. Baker only through HP or its counsel, held that HP could not preclude Mr. Baker from talking with USEI, and referred the

1   document request and the associated privilege issues to the undersigned.  *Id.* at 2.

2                                    **ANALYSIS**

3       USEI argues that Mr. Baker's communications with HP cannot be privileged or work product

4   because he is a fact witness and "[i]mplicit" in the district court's order that "HP cannot refuse to

5   permit USEI from meeting with and discussing this case with Mr. Baker" "is that there can be no

6   privileged communication, at least as it relates to the facts at issue in this case."  Joint Letter Brief,

7   ECF No. 876 at 3.  It also argues that Baker had an established "common interest and joint privilege

8   with Parallel about this litigation" before HP acquired 3Com."  *Id.*  As to the documents, HP

9   responds that they fall into two categories: (1) work-product documents prepared as a result of this

10  litigation, and (2) work-product documents selected and compiled for this litigation from its larger

11  production (estimated at over 900,000 documents) to USEI.  *Id.* at 5.  As to communications, HP is

12  asserting assistance by a former employee "to continue the work he was doing for HP" when he was

13  an employee.  *Id.* at 3.

14      On this record, the communications under the consulting agreement and both document

15  categories arguably are protected work product.  All are about this litigation and boil down to what

16  documents are important in the litigation and what are the factual and legal issues.  Some of this

17  information is captured in communications, some in documents prepared because of the litigation,

18  and some in the selection of documents from the larger corpus.  The court disagrees with USEI that

19  implicit in the district court's ruling is that there cannot be privilege because USEI can have access

20  to Mr. Baker.  The district judge's ruling was only that HP cannot bar access to Mr. Baker the way it

21  tried to in its consulting agreement.  That outcome makes sense: Mr. Baker managed the patent

22  licensing, he knows 3Com's patents, he was a fact witness in the Realtek litigation, and whatever he

23  has to say about the facts cannot be unilaterally rendered inaccessible by HP as part of the consulting

24  arrangement.  This also makes sense given the obligations under the PSA in connection with the

25  enforcement of the patents.  *See* Joint Letter Brief, ECF No. 876 at 2.

26      That being said, Mr. Baker is a fact witness, and to the extent that facts are at issue (whether

27  reflected in documents or communications), HP must disclose them.  *See Barrett Indus. Trucks, Inc.*

28  *v. Old Republic Ins. Co.*, 129 F.R.D. 515, 518 (N.D. Ill. 1990) ("the work product doctrine does not

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

protect discovery of the underlying facts of a particular dispute, even if deponent's response to a particular question is based on information provided by counsel"). Examples might be facts that Mr. Baker recalls or identifies or the identity of witnesses. Applying this point is fairly easy regarding communications and category 1 of the documents (documents prepared as a result of this litigation). HP agreed on the record that to the extent that facts are revealed in the communications and category 1 documents, it will disclose them. Also, according to HP, the number of communications at issue is very small (although counsel was unable to provide an exact estimate on the record). HP should prepare a privilege log in accordance with the procedures (including the time requirements) set forth in the undersigned's standing order at ECF No. 484-1.

In reaching this conclusion, the undersigned considered USEI's citations to other cases, where courts held that communications with fact witnesses who were paid as consultants were not protected work product. *See, e.g., State of New York v. Solvent Chem.*, 166 F.R.D. 284 (W.D.N.Y. 1996); Joint Discovery Letter Brief, ECF No. 876 at 3. Those cases view paid consultants – even those with a prior employment relationship – with a suspicion that the district court did not share in this case. The problem with the consulting agreement really was HP's attempts to limit access. And the remedy here (disclose all fact information) takes care of any prejudice to USEI given the district court's order that HP cannot prevent USEI's access to Mr. Baker.

As to category 2, the documents culled from the larger corpus, HP estimated the number at issue as small, between a few hundred to a thousand. Culled documents can be work product. *See Sporck v. Peil*, 759 F.2d 312, 316 (3rd Cir. 1985). That being said, a fact witness's view about relevant documents is closer to fact information than work product. A related issue is that even with work-product culled documents, "substantial need" can justify disclosure of the culled documents. Part of the reason that there might not be a substantial need is that USEI is free under the district court's August 16 order to talk with Mr. Baker about what is important in the litigation regarding the enforcement of the patents, including his assessment of the important documents. This does not mean that USEI can ask what HP thinks is important or what Mr. Baker said to HP, but it can ask what Mr. Baker thinks is important. (HP agreed with this point at the hearing.) USEI's interests are protected by the district judge's order allowing it access to Mr. Baker and preventing HP from

1  preventing access or requiring access only through HP and its counsel.

2      The tension between work product and Mr. Baker's status as a fact witness also implicates

3  practical issues.  One issue is whether the PSA creates obligations by Mr. Baker now, but USEI said

4  at the hearing that it does not.  Another is Mr. Baker's own views about what he wants to do.  As the

5  parties discussed on the record, Mr. Baker has different incentives with HP, which is paying him,

6  than with USEI.  A third is whether it would cost HP less money to produce the culled documents

7  than it would to have a deposition of Mr. Baker.  *See* Joint Letter Brief, ECF No. 876 at 6 (offering

8  deposition).  Producing the documents would make a one-day deposition efficient and sufficient, but

9  without production, USEI might need more than a day.  Similarly, another practical reality – as the

10  court said on the record – is that there are not a lot of fact "gotcha" moments in litigation.  The

11  strategic benefits of withholding the culled documents might not outweigh the costs of additional

12  deposition time, particularly given that the universe of culled documents is small.

13      Practical considerations, aside, on this record, the court orders a further deposition of Mr. Baker

14  and finds that it is a sufficient remedy that gives USEI an opportunity to identify the relevant facts.

15  If a full-day deposition is not enough, then the parties should confer about extra days.  The parties

16  anticipate setting the deposition before mediation, which is scheduled for the end of October.

**CONCLUSION**

17

18  This disposes of ECF No. 876.

19  **IT IS SO ORDERED.**

20  Dated: September 25, 2013

                                     _____

21                                      LAUREL BEELER
                                    United States Magistrate Judge

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**