UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| U.S. ETHERNET INNOVATIONS LLC,<br><br>              Plaintiff,<br>   v.<br>ACER INC, *et al.*,<br>              Defendants.<br>_____/ | No. C 10-03724 CW (LB)<br><br>**ORDER RE JANUARY AND FEBRUARY LETTER DISPUTES BETWEEN INTEL AND USEI ABOUT PRODUCTION OF CERTAIN DOCUMENTS IN TEXAS LITIGATION**<br><br>[Re: ECF Nos. 954 & 997] |

## INTRODUCTION

The discovery issue in these two letters is whether USEI may disclose 16 Intel documents in a Texas case that involves two patents also at issue in this litigation. *See* ECF Nos. 954 and 997. USEI argues that the documents are relevant to whether Intel's prior art – asserted in both cases – really is prior art, and Intel disagrees. Intel is not a party in the Texas case. Intel argues that the protective order in this case prohibits USEI's disclosing the documents, and USEI responds that Intel's responses to USEI's subpoena to Intel in the Texas case operate as a waiver. The court held a hearing on March 6, 2014, and rules that USEI may disclose the documents in the Texas case on an outside counsel, attorneys' eyes only, basis.

## STATEMENT

### I. THE 16 DOCUMENTS AND THEIR RELEVANCE

In the Texas case, according to Intel, the defendants assert that Intel's prior art 82593 Ethernet

1  chip invalidates one patent that also is a patent at issue in this case. ECF No. 954 at 1, 4.
2  According to USEI, there are two patents at issue in both cases, and Intel asserts the same prior art in
3  this litigation regarding two patents. *Id.* at 4.[1] At the hearing, Intel said that the prior art 82593 chip
4  is a 10 Mbps chip.

5  The parties submitted 2 of the 16 documents. *See* Ex. E, Walsh Decl., ECF No. 960; Walsh
6  Second Decl., ECF No. 998-1; 2/19/14 Letter Brief, ECF No. 997. Both are emails about Intel's 100
7  Mbps controllers (not the 10 Mbps chip that is the alleged prior art). Exhibit E is an email dated
8  March 31, 1993. The second document is an email dated October 2, 1992. These documents post-
9  date the prior art. The relevance (according to USEI) is that the emails show that in this time period,
10 which was after the prior art, Intel thought that the features discussed in the emails were novel. The
11 argument is that if the features were novel, then they were not present in the prior art 82593 chip
12 being asserted in both cases.

13 More specifically, regarding the first 15 documents, USEI says that "most of these Intel
14 documents discuss the proposed addition of features from the Patents to Intel products (such as the
15 82596 [a 100 Mbps chip]) that were released <u>after</u> both the filing of the Patents and the alleged
16 release of the Intel 82593 [the prior art chip], demonstrating that these patented features were <u>not</u>
17 included in the previous Intel products (such as the Intel 82593 [prior art]). In discussing these
18 features, these same documents show that Intel discovered these new features from a review of
19 3Com products." ECF No. 954 at 4. In the second letter with the 16th document, USEI says that the
20 documents confirm that "(1) Intel discovered the Parallel Tasking features based on an analysis of
21 3Com products; (2) Intel believed the Parallel Tasking features to be novel at that time; and (3) Intel
22 then attempted to incorporate these features into Intel's own products, further evidencing that the
23 alleged Intel prior art (including the 82593) did not include the Parallel Tasking features." ECF No.
24 997 at 1-2.

25 Thus, from USEI's perspective, the documents are important evidence to show that the alleged

---

[1] Intel says that the Texas Defendants assert that Intel's prior art chip invalidates one patent in the Texas case (a patent also at issue in this case). *See* ECF No. 954 at 1. USEI says that Intel has identified the same chip as prior art that anticipates two patents here. *See id.* at 4.

C 10-03724 CW (LB)
ORDER

1  prior art does not invalidate its patents in the Texas litigation (patents that also are challenged in this
2  litigation).

## II. THE SUBPOENAS TO INTEL IN THE TEXAS LITIGATION

Both USEI and the Texas Defendants issued subpoenas to Intel. Intel produced documents directly to the Texas Defendants but did not produce any documents in response to USEI's subpoena. ECF No. 954 at 4. In its production to the Texas defendants, Intel did not produce documents (now the ones at issue in this discovery dispute) that "flatly contradict Intel['s] and the Texas Defendants' position that the [prior art] Intel 82593 [chip] anticipates the Patents" at issue in the Texas case and here. *Id.* USEI knew this because it had those documents in this litigation.

In its subpoena response to USEI, Intel said that it had already produced the documents in this case:

> Intel objects to this Request because it is duplicative of discovery sought and/or already provided in U.S. Ethernet Innovations LLC v. Acer, et al.. Case No. 4:10-cv-03724 CW (LB). Intel further objects to this Request as improper in that it seeks discovery for use in U.S. Ethernet Innovations LLC v. Acer, et al., Case No. 4:10-cv-03724 CW (LB) in another forum. Intel will provide discovery to U.S. Ethernet in connection with the California and Texas cases only once.

Ex. D., Walsh Decl., ECF No. 960-4 at 5. It also objected on undue burden, relevance, privilege and other standard boilerplate grounds. *Id.* at 5-6. It also said that it "specifically objects to this request to the extent it seeks documents or materials concerning the Intel 82559ER as it is not relevant to the subject matter the case or to the claims or defenses of any party, is not reasonably calculated to lead to the discovery of admissible evidence, or is otherwise outside the proper scope of discovery." *Id.* At the end of its objection, it said that "[s]ubject to its objections, Intel responds that it has already produced documents and materials to USEI responsive to this Request in *US Ethernet Innovations, LLC v. Acer, Inc.*, et. al., 13 CAND-4-10-cv-03724 (N.D. Cal.)." *Id.*

In an email exchange in November 2013, Intel reiterated that it had produced more than a million pages of documents in the Northern District of California litigation. ECF No. 954-8 at 3. USEI said that it would be "happy to work with you regarding a mutually-convenient date [for a deposition pursuant to the same subpoena], as well as any concerns you have as to the scope of the deposition." *Id.* at 2. It mentioned the importance of letting USEI know the date of Intel's witnesses availability given the upcoming deadlines for discovery in Texas and then said, "Regarding documents, does

1  Intel object to USEI re-producing all of Intel's documents in the Texas cases? Alternatively, we are
2  amenable to Intel['s] identifying responsive documents by Bates numbers so that we can turn them
3  over to the Texas defendants." *Id.* Intel responded as follows to the query about documents:

> Yes, Intel objects to re-producing all of Intel's documents in Texas. Intel's documents include a large number that are not relevant to any issue in the Texas cases, and include competitively sensitive information that must not be disclosed to Intel's competitors in the Texas cases. However, if USEI will identify a reasonable number of relevant documents by bates number, Intel will consider permitting USEI to produce them in the Texas case.

*Id.* USEI then identified to Intel a small subset of documents (now limited to the 16 at issue here). Joint Letter Brief, ECF No. 954 at 2. Intel reviewed the documents and said that they did not relate to the alleged prior art products at issue in Texas because they were emails about the 100 Mbps products. *Id.* at 2. USEI said that it would produce the documents anyway in the Texas litigation. *Id.*

## III. THE PROTECTIVE ORDER

Two parts of the protective order are potentially relevant to USEI's disclosure of protected information in the Texas litigation. The first is the paragraph that governs access to protected material:

> 7. ACCESS TO AND USE OF PROTECTED MATERIAL
>
> 7.1 Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle, this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 15 below (FINAL DISPOSITION).

ECF No. 954-2. The second is paragraph 10, which provides procedures for producing materials subpoenaed and ordered produced in other litigation:

> 10. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION
>
> If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL SOURCE CODE" that Party must:
>
> (a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.[2]

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL," or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL - SOURCE CODE" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material - and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

ECF No. 954-3.

## ANALYSIS

Intel makes several arguments against disclosure: (1) the protective order forbids it; (2) the documents are not about the alleged prior art 10 Mbps 82593 chip and instead are about the 100 Mbps chips; (3) these confidential documents would be produced to its competitor in Texas in a litigation where Intel is not a party and not able to protect its interests; and (4) USEI never sought leave in Texas to produce the discovery, discovery closed there, the Texas court denied USEI's motions to compel discovery from parties after discovery closed, and USEI has not been diligent. *See* ECF No. 954 at 3; ECF No. 997 at 3.

USEI responded in the letter briefs and at the hearing as follows: (1) it would produce the documents on an outside counsel, attorneys' eyes only, basis; (2) these documents from the early to mid 90s are old with no discernable highly competitive value, particularly given that documents in the same period already have been disclosed; (3) as set forth in the Statement, the documents are relevant because they show that the alleged prior art does not invalidate USEI's patent; (4) Intel had no problem selectively producing documents to the Texas Defendants and has produced selectively and resisted disclosure of these documents to ensure that the invalidity issue in the Texas case

---

[2] Footnote 4 appears at this point in the protective order and states, "The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued."

1  (which is closer to trial than this case) is decided on an incomplete record chosen by Intel; (5) Intel's
2  direct competitor in Texas is Texas Instruments, and Intel has a joint defense agreement with it (and
3  apparently the other Texas Defendants) because their interests are aligned to challenge USEI's
4  patents (again explaining the shared interest in a selective disclosure); and (7) Intel's behavior about
5  the subpoenaed documents – resisting production on the ground that documents had already been
6  produced, agreeing to produce a small subset, and then reneging – is another example of its litigation
7  strategy and operates as a waiver of its right to contest disclosure.

8  On this record, the documents appear relevant. As USEI asserts, they are relevant to show that
9  USEI's patents were not anticipated by the 28593 prior art reference. In particular, according to
10 USEI, they show that Intel discovered features of the alleged prior art by examining 3Com products,
11 believed these features to be novel at the time, and attempted to incorporate these features into its
12 own products. Because the documents, which date to the early 1990s, were created after the release
13 of the Intel 82593 chip, they suggest the 82593 is not invalidating prior art. As the court said at the
14 hearing, when parties dispute the relevance of the different chips, it is difficult to make the technical
15 call. That being said, USEI argues relevance based on a timeline and Intel's characterization of the
16 features, and Intel disputes relevance based on the difference between 10 Mbps and 100 Mbps chips.
17 On balance, the evidence appears relevant.

18 Again on this record, the undersigned denies Intel's motion to enforce the protective order and
19 grants USEI permission to produce the 16 documents in the Texas litigation on an outside attorneys'
20 eyes only basis. It is true – as Intel argues – that the protective order protects against disclosure
21 (except under the circumstances described in paragraph 10 such as a third-party subpoena or a court
22 order in other litigation). But Intel issued its own subpoena in the Texas case to Intel. Upon
23 receiving it, Intel could have responded in the normal way. Had it done so, it could have negotiated
24 the scope of the production on a granular level and USEI could have moved to compel compliance.
25 Instead, Intel issued a blanket objection to producing the documents twice (both allowable and
26 understandable), suggested it would allow production of specified documents if USEI narrowed its
27 request, and then balked, leading USEI to say that it would produce them anyway (an
28 understandable reaction given the subpoena response and the timeline). It seems an overly literal

application of the protective order to preclude discovery given the interplay of discovery in two cases and what seems on this record (including the arguments) to be strategy in aid of a joint defense (Intel and the Texas defendants) against USEI. Also, in the end, Intel suggests that USEI lost its forum by not raising the discovery issue in Texas (and USEI probably should have), but it is equally true that Intel waived its protections by its varying responses to the subpoena, including its argument that it would not produce documents twice and would approve a limited disclosure.

Intel's argument about harm by disclosure of its confidential information to its competitors is assuaged by production only on an outside counsel, attorneys' eyes only, basis. At the hearing, Intel said that harm exists from disclosure at trial to its competitors, but again, the documents are old, apparently documents have been disclosed in that time frame, and Intel disclosed some documents to those in its joint defense agreement. At this point, the protective order offers the appropriate protection regarding evidence relevant to the alleged prior art.

## CONCLUSION

Intel's motion to enforce the protective order is denied, and USEI's motion to disclose the 16 documents is granted. Disclosure may be made only on an outside counsel, attorneys' eyes only, basis.

This disposes of ECF Nos. 954 & 997.

**IT IS SO ORDERED.**

Dated: March 7, 2014

_____
LAUREL BEELER
United States Magistrate Judge

C 10-03724 CW (LB)
ORDER
7