1
2
3
4
5
6
7
8                    UNITED STATES  DISTRICT COURT
9                       Northern District of California
10                       San Francisco Division
11   U.S. ETHERNET INNOVATIONS LLC,              No. C 10-03724 CW (LB)
12                       Plaintiff,
          v.                                     **ORDER RE DISCOVERY DISPUTE**
13                                               **IN ECF NO. 1037-4**
     ACER INC, *et al.*,
14
                         Defendants.
15
16   _____/
17                            **INTRODUCTION**
18       The discovery issue is whether USEI must "make a full production of its settlement and license
19   negotiation documents."  Joint Discovery Letter Brief, ECF No. 137-4; Broadcom's Letter Brief,
20   ECF No. 1046.  The court held a hearing on March 31, 2014 and orders disclosure of the final
21   settlement agreements, the draft redlined versions, and emails and other communications that reflect
22   the negotiations and that are not subject to the mediation privilege.
23                             **STATEMENT**
24   **I.  INTEL'S DOCUMENT REQUEST AND ASSERTED NEED FOR DOCUMENTS**
25       Intel's document request is as follows: "All documents, ESI, and Things reflecting licenses,
26   agreements, or negotiations between USEI and any other party concerning any of the Patents-In-
27   Suit."  Joint Letter Brief, ECF No. 1037-4 at 1.  An example of a relevant settlement negotiation is
28   that between USEI and Broadcom.  *See id.* at 2.  Intel "similarly needs full production of the

settlement negotiations between USEI and its other forty or so licensees." *Id.* It asks the court to order production of "all settlement and license negotiation communications related to the asserted patents (excepting communications to a mediator or those occurring during a formal mediation), including, without limitation, all documents relating to" certain specified information regarding the Broadcom settlement. *Id.* at 3.

## II. USEI'S ASSERTION OF UNDUE BURDEN AND A MEDIATION PRIVILEGE

Intel asserts that it has produced "much of what Intel seeks" and said it would produce "the License and/or Settlement documents themselves as well as the redline (i.e. draft) version of the agreements relating to the licensees that were parties to this case." *Id.* at 4. It points out that Intel's request is asserted at the end of discovery and is very burdensome (as USEI finishes discovery here and prepares for trial in Texas) and likely not admissible. *Id.* Intel itself has failed to produce to USEI its own patent license agreements relating to the accused products, let alone negotiation of those licenses. *Id.* A number of the settlements came about as a result of formal mediations and are covered by a mediation privilege. *Id.*

## III. THE USEI-BROADCOM MEDIATION

Pursuant to court order in this case, USEI and Broadcom participated in mediation on November 6, 2013 under the court's ADR Multi-Option program. *See* Broadcom's Letter Brief, ECF No. 1046 at 2; ECF No. 350; ADR Local Rule 3. They executed a confidentiality agreement with the following relevant provision:

> All statements made during the course of the mediation or in mediator follow-up thereafter at any time prior to complete settlement of this matter are privileged settlement discussions . . . and are non-discoverable and inadmissible for any purpose including in any legal proceeding. . . . No aspect of the mediation shall be relied upon or introduced as evidence in any arbitral, judicial, or other proceeding.

Broadcom Letter, ECF No. 1046 at 2 & Ex. A.

## ANALYSIS

USEI does not dispute that settlement negotiations related to reasonable royalties and damage calculations are relevant, and it is not asserting a settlement negotiation privilege. *See In Re MSTG*, 675 F.3d 1337, 1347-48 (Fed. Cir. 2012). Instead, its challenges to the production are (I) whether documents provided for purposes of mediation, provided to the mediator, or exchanged during

UNITED STATES DISTRICT COURT
For the Northern District of California

mediation are protected by a mediation privilege and (II) whether the burden from a last-minute and expansive request militates in favor of a narrower production.  *See* Joint Discovery Letter Brief, ECF No. 1037-4; Broadcom's Letter Brief, ECF No. 1046.

# I. MEDIATION PRIVILEGE

Northern District of California ADR Local Rule 6-12 governs the confidentiality of mediation and provides in relevant part:

6-12. Confidentiality

(a) Confidential Treatment. Except as provided in subdivision (b) of this local rule, this court, the mediator, all counsel and parties, and any other persons attending the mediation shall treat as "confidential information" the contents of the written Mediation Statements, anything that happened or was said, any position taken, and any view of the merits of the case expressed by any participant in connection with any mediation. "Confidential information" shall not be:

(1) Disclosed to anyone not involved in the litigation;

(2) Disclosed to the assigned judge; or

(3) Used for any purpose, including impeachment, in any pending or future proceeding in this court.

(b) Limited Exceptions to Confidentiality. This rule does not prohibit:

(1) Disclosures as may be stipulated by all parties and the mediator;

(2) Disclosures as may be stipulated by all parties, without the consent of the mediator, for use in a subsequent confidential ADR or settlement proceeding;

N.D. Cal. ADR Local R. 6-12.

The parties also entered into a confidentiality provision that is identical to that in *Facebook, Inc. v. Pac. Nw. Software, Inc.*, where the court held that the parties were precluded from introducing evidence of statements made in mediation where parties had agreed that such statements were not discoverable and could not be introduced into evidence.  *See* 640 F.3d 1034, 1041 (9th Cir. 2011).

The court concludes that a mediation privilege bars discovery into negotiations that arose in the context of mediation.  Joint Letter Brief, ECF No. 137-4 at 4.  As the Federal Circuit observed in *MSTG*, all states "apparently have enacted a mediation privilege."  675 F.3d at 1344 (statement made in the context of the court's observation that there was no state consensus of a settlement negotiation privilege).  USEI and Broadcom cite numerous cases recognizing a federal mediation

UNITED STATES DISTRICT COURT
For the Northern District of California

privilege.  *See, e.g.*, Broadcom's Letter Brief, ECF No. 104 at 1-2 (collecting cases).  Most courts recognize a federal common law privilege "as to all communications made in conjunction with a formal mediation."  *In re Anonymous*, 283 F.3d 627, 632 (4th Cir. 2002).  And here, as to Broadcom, confidentiality exists pursuant to the parties' agreement and the court's local rule.  *See Facebook*, 640 F.3d at 1040-41.[1]

Intel quotes *Molina v. Lexmark Int'l, Inc.* for the proposition that "'No Circuit court has ever adopted or applied [a federal common law mediation privilege.'"  Joint Letter Brief, ECF No. 137-4 at 3 (quoting *Molina*, 2008 U.S. Dist. LEXIS 83014, No. CV 08-04796 MMM (Fmx), at *30 (C.D. Cal. Sept. 30, 2008)).  But *Molina* only references two Ninth Circuit Cases that found it unnecessary to address whether a mediation privilege exists.  *See id.*  The court's view is that the clear weight of authority supports the existence of a mediation privilege.

Also, more practically, the relevance of settlement negotiations is to give insight into a hypothetical negotiation between the patentee and infringer based on the *Georgia-Pacific* factors. *See Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010); *Georgia-Pacific Corp. v. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  Arms' length settlement negotiations are more clearly relevant than negotiations under the umbrella of court-ordered mediation during the press of litigation.  And as discussed in the next section, the last-minute timing of Intel's broad request requires a tailoring of the production to safeguard against excessive burden in production.  Limiting production to documents outside of formal mediation accomplishes that goal in part.

## II.  BURDEN

At the hearing, the court discussed with the parties the burdens of producing settlement and license negotiations not related to formal mediation.  USEI summarized what it had produced, and

---

[1]  Given the court's ADR local rules, the fact that the court ordered mediation, and Broadcom's and USEI's confidentiality agreement, the answer is straightforward as to the Broadcom-USEI mediation. According to USEI, there also are  "a number of settlements" reached through mediation."  Joint Letter Brief, ECF No. 137-4 at 4.  At the hearing, USEI provided more context for its productions.  The court concludes that the mediation privilege protects against discovery for documents and information in formal mediation.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Intel provided context for the number of licenses at issue.  Intel's production to date was limited to

2  the California defendants and 3Com and included direct communications between USEI and

3  licensees, the settlement agreements themselves (possibly produced for all 40 licenses), redlined

4  copies showing the parties' negotiations, and direct communications between USEI and its

5  licensees.  After a discussion of the burdens, the court ordered the production of the agreements (to

6  the extent they have not been produced), the redlined agreements showing any negotiations, and

7  transmitting emails to the extent that they have negotiations in them.  Intel said that it wanted all

8  emails with all negotiations.  USEI responded that it was burdensome.  The court directed USEI to

9  undertake reasonable efforts to identify additional emails.  The point here is that the transmitting

10  emails may suggest the existence of other emails that contain the parties' negotiations.  That being

11  said, the reality is that any negotiation emails likely will have an accompanying redlined copy,

12  emails often are email strings, those strings will be informative and likely will be reasonably

13  comprehensive, and at some point, the burden outweighs the benefits.  The court did direct USEI to

14  review its emails diligently in aid of a reasonable production.  Intel also can review the emails to

15  identify any gaps.

16                                    **CONCLUSION**

17      This disposes of ECF No. 1037-4.

18      **IT IS SO ORDERED.**

19  Dated:  March 31, 2014      _____

20                              LAUREL BEELER
                                United States Magistrate Judge

21

22

23

24

25

26

27

28