UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| U.S. ETHERNET INNOVATIONS LLC,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>ACER INC, *et al.*,<br><br>　　　　　Defendants.<br>_____/ | No. C 10-03724 CW (LB)<br><br>**ORDER RE DISCOVERY DISPUTE IN ECF NO. 1113**<br><br>[RE: ECF Nos. 1113, 1138, 1142] |

## INTRODUCTION

On May 27, 2014, Intel moved to compel discovery regarding the due diligence that USEI performed before purchasing the asserted patents or, in the alternative, to preclude USEI from introducing evidence about the due diligence at trial. *See* Joint Letter Brief, ECF No. 1113. The undersigned denied the motion initially without prejudice. *See* 6/16/14 Order, ECF No. 1131 at 2. The reason was that USEI said that TI said that it would file the same motion before the Texas trial judge who heard the testimony, and that would happen before the Texas trial started on June 16, 2014. *Id.* TI never filed a motion in the Texas court, and now Intel renews its motion in this action. *See* Letter Brief, ECF No. 1138. The court finds this matter suitable for determination without a hearing under Civil Local Rule 7-1(b) and DENIES Intel's motion.

## STATEMENT

USEI asserted privilege about its due diligence during discovery, but Intel contends that USEI waived that privilege by the testimony of its CEO David Kennedy in Texas on April 9, 2014. Mr.

C 10-03724 CW (LB)
ORDER

Kennedy described the due diligence process, explaining that Parallel (USEI's parent company) did about five months of due diligence from November 2008 to May 29, 2009, when the purchase agreement was completed. Kennedy Dep. 10:2-6, ECF Nos. 1113-4, 1113-9. Parallel did a continuous analysis of the patents, and Mr. Kennedy was the valuation expert who worked with a team of "technical, both patent attorneys, litigation attorneys, folks that could help us analyze the strength of these patents." *Id.* 10:7-11. They learned that the patents were part of parallel tasking technology. *Id.* 10:16-18. After that due diligence, Parallel decided to buy the patents. *Id.* 13:21-25. Mr. Kennedy then testified as follows:

> Q: Would you tell the jury your conclusion after this due diligence? What -- what decision did you reach at the conclusion of the five-month period?
>
> A. Well, the conclusion was that parallel tasking had been wildly successful, generated billions of dollars in revenues, and that the patents behind that parallel tasking technology were -- **were valid, were valuable**, and that 3Com had had a success in licensing those patents in addition to selling the products behind them.
>
> Q. And in reaching that conclusion, I think you may have heard Dr. Mihran testify earlier that it took him about 10 hours to decide that the patents were invalid in this case. [Objection omitted.]
>
> A. I heard his testimony. I didn't quite understand it, but I heard the reference to the 10 hours.
>
> Q. How much time did it take you and your team to reach the conclusion to actually enter the deal that 3Com was proposing?
>
> A. I don't know how many hours, but it was a full-time effort. Most -- weeks or a lot of weeks, seven days a week between November and May 29th when we closed on the transaction. And that was not just myself and other members of USEI. We had a team of patent attorneys, contract attorneys, due diligence-type technical experts that we consulted with. We spent hundreds of thousands of dollars analyzing these patents before we bought them. And, you know, at that point -- before we were going to invest millions of dollars in them, **we wanted to make sure we felt like the patents were valid and the technology had been successful.**
>
> Q. And in connection with this due diligence and the length of time you were researching the assets here, did anyone raise this TMS 9900 product as a concern in relation to practicing parallel tasking before the 3Com patents?
>
> A. No.
>
> Q. Did anybody raise this SONIC product as a concern as it practicing early transmit before 3Com?
>
> A. Nobody raised it as a concern. We certainly were aware of it. It's in the patent -- in our patent in the specifications.
>
> Q. Did anyone express concerns that the SONIC, being prior art, was a concern for the validity of the earlier transmit patents?

1     A. Never.

2     Q. And did you look at the commercial success history of the parallel tasking products of 3Com?

3

4     A. Yeah, of course we did. And that's one of the first things you look at when you're looking at patented technology: Has it been commercially successful? If it hasn't been commercially successful, have they had success licensing it? In this case, they had both huge commercial success and then success licensing it.

5

6 *Id.* 14:1-16:7 (emphasis added).

7 **ANALYSIS**

8     Intel contends that this testimony was an attempt to bolster the validity of the patents, and the

9 reference to the due diligence was about Mr. Kennedy's conclusions based on attorneys' advice that

10 the patents were valid. Joint Letter Brief, ECF No. 1113 at 2. This, Intel asserts, waives the

11 privilege as to the underlying due diligence. *Id.* Intel concludes that USEI should be compelled to

12 produce its due diligence materials, identify persons involved, and produce witnesses for deposition,

13 or, alternatively, be precluded from introducing testimony about the due diligence at trial. *Id.* at 3.

14     USEI responds that (1) this waiver argument is predicated on Mr. Kennedy's use of the "valid,"

15 and the context of his testimony shows he meant "valuable," (2) the testimony is that of an investor

16 describing the process by which Parallel, USEI's parent company, purchased the patents, and the full

17 context shows that Mr. Kennedy was describing the commercial success of the 3Com technology

18 and 3Com's ability to license the technology, and (3) the non-specific reference did not disclose the

19 contents of the diligence investigation or the advice of counsel and instead was about Mr. Kennedy's

20 conclusions as an investor. *Id.* at 5-6.

21     Considering Mr. Kennedy's full testimony, he does not appear to be testifying about legal advice

22 given to him by his attorney about the validity of the patents. He was not describing legal advice or

23 confidential information provided to him by his attorneys. Instead, he described the process of

24 reaching the decision to buy the patents, including the process, but not the substance, of due

25 diligence.

26     The cases that Intel cites do not change this outcome. For example, it cites *SNK Corp. of Am. v.*

27 *Atlus Dream Entm't Co.*, 188 F.R.D. 566, 571 (N.D. Cal. 1999) for the proposition that a party

28 cannot use privilege "as both sword and shield," but again, Mr. Kennedy's describing the due

diligence step in Parallel's patent acquisition process is not using privilege as either a sword or a shield. *Avago Technologies General IP PTE Ltd. v. Elan Microelectronics Corp.*, No. C 04-06385 JW (HSL), 2006 WL 3290400, at *2 (N.D. Cal. Nov. 13, 2006), involved waiver of the work product doctrine as to a report referenced in an Avago employee's declaration because Avago revealed part of the contents of the report and relied on it as a defense in a prior action. *Id.* (employee's declaration stated that the report "confirmed the presence of all the circuitry that would be an expected in an infringing sensor"). By contrast, no privileged information was revealed here, only a due diligence process and an investor's decision. *Fort James Corp. v. Solo Cup. Co.*, 412 F.3d 1340, 1350-51 (Fed. Cir. 2005) involved disclosure of attorney advice and a company's reliance on that advice. No advice was revealed in Mr. Kennedy's testimony.

The court concludes that Mr. Kennedy's testimony was not specific about the due diligence activities, instead was merely descriptive of a due diligence process and did not involve disclosure of counsel's advice, and thus does not operate as a waiver of the attorney-client privilege. The court denies Intel's motion for discovery about the due diligence or to preclude testimony about the due diligence at trial.

## CONCLUSION

The court DENIES Intel's motion. This disposes of ECF Nos. 1113, 1138, and 1142.

**IT IS SO ORDERED.**

Dated: July 17, 2014

_____
LAUREL BEELER
United States Magistrate Judge